UNITED STATES DISTRICT COURT
OF THE MIDDLE DISTRICT OF FLORIDA

Case No.: 3:25-cv-01498

HOPE MCMATH,

    Plaintiff,

v.

DUVAL COUNTY PUBLIC SCHOOLS,
CHARLOTTE JOYCE, APRIL CARNEY, MELODY
BOLDUC, REGINALD BLOUNT and ANTHONY
RICARDO, FLORIDA DEPARTMENT OF EDUCATION
and ANASTASIOS KAMOUTSAS, AS COMMISSIONER
OF EDUCATION, MOMS FOR LIBERTY INC, and
MOMS FOR LIBERTY - DUVAL,

    Defendants.
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT MOMS
FOR LIBERTY-DUVAL'S
MOTION TO QUASH SERVICE OF PROCESS**

Plaintiff, Hope McMath, by and through her undersigned counsel, hereby

responds in opposition to Defendant Moms for Liberty-Duval's Motion to Quash

Service of Process (Doc. 31) and states as follows:

**I.    THE MOTION IS DUE TO BE DENIED**

1.    The Amended Complaint (Doc. 28) is admittedly lengthy, particularly

as it tried to unravel a series of issues and unconstitutional actions, private entities

convoluted with public officials and discovery has only just begun to understand

1

who (or what) initiated the Complaints against Ms. McMath. Defendant Moms for Liberty-Duval (hereinafter "M4L-D") challenges not only its service, but its ability to be served. Plaintiff hereby addresses both process and jurisdiction.

2.      As a preamble, it was none other than Duval County Public School's Schoolboard's Vice Chairperson April Carney who appears to have instituted the initial complaint against Ms. McMath at the state level at the Florida Department of Education (hereinafter "FDOE"). Shortly after, a disembodied "Moms for Liberty Duval" signed the complaint at the District level with the Duval County School System (hereinafter "DCPS").

3.      Defendant Moms for Liberty-Duval's Motion to Quash asks this Court to find that despite signing its name in a detailed email from [momsforlibertyduval@gmail.com](mailto:momsforlibertyduval@gmail.com) demanding investigation and discipline of Hope McMath, and all of its information being recognized as an official chapter on Moms for Liberty's own website along with social media pages and public identity, that it is somehow a phantom that cannot be held accountable in a court of law.

4.      This argument is not just wrong; it is cynical. Moms for Liberty wants it both ways. A sister local chapter filed a federal lawsuit to vindicate its own First Amendment rights — as Moms for Liberty-Brevard County did in this very court in *Moms for Liberty-Brevard Cnty. v. Brevard Pub. Schs.*, Case No. 6:21-cv-01849 (M.D. Fla.), *aff'd in part*, 118 F.4th 1324 (11th Cir. 2024). The sword has been used.

5.     In addition to its own use of this court, we also note *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 11 F.4th 1266 (11th Cir. 2021). Fort Lauderdale Food Not Bombs ("FLFNB") is an unincorporated association with no charter, no formal leadership offices, and no written proof of membership. The City of Fort Lauderdale argued its informal structure deprived it of standing to sue. The Eleventh Circuit rejected this, holding that "unincorporated associations by their nature lack a charter and often lack formal organizational structures" and that this "does not block them from seeking redress for injuries they may sustain."

6.     In fact, M4L has used this tactic in many court cases across the country. Moms For Liberty's unincorporated chapters are parties with standing to sue under the Moms for Liberty agenda. In fact, national membership encourages members and chapters to do so, as noted in the Amended Complaint. (See Am. Compl. ¶¶ 97-99, 100-101, 105-106 and 111-112) (Doc. 28).

7.     Further, M4L takes public credit for Moms for Liberty-Brevard County's half-million-dollars in attorney's fees awarded to it against the Brevard school system. (See Am. Compl. ¶¶ 100-101). But when a chapter is called to account for filing what Plaintiff alleges was a politically motivated complaint designed to destroy a teacher's career, suddenly the chapter is a "legal nullity" that cannot be found, has no place of service and needs press releases to generate sympathy.

3

8.    The attorneys who filed this Motion — Liberty Counsel — are simultaneously using its very Motion to Dismiss as promotional content for fundraising, publishing graphics to be passed around on social media proclaiming they are "fighting" this "baseless lawsuit" on behalf of Moms for Liberty.[1] Further, it notes, "For media interviews, please email media@LC.org." *Id.* And, "Liberty Counsel is a 501(c)(3), tax-exempt nonprofit organization. Contributions are tax-deductible to the extent permitted by law." Moms for Liberty chapters are real enough to raise money and elicit political sympathy (or anger) off of this lawsuit. They are real enough to file complaints against public school teachers. They should be real enough to answer for their conduct in court.

### A.    Moms for Liberty-Duval Filed the Complaint That Launched the DCPS Prosecution.

9.    The facts giving rise to this lawsuit begin with Moms for Liberty-Duval. On September 12, 2025, an email from momsforlibertyduval@gmail.com was sent to DCPS, demanding investigation and discipline of Hope McMath for private social media posts she made about the death of Charlie Kirk. Am. Compl. ¶ 157. The email was signed "Moms for Liberty Duval." *Id.* At its initial investigative meeting, DCPS informed McMath that Moms for Liberty and/or its affiliate Moms

---

[1] https://lc.org/newsroom/details/032026-teachers-lawsuit-against-moms-for-liberty-should-be-dismissed

for Liberty-Duval was/were the complainant in her case. Am. Compl. ¶ 156. Even the District wasn't sure who/which was the source of the complaint.

10. Separately, at the state level, it appears that School Board Vice Chair April Carney — a longtime and devout Moms for Liberty and Moms for Liberty-Duval member (Am. Compl. ¶¶ 54-55), who touted M4L's endorsement on her campaign website (Am. Compl. ¶ 56), who wore a Turning Point USA t-shirt on the dais during official School Board business (Am. Compl. ¶ 57) — initiated a complaint with the FDOE.

11. Although the FDOE claimed it was an anonymous email from "americanpatriot2022," which started the investigation, that email was received several hours after the FDOE sent Ms. McMath (and about 50 other educators) a letter indicating an investigation was opened. Only one thing pre-dates that email- a single screenshot of Ms. McMath's comments about Charlie Kirk, which depicts evidence it was taken from Carney's own social media, identifying her as the source and initial complaint. Am. Compl. ¶¶ 160, 162, 219.[2]

12. At her next DCPS School Board meeting, Carney used her position on the School Board to publicly attack McMath, reading a six-minute anonymous email excoriating McMath at a Board meeting. This email was excoriating, accusing

---

[2] The FDOE does not have possession of the screenshot or how it was sent or who received it as of the date of this filing. However, a pdf of the screenshot appears in page 3 of its report.

McMath of "excusing murder as karma," questioning her mental health, and calling for consequences. Unlike all of the other speakers, Carney intentionally withheld disclosing the author or introducing the email into the record. Am. Compl. ¶¶ 254-259. No other speaker was given more than one minute. Am. Compl. ¶ 256.

13.     The M4LD complaint at the district level and the Carney complaint at the state level were nearly simultaneous. Discovery will establish details. The four corners of the Amended Complaint are all we have (and should) go on for now.

**B.     Moms for Liberty's Deliberate Organizational Structure: All of the Benefits, None of the Accountability.**

14.     The central issue in this Motion is not a technical argument about Florida corporate law. It is an argument about organizational design — specifically, how a national 501(c)(4) political organization has deliberately structured itself to enjoy all the benefits of having local chapters while insulating itself from accountability.

15.     Moms for Liberty, Inc. is a 501(c)(4) political organization founded in Florida in 2020, with approximately 300 affiliate chapters nationwide. Am. Compl. ¶ 69; Doc. 31-1 (Descovich Decl.), ¶¶ 3-5. These chapters are not casual groups of like-minded citizens. They are branded affiliates of the national organization, recognized on the national Moms for Liberty website, operating under the Moms for Liberty name, pursuing the Moms for Liberty agenda, and each reigning over

6

school system by system. Doc. 31-1, ¶¶ 4-5. The national organization takes credit for the chapters' work, routinely using the term "we" when describing chapter activities on its website. Am. Compl.

16. Throughout its website, Moms for Liberty, Inc. treats chapter actions and its own actions as interchangeable. *Id.*

17. But when it comes time to answer for what these chapters do (such as file complaints that triggers a state investigation threatening to destroy teaching careers), suddenly these 300 chapters are "legal nullities." They cannot be sued. They have no separate legal existence from their individual members. And good luck finding out who those members are, because M4L will not say.

18. This is not an accident of organizational structure. It is a feature. Moms for Liberty reaps the organizational (and likely substantial financial) benefit of 300 branded chapters carrying its name, pursuing its mission, filing complaints on its behalf, generating media attention, and creating political pressure — all while keeping those chapters deliberately unincorporated so that no one can hold them accountable. The national organization gets the credit; the chapters do the work; and when someone objects, everyone points at everyone else and says: "We don't exist."

19. This Court should not reward that design. Some Florida M4L chapters were at one point registered with the State of Florida before being dissolved. Am. Compl. ¶ 181. The decision not to incorporate is a deliberate choice, not a

circumstance — and it is a choice made by a sophisticated national organization represented by Liberty Counsel, a firm that is plainly aware of the litigation advantages that flow from keeping chapters off the corporate registry.

20.   Moms for Liberty-Duval, for its part, maintains its own email (momsforlibertyduval@gmail.com), its own social media pages, its own public identity, and is recognized on the Moms for Liberty, Inc. website at its dedicated chapter page. Am. Compl. ¶ 174; *see* https://portal.momsforliberty.org/chapters/duval-county-fl.

21.   This seems to be a matter of simple judicial estoppel. Judicial estoppel is an equitable doctrine invoked at a court's discretion. *New Hampshire v. Maine,* 532 U.S. 742, 750, 121 S. Ct. 1808, 1815, 149 L. Ed. 2d 968 (2001). Under the judicial estoppel doctrine, a party is precluded from "asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding. Judicial estoppel is an equitable concept intended to prevent the perversion of the judicial process." 18 James Wm. Moore et al., *Moore's Federal Practice* § 134.30, p. 134-62 (3d ed. 2000).

   **C.   Moms for Liberty-Brevard: The Identical Structure That Filed and Won a Lawsuit in This Court.**

22.   The inconsistency of the capacity argument is laid bare by a case Defendants' own counsel cites in their concurrent Motion to Dismiss (Doc. 32). In *Moms for Liberty-Brevard County v. Brevard Public Schools*, Case No. 6:21-cv-

01849 (M.D. Fla.), the Brevard County chapter of Moms for Liberty — an entity with the identical organizational structure to Moms for Liberty-Duval — filed a federal lawsuit in this very court. Am. Compl. ¶ 176. The Brevard chapter described itself in its own Amended Complaint (Doc. 78 in that case) as "The Brevard County Chapter of Moms for Liberty, a 501(c)(4) organization whose mission is to organize, educate and empower parents to defend their parental rights at all levels of government." Am. Compl. ¶ 177. Indeed, it used the corporate umbrella to forgive its own lack of standing.

23.     That case did not result in a motion to quash for lack of capacity. It proceeded through full litigation. It went to the Eleventh Circuit on appeal. *Moms for Liberty-Brevard Cnty. v. Brevard Pub. Schs.*, 118 F.4th 1324 (11th Cir. 2024). It ultimately settled — with Moms for Liberty, Inc. publishing a press release on its national website announcing: "Moms for Liberty has officially settled" and was "awarded over half a million." Am. Compl. ¶ 179. Note the first person. "Moms for Liberty" settled. Not "an independent chapter." Not "an unincorporated association with no legal existence." Moms for Liberty. Cynical.

24.     The pattern is unmistakable. When a M4L chapter sues, it is a real party with standing to invoke this Court's jurisdiction, and the national organization celebrates the victory as its own. When a chapter is sued, it is a "legal nullity" that does not exist. An organization that uses its chapters as swords cannot then claim

9

those same chapters are phantoms when someone picks up a shield. Judicial estoppel should not allow it.

**D.     Service on William Descovich.**

25.     Plaintiff served William Descovich at the residence of Tina Descovich, co-founder of Moms for Liberty, Inc., on December 16, 2025. (Doc. 20 Return of Service). The Descovich Declaration states that William is Tina Descovich's son and has no affiliation with Moms for Liberty-Duval. Doc. 31-1, ¶ 7. Most importantly, Moms for Liberty, Inc., was served the same way. It is not challenging the service, so the emphasis on the fact it was the founder's son seems to be selectively weaponized (and thus waived).

26.     Despite that, Plaintiff does not dispute that service on William Descovich was not ideal; however, as set forth below, (1) any deficiency in service has been waived; (2) the deficiency is a product of M4L's own organizational choices; (3) April Carney, a signed M4L member acting in M4L-Duval's interest, was properly served; and (4) any remaining deficiency is readily curable and does not warrant dismissal.

27.     Before addressing the merits of the service argument, the Court should recognize that Moms for Liberty-Duval has waived any deficiency in service through its extensive, voluntary participation in this litigation over the past three months.

10

28.     On December 29, 2025 — just seventeen days after service — Liberty Counsel filed a Motion to Extend Time to *Answer* the Complaint on behalf of Moms for Liberty, Inc. Doc. 8. That motion sought an extension of the deadline to "answer" — not to challenge service, not to contest jurisdiction under Fed. R. Civ. P. 12(b)(4) or 12(b)(5), but to respond to the merits of the Complaint. The motion presupposes that the defendant was properly served and subject to this Court's jurisdiction.

29.     On the same date, Liberty Counsel filed a Notice of Appearance. Doc. 9. Additional appearances followed on January 5, 2026 (Doc. 11) and January 29, 2026 (Doc. 17). Throughout this period, Liberty Counsel engaged in substantive conferral with Plaintiff's counsel, participated in joint motions regarding the filing of an Amended Complaint (Docs. 22, 24), and negotiated extensions — all without raising any challenge to service under Rule 12(b)(5).

30.     It was not until March 18, 2026 — more than three months after service and after extensive participation in the litigation — that Defendants first challenged service. This delay constitutes waiver under Fed. R. Civ. P. 12(h)(1), which provides that a defense of insufficient service of process "is waived" if omitted from a motion under Rule 12 or from a responsive pleading.

31.     Federal Rule of Civil Procedure 12(h)(1) expressly provides that defenses of insufficient process (Rule 12(b)(4)) and insufficient service of process (Rule 12(b)(5)) are waived if not raised in a party's first Rule 12 motion or responsive

11

pleading. The same Rule treats objections to personal jurisdiction identically, and the Eleventh Circuit has consistently held that a defendant who voluntarily appears and participates in litigation without timely asserting such defenses waives the right to later raise them. *See Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1360 (11th Cir. 2008) (general appearance waives jurisdictional objections under Rule 12(h)(1)); *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1299 (11th Cir. 2003) (filing motions and participating in litigation constitutes general appearance). The principle is the same whether the omitted defense sounds in jurisdiction or service: a party that litigates on the merits for three months without objection has forfeited the right to complain about process.

32.   By filing a motion to extend time to answer (Doc. 8), entering multiple appearances of counsel (Docs. 9, 11, 17), engaging in substantive conferral, and participating in joint motions (Docs. 22, 24), Moms for Liberty-Duval has made a general appearance in this case. The service challenge comes too late.

## II. ANY SERVICE DEFICIENCY IS A PRODUCT OF DEFENDANTS' OWN ORGANIZATIONAL CHOICES AND IS READILY CURABLE.

33.   Even if the service defect has not been waived, it does not warrant dismissal.

### A.   Moms for Liberty Created the Very Service Problem It Now Complains About.

34.   Consider the position Plaintiff was in. Moms for Liberty-Duval has no corporate registration in Florida — it does not appear on sunbiz.org. It has no

registered agent designated under Fla. Stat. § 48.091. It has no corporate filings of any kind. It has no publicly listed officers. It has no office address. It exists, for purposes of the public record, as an email address (momsforlibertyduval@gmail.com) and a page on the national Moms for Liberty website. Moms for Liberty-Duval even has McMath's counsel blocked on most of its social media channels.

35. Who, exactly, is Plaintiff supposed to serve? The Return of Service (Doc. 20) reflects that the process server served William Descovich at the residence of Tina Descovich — the co-founder of the national Moms for Liberty organization — and recorded him as the person "designated by law to accept service" for Moms for Liberty-Duval.

36. The process server made a reasonable determination based on the information available. The validity of that service was also not disputed by Moms for Liberty, Inc., as it filed a Motion to Dismiss (Doc 32). The Descovich residence was the only identifiable address associated with Moms for Liberty's national leadership. That Plaintiff could not identify a better target is a product of M4L's deliberate choice to operate its chapters without any public-facing corporate presence whatsoever.

37. A deliberately unstructured entity that provides no public mechanism for service — no registered agent under Fla. Stat. § 48.091, no corporate officer

under Fla. Stat. § 48.081, no filing with the Florida Division of Corporations — cannot then claim prejudice when a plaintiff, who made a good-faith effort to locate an appropriate person, serves someone associated with the entity's national leadership. This is not careless service. This is a defendant that designed an organizational structure to be un-servable, and now complains that Plaintiff took a reasonable step to serve it. Further, Plaintiff served the very person who it knew was acting on Moms for Liberty's behalf- April Carney.

**B.    April Carney — A Signed M4L Member Acting in M4L-Duval's Interest — Was Properly Served.**

38.    The Motion conspicuously ignores a critical fact: Defendant April Carney was separately and properly served in this action. Doc. 3 (Summons Issued); Doc. 7 (Summons for Carney). Carney is not merely a School Board member who happens to share M4L's political views. She is a signed Moms for Liberty member who executed a pledge to M4L. Am. Compl. ¶ 54. She touted M4L's endorsement on her campaign website. Am. Compl. ¶ 56. She personally provided screenshots from her own social media account that ended up in the investigative file used to prosecute McMath. Am. Compl. ¶¶ 160, 162, 219. She publicly attacked McMath from the dais at a School Board meeting in apparent coordination with M4L's campaign. Am. Compl. ¶¶ 254-259.

39.    In any meaningful sense, April Carney was acting as an agent and operative of Moms for Liberty-Duval. Her service provided M4L-Duval with actual

14

notice of this lawsuit — which is the fundamental purpose of service of process under the Due Process Clause. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (the "fundamental requisite of due process of law is the opportunity to be heard," which requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action"). M4L-Duval has had actual notice since day one. It has had counsel engaged since December 29, 2025. No one has been prejudiced. The service objection is gamesmanship, if not something it uses to fund and agenda raise, as exhibited by the Press Release noted above.

### C.   If Service Is Found Deficient, the Remedy Under Rule 4(m) Is Re-Service, Not Dismissal.

40.   It is well established in the Eleventh Circuit that when service is quashed, the court should grant the plaintiff leave to re-serve rather than dismiss the action, particularly where, as here, the statute of limitations has not expired and the plaintiff has demonstrated a good-faith effort to locate and serve the defendant. *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990) (quash of service should not automatically result in dismissal); Fed. R. Civ. P. 4(m) (court "must" extend time for service where plaintiff shows good cause); *see also Grisales v. Ocala Nat'l Bank*, 2013 WL 12155961, at *6 (M.D. Fla. May 16, 2013) (upon showing of insufficient service, Rule 12(b)(5) authorizes courts to either dismiss or

15

quash service and require perfection — a case Defendants themselves cited in the Motion).

41.    Plaintiff respectfully requests that, to the extent service is found deficient, this Court grant leave to re-serve within thirty (30) days. Given M4L-Duval's refusal to identify its own officers or members — and given that it has no registered agent, no corporate presence, and no publicly identifiable leadership — Plaintiff further requests that this Court order M4L-Duval, through its counsel, to designate an agent for service of process.

## III. MOMS FOR LIBERTY-DUVAL HAS CAPACITY TO BE SUED IN THIS ACTION.

### A.    Federal Rule 17(b)(3)(A) Governs Because Plaintiff's Claims Enforce Federal Constitutional Rights.

42.    The Motion relies on Federal Rule of Civil Procedure 17(b)(3), which provides that an entity's capacity to be sued is determined by "the law of the state where the court is located." But the Motion omits the critical exception in the Rule itself. Rule 17(b)(3) applies only "[f]or all other parties not [otherwise covered]." Subsection (A) of that same Rule — Fed. R. Civ. P. 17(b)(3)(A) — provides that capacity is determined by federal law for a party who seeks "to enforce a substantive right created by United States law."

43.    Plaintiff's Amended Complaint (Doc. 28) brings claims under 42 U.S.C. § 1983 for violations of the First and Fourteenth Amendments to the United

16

States Constitution. Am. Compl., Counts I-III. Section 1983 is a federal cause of action that enforces "substantive right[s] created by United States law." Under Rule 17(b)(3)(A), federal law — along with Florida law — governs Moms for Liberty-Duval's capacity to be sued on those claims.

44.    Further, federal courts have long recognized that unincorporated associations may be sued in federal court in actions arising under federal law. *United Mine Workers of Am. v. Coronado Coal Co.*, 259 U.S. 344, 385-91 (1922) (unincorporated labor union suable in federal court). The cases cited in Defendant's Motion — *Johnston v. Meredith*, 840 So. 2d 315 (Fla. 3d DCA 2003), *Asociacion de Perjudicados v. Citibank*, 770 So. 2d 1267 (Fla. 3d DCA 2000), and *Larkin v. Buranosky*, 973 So. 2d 1286 (Fla. 2d DCA 2008) — are all Florida state court decisions applying Florida law to state-law claims and are not on point with this case.

45.    Liberty Counsel knows this. In its concurrent Motion to Dismiss (Doc. 32), Liberty Counsel itself cites *Moms for Liberty-Brevard County v. Brevard Public Schools*, 118 F.4th 1324 (11th Cir. 2024), acknowledging that the Brevard chapter — an identically structured unincorporated chapter — was permitted to prosecute federal constitutional claims in this court. Liberty Counsel attempts to distinguish this by arguing that the Brevard chapter was enforcing First Amendment rights while McMath's claims against the Duval chapter are state tort claims. But this distinction

17

collapses on examination. McMath's Amended Complaint includes federal § 1983 claims against all Defendants, including Moms for Liberty-Duval, for conspiring with state actors to violate her First Amendment rights. Am. Compl., Counts I-III. If the Brevard chapter had capacity to assert First Amendment claims in this court, the Duval chapter has capacity to answer them. Key to this analysis is Moms for Liberty, Inc, Moms for Liberty Duval's influence on April Carney and other named Defendants.

### B. Moms for Liberty Is Judicially Estopped from Denying Chapter Capacity.

46.     Moms for Liberty, Inc. was inexplicably intertwined with the Brevard chapter as a plaintiff in this court, took public credit for the outcome on its national website, and published press releases celebrating the chapter's legal victory as its own — "Moms for Liberty has officially settled." Am. Compl. ¶ 179. Moms for Liberty, Inc. and its sister chapter cannot now take the opposite position when a different chapter is named as a defendant.

47.     The doctrine of judicial estoppel prevents a party from "playing fast and loose with the courts by taking inconsistent positions." *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002). The organizations are functionally one: Moms for Liberty, Inc. acknowledged the Brevard chapter's lawsuit as its own, celebrated the settlement, and the chapters operate under the parent organization's brand, guidelines, and structure. The national organization

cannot permit its chapters to invoke the jurisdiction of federal courts as plaintiffs while simultaneously arguing those same chapters are immune from suit as defendants.

### C.    Florida Law Does Not Bar Suit Where the Entity Has Operated as a De Facto Entity.

48.    Moms for Liberty-Duval operated an email account (momsforlibertyduval@gmail.com), maintained social media pages, held itself out publicly as an organization, was recognized on the national organization's website at its own dedicated chapter page, and — most critically — took affirmative action by filing a complaint against a public school teacher that directly caused the harm alleged in this lawsuit. Am. Compl. ¶¶ 156-157, 174. An entity that conducts itself in the world as an organization, and causes harm through its organizational conduct, should not be permitted to escape accountability by claiming it does not legally exist.

### D.    If M4L-Duval Lacks Capacity, the Proper Remedy Under Rules 17(a)(3) and 21 Is Amendment, Not Dismissal.

49.    Even if this Court were to conclude that Moms for Liberty-Duval cannot be sued in its present form, the proper remedy is not dismissal. Federal Rule of Civil Procedure 21 permits courts to add or drop parties "at any stage of the action" to ensure just adjudication. Where, as here, a capacity defect can be cured by substituting or joining the individual members responsible for the challenged conduct, dismissal with prejudice is unwarranted. *See, e.g.*, Fed. R. Civ. P. 21; *see*

19

*also* Fed. R. Civ. P. 17(a)(3) (providing that a court "may not dismiss an action" for failure to prosecute in the name of the real party in interest without first allowing "a reasonable time" for ratification, joinder, or substitution). Courts routinely permit amendment rather than dismissal where the plaintiff has acted in good faith and the correct parties can be identified through discovery.

50.    If Moms for Liberty-Duval is deemed to lack capacity, Plaintiff should be permitted to amend to name the individual members of the Duval chapter who were responsible for the acts alleged — including the persons who sent the complaint email from momsforlibertyduval@gmail.com on September 12, 2025. Am. Compl. ¶ 157. Dismissal with prejudice, as Defendants request, would be grossly disproportionate and unjust, particularly where Defendants have refused to identify the individual members of the Duval chapter or the person who sent the complaint email that started this entire matter.

## IV. LIBERTY COUNSEL'S CONDUCT UNDERMINES THE CLAIMED LEGAL POSITION.

51.    There is an uncomfortable irony in Liberty Counsel's posture in this case that the Court should note. On March 20, 2026 — two days after filing this very Motion — Liberty Counsel published a promotional post on its social media accounts featuring a graphic declaring: "A PUBLIC SCHOOL TEACHER CELEBRATED THE ASSASSINATION OF CHARLIE KIRK ONLINE. MOMS FOR LIBERTY RIGHTFULLY REPORTED HER POST FOR INVESTIGATION.

THE TEACHER RETALIATED AND WRONGFULLY SUED MOMS FOR LIBERTY FOR REPORTING HER. WE ARE FIGHTING FOR THIS BASELESS LAWSUIT TO BE DISMISSED."

52.     The post links to Liberty Counsel's own website, which uses this case to solicit support. This is not the conduct of counsel defending a legal nullity. This is the conduct of counsel for a real, functioning organization that takes real, consequential actions — filing complaints against public school teachers, generating media attention, raising money and political sympathy off of active federal litigation — and that should be held accountable for those actions in this Court.

53.     Liberty Counsel's cited authorities only underscore the weakness of its position. *Omni Capital International, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987), involved personal jurisdiction over a foreign commodities trader with no contacts whatsoever in the forum state — a factual universe entirely removed from this case, where M4L-Duval operated in this District, filed a complaint against a Duval County teacher, and is represented by counsel who has litigated here for months. *Kelly v. Florida*, 233 F. App'x 883, 885 (11th Cir. 2007), is an unpublished opinion in which the plaintiff failed to serve *anyone* — not a case of imperfect service, but no service at all. *Fitzpatrick v. Bank of New York Mellon*, 580 F. App'x 690, 694 (11th Cir. 2014), another unpublished opinion involving a mortgage foreclosure, actually supports Plaintiff's position given the good-faith efforts McMath undertook to locate and serve an entity that has deliberately made itself un-servable. And *Grisales v. Ocala National Bank*, 2013 WL 12155961, at *6 (M.D. Fla.

21

May 16, 2013) — a case Defendants themselves cited — stands for the very proposition that when service is found insufficient, the court may quash and permit re-service rather than dismiss. None of these authorities support dismissal with prejudice under the circumstances presented here.

WHEREFORE, Plaintiff, HOPE McMATH by and through her undersigned counsel, respectfully request that the Court 1. **Deny** Defendant Moms For Liberty the Motion to Quash in its entirety; 2. **In the alternative**, if the Court finds service deficient, grant Plaintiff thirty (30) days to perfect service on an appropriate officer or agent of Moms for Liberty-Duval, and order Defendants, through counsel, to designate an agent for service; 3. **In the further alternative**, if the Court finds that Moms for Liberty-Duval lacks capacity in its current form, grant Plaintiff leave to amend under Fed. R. Civ. P. 17(a)(3) and 21 to substitute the individual members of the Duval chapter responsible for the acts alleged in the Amended Complaint; and 4. **Deny** Defendants' request for dismissal with prejudice, and for any and all other relief this Court deems just and appropriate under the circumstances.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy hereof, was forwarded to Michael Kelley, Esq., Lawson, Huck, Gonzalez, PLLC, 4705 South Apopka Vineland Road, Suite 210, Orlando, FL 32819 michael@lawsonhuckgonzalez.com;

22

ashley@lawsonhuckgonzalez.com;    kim@lawsonhuckgonzalez.com (Counsel for Defendants Duval County Public Schools, Charlotte Joyce, April Carney, Melody Bolduc, Reginald Blount, Anthony Ricardo, Florida Department of Education, and Anastasios Kamoutsas, as Commissioner of Education) and Horatio Mihet, Esq. Liberty Counsel, P. O. Box 540774, Orlando, FL 32854, mstaver@lc.org; hmihet@lc.org; kheuser@lc.org (Counsel for Moms for Liberty, Inc. and Moms for Liberty – Duval) and was electronically filed in the U.S. District Court, Middle District of Florida, Jacksonville Division using the CM/ECF system, this 1st day of April, 2026.

Law Office of Phillips, Hunt & Walker

 **/s/ John M. Phillips**
JOHN M. PHILLIPS, ESQUIRE
Florida Bar Number: 0477575

 **/s/ William K. Walker**
WILLIAM WALKER, ESQUIRE
Florida Bar Number: 0085552
660 Park Street
Jacksonville, FL 32204
(904) 444-4444
(904)508-0683 (facsimile)
Attorneys for Plaintiff
jmp@floridajustice.com
william@floridajustice.com
anne@floridajustice.com

23