UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Jacksonville Division

| | |
|---|---|
| Hope McMath,<br><br>   Plaintiff,<br><br>  v.<br><br>Duval County Public Schools, et al.,<br><br>   Defendants. | Case No.: 3:25-cv-01498-HES-MCR |

**DEFENDANTS MOMS FOR LIBERTY AND MOMS FOR LIBERTY–DUVAL'S OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

The Court should deny Plaintiff Hope McMath leave to file her proposed Second Amended Complaint as to Defendants Moms for Liberty, Inc. and Moms for Liberty-Duval (collectively, "Moms for Liberty"). As argued in Moms for Liberty's fully briefed motion to dismiss (Doc. 32), McMath fails to state claims for tortious interference and malicious prosecution, and her 307-page proposed amended complaint does not cure the fundamental legal defects that warrant dismissal. Instead, it compounds those defects by lobbing scandalous personal attacks against Moms for Liberty's counsel, asserting a frivolous new cause of action, and attempting to manufacture jurisdiction over Moms for Liberty-Duval. "Because justice does not require district courts to waste their time on hopeless cases, leave may be denied if a proposed amendment fails to correct the deficiencies in the original complaint or otherwise fails to state a claim." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1255 (11th Cir. 2008). The Court should do so here for three reasons.

*First*, amendment would be futile. The proposed second amended complaint fails to state claims for tortious interference (Count VI) and malicious prosecution (Count VII). As to Count VI, Moms for Liberty, Inc. should be dismissed on the pleading's own terms, given that paragraphs 154 and 155 name only Moms for Liberty-Duval as engaging in the challenged conduct (Doc. 42-1 ¶¶ 154–155); at any rate, filing a truthful complaint with state officials about a public employee's conduct is neither improper nor unjustified. As to Count VII, McMath fails to state a claim both because the proposed complaint admits the underlying FDOE proceeding "remains pending" and that the favorable termination element "will be satisfied upon dismissal or termination" of that proceeding (*id.* ¶ 161), which means that McMath fails to meet a necessary element to prevail. The proposed pleading also attributes the investigation to the government's own internal direction and coordination, not to Moms for Liberty's alleged conduct (Doc. 42 ¶¶ 18, 35; Doc. 42-1 ¶¶ 50–53, 106); thus, Moms for Liberty cannot be the cause of the alleged harms. Finally, the proposed complaint's attacks on Moms for Liberty's own counsel are not only scandalous and unprofessional; they are irrelevant as to whether Moms for Liberty acted with malice and without privilege when it submitted its complaint to school officials.

*Second*, the new 42 U.S.C. § 1983 cause of action against Moms for Liberty fails as a matter of law. For one thing, McMath's Motion for Leave fails to disclose that she added it to the proposed amended complaint; as such, McMath never argues why adding a state-action claim carrying fee-shifting exposure under 42 U.S.C. § 1988 and

a request for injunctive relief against a private party would not be futile. On the merits, the allegations fail to plead the necessary conspiratorial agreement.

*Third*, naming Ellye Smith Aull does not confer jurisdiction over Moms for Liberty-Duval. Courts lack jurisdiction over Florida unincorporated associations because they neither can sue nor be sued. *Each member* of an unincorporated association must be named and served to confer jurisdiction. Naming just one alleged member, without any allegation that she may bind the association or accept service on its behalf (Doc. 42-1 ¶¶ 27–28), leaves Moms for Liberty-Duval exactly where the Motion to Dismiss found it—no jurisdiction (Doc. 32 at 20–22).

Because amending the operative complaint would be futile as to the Moms for Liberty Defendants, the Court should deny McMath's Motion for Leave to Amend.

## LEGAL STANDARD

Whether to grant leave to amend is within the Court's discretion. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). Although leave to amend should be freely given when justice requires, *see id.*, a court may deny a motion for leave to amend if "(1) there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) allowing [the] amendment would cause undue prejudice to the opposing party; or (3) amendment would be futile," *Alhallaq v. Radha Soami Trading, LLC*, 484 F. App'x 293, 298 (11th Cir. 2012) (citing *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999)).

3

## ARGUMENT

**A.   The Court should deny the motion to amend as futile because the proposed second amended complaint cannot survive dismissal.**

Allowing leave to amend would be futile because the proposed amended complaint would still be subject to dismissal. *See Burger King*, 169 F.3d at 1320. "The futility threshold is akin to that for a motion to dismiss; thus, if the amended complaint could not survive Rule 12(b)(6) scrutiny, then the amendment is futile and leave to amend is properly denied." *Bill Salter Advert., Inc. v. City of Brewton*, 2007 WL 2409819, at *2 (S.D. Ala. Aug. 23, 2007) (citing *Fla. Power & Light Co. v. Allis Chalmers Corp.*, 85 F.3d 1514, 1520 (11th Cir. 1996)).

The Rule 12(b)(6) lens brings the familiar pleading standards with it. A court must accept well-pleaded factual allegations of the complaint as true, but "[c]onclusory allegations, unwarranted factual deductions, or legal conclusions masquerading as facts … are not entitled to the assumption of truth." *Marmol v. St. Jude Med. Ctr.*, 132 F. Supp. 3d 1359, 1362 (M.D. Fla. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "To survive dismissal, the factual allegations must be 'plausible' and 'must be enough to raise a right to relief above the speculative level.'" *Miller v. Bank of New York Mellon*, 228 F. Supp. 3d 1287, 1290 (M.D. Fla. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "This requires 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

When focusing on Moms for Liberty's alleged conduct, not the legal labels McMath attaches to the facts, the proposed amended complaint shows on its face why

and how each count is asserted to impose tort liability on Moms for Liberty for their public advocacy. Because each count demonstrates that the suit's primary target is Moms for Liberty's protected petitioning and speech, and because the allegations fail to state causes of action, the proposed amended complaint fails as a matter of law.

### 1. The proposed second amended complaint still fails to state a claim for tortious interference.

As with her First Amended Complaint, McMath's proposed Second Amended Complaint fails to state a claim against Moms for Liberty for "tortious interference with employment relationship." (Count VI, Doc. 42-1 at 75.) To prevail on a claim for tortious interference, McMath must plead and prove "(1) the existence of a business relationship, not necessarily evidenced by an enforceable contract; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985). The proposed amended complaint fails to adequately plead that Moms for Liberty intentionally and unjustifiably interfered with an employment relationship.

At the outset, Count VI would be subject to dismissal as to Defendant **Moms for Liberty, Inc.**, because the proposed amended complaint alleges no facts tying it to the conduct set forth in the count. Paragraphs 154 and 155, which set forth the alleged actionable conduct, name only "M4L-Duval." (Doc. 42-1 ¶¶ 154–155.) Paragraphs 156 and 157 refer to "the M4L Defendants" (*id.* ¶¶ 156–157), a term paragraph 27 defines

to include Moms for Liberty, Inc. together with M4L-Duval (*id.* ¶ 27)—but none of the pertinent paragraphs alleges any act or omission by **Moms for Liberty, Inc.** *Cf. Mullins v. Micahels Org., LLC*, 2026 WL 764132, at *4 (M.D. Fla. Mar. 18, 2026) ("The complaint fails to identify … which defendant is responsible for which alleged conduct."). To avoid dismissal as an impermissible shotgun pleading, a complaint must plead each defendant's own conduct with enough factual content to state a plausible claim against that particular defendant. *See Shaw v. Scerbo*, 2022 WL 888921, at *3 n.3 (M.D. Fla. Mar. 25, 2022) ("Each count must identify by name the defendant who is alleged to be liable for the conduct described in the count, and set forth plausible facts showing the liability of *each named defendant*." (emphasis added)). Because the proposed amended complaint fails to identify the conduct for which Defendant Moms for Liberty, Inc. is liable, it is an improper shotgun pleading.

Setting aside that pleading deficiency, "a plaintiff alleging tortious interference must allege that Defendant employed some improper means in order to survive dismissal." *Sentry Data Sys., Inc. v. CVS Health*, 361 F. Supp. 3d 1279, 1295 (S.D. Fla. 2018). Improper methods may include "misrepresentations" and "illegal conduct." *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1280 n.9 (11th Cir. 2015) (citing *Standard Jury Instructions-Civ. Cases (99-1)*, 778 So. 2d 264, 269 (Fla. 2000)). McMath's proposed pleading alleges that Moms for Liberty-Duval "intentionally interfered with McMath's employment relationship by *filing the complaint* with DCPS" and "*coordinating or facilitating* FDOE involvement" through

6

"allies on the DCPS Board." (Doc. 42-1 ¶ 155 [emphasis added].) But "filing [a] complaint" with school officials about a teacher's public statements or allegedly "coordinating" with government officials on an issue of public concern are not "improper means" giving rise to tortious interference. *Sentry Data*, 361 F. Supp. 3d at 1295. Moms for Liberty simply used an ordinary, lawful mechanism by which any parent, employee, or member of the public brings a concern to the attention of the government body positioned to address it. "[W]hen plaintiffs have failed to adequately allege improper methods," the Eleventh Circuit "[has] followed the Florida courts and dismissed these claims." *Duty Free Americas*, 797 F.3d at 1280–81. This Court should do so here.

Moreover, Moms for Liberty's petitioning was justified and privileged. Moms for Liberty advocates for parental rights in education, transparency, and accountability in public schools. (Doc. 32 at 3.) Lawfully alerting school officials to a teacher's concerning public statements, as Moms for Liberty did here (Doc. 32-1), reflects a justifiable interest in ensuring that taxpayer-funded public employees are held to professional and ethical standards. *See Rowlin v. Alabama Dep't of Pub. Safety*, 200 F.R.D. 459, 461 (M.D. Ala. 2001) ("Citizens rightly hold their public agencies to high legal, moral, and ethical standards."). Such speech is also protected by the First Amendment, and thus McMath cannot recover in tort for whatever harm she allegedly suffered as a consequence. *See e-ventures Worldwide, LLC v. Google, Inc.*, 188 F. Supp. 3d 1265, 1274 (M.D. Fla. 2016) (citing the proposition that "protected speech cannot

serve as the basis for a claim of tortious interference with contractual relationships because the protected speech is per se lawful" (citation omitted)).

Relatedly, sending truthful information to government officials about a matter of public concern is privileged as a matter of law. *See Bongino v. Daily Beast Co.*, LLC, 477 F. Supp. 3d 1310, 1320 (S.D. Fla. 2020) ("[T]he statement is true and thus privileged by the First Amendment."). Indeed, "[l]awfully disclosing truthful information does not subject a defendant to liability to a plaintiff whose contract is disrupted as a result." Restatement (Third) of Torts: Liab. for Econ. Harm § 20 cmt. b (2020). This privilege "applies even if the information causes a contract to be breached and was disseminated by the defendant with that hope." *Id*. Moms for Liberty's email simply recited and included McMath's own social media posts. The email is before the Court. (Doc. 32-1.) It quotes McMath's own words, which she does not dispute. (Doc. 28 ¶ 64.)

### 2.    Amendment is futile because McMath still fails to state a viable claim for malicious prosecution.

McMath's proposed second amended complaint cannot and does not cure the fundamental legal deficiencies in her malicious prosecution claim. To support a claim of malicious prosecution, a plaintiff must establish, among five other elements, "the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff." *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004). McMath's own proposed pleading confronts the element and concedes it away: "The FDOE proceeding remains pending…. The favorable

termination element will be satisfied upon dismissal or termination of the FDOE proceeding." (Doc. 42-1 ¶ 161.) Count VII's prayer for relief carries the concession forward, seeking compensatory damages "which shall become due and owing upon favorable termination of the FDOE administrative proceeding in Plaintiff's favor." (*Id.* at 80.) By McMath's own pleading, her claim fails as a matter of law. *See Ware v. United States*, 971 F. Supp. 1442, 1461 (M.D. Fla. 1997) ("The failure of [plaintiff] to establish any one (1) of these six (6) elements is fatal to his [malicious prosecution] claim."). A complaint may not place a reservation for an element and ask the Court to hold the claim open while events unfold. Just as a cause of action missing an essential element "would necessarily fail" on a motion to dismiss, *St. Charles Foods, Inc. v. America's Favorite Chicken Co.*, 198 F.3d 815, 822–23 (11th Cir. 1999), so too here an amended complaint missing an element "would necessarily fail" as futile.

Count VII fails for a second, independent reason. The defendant must have been the *legal cause* of the original proceeding. *See Sharp v. City of Palatka*, 529 F. Supp. 2d 1342, 1347 (M.D. Fla. 2007). A defendant who "merely gives a statement to the proper authorities, leaving the decision to prosecute entirely to the uncontrolled discretion of the officer," has not caused anything. *Burge v. Ferguson*, 619 F. Supp. 2d 1225, 1240 (M.D. Fla. 2008) (quoting *McCraney v. Barberi*, 677 So. 2d 355, 356 (Fla. 1st DCA 1996)). Legal causation exists only where the defendant supplied information it "knew or should have known to be false" and that false information became "the determining factor in inducing the officer's decision." *Alterra Healthcare Corp. v. Campbell*, 78 So. 3d

9

595, 603 (Fla. 2d DCA 2011) (quoting *Orr v. Belk Lindsey Stores, Inc.*, 462 So. 2d 112, 114 (Fla. 5th DCA 1985)).

McMath's own motion for leave concedes that "[t]he investigation did not originate with an anonymous citizen complaint" but "originated with direct government-to-government coordination between DCPS officials and FDOE investigators." (Doc. 42 ¶ 18; *see also id.* ¶ 35 [conceding that the FDOE investigation "originated by internal direction"].) The proposed second amended complaint details, at length and with emphasis, that government officials drove this investigation themselves. (Doc. 42-1 ¶ 8.)[1] It alleges that the Commissioner "personally directed the investigation" (*id.* ¶ 85), that the Commissioner's office "was personally managing the pace and progress" of the matter (*id.* ¶ 53), and that the Board "directed or facilitated the investigation through Carney's contact with FDOE" (*id.* ¶ 106). Each of those allegations—accepted as true—shows that Moms for Liberty has no link in the causal chain.

---

[1] In fact, the proposed amended complaint's own timeline shows that FDOE's investigation began *before* M4L-Duval sent its complaint to DCPS. M4L-Duval did not submit its complaint to DCPS until approximately 2:56 p.m. on September 11, 2025. (Doc. 42-1 ¶ 42.) Twenty-two minutes earlier, at 2:34 p.m., FDOE investigator Kosec had already emailed DCPS that "Commissioner Kamoutsas wants me to look into social media postings made by Hope McMath." (*Id.* ¶ 47.) And before that, an unidentified DCPS Board member had already transmitted a screenshot of McMath's post to Kamoutsas or his senior staff "during the seven hours between 7:16 a.m. and 2:34 p.m." (*Id.* ¶ 37.) On the proposed complaint's own chronology, the Commissioner had already directed an investigation before the complaint which Count VII treats as its trigger was ever filed. A complaint submitted after an investigation is already underway cannot be what caused that investigation.

**B.      Leave should not be granted to disgrace this Court's docket with McMath's gratuitous attacks on Moms for Liberty's counsel.**

To allege the requisite malice to support her claims, and in an effort to plead around the *Noerr* doctrine, which "applies to persons who petition all types of government entities, including legislatures, administrative agencies, and courts," *Silverhorse Racing, LLC v. Ford Motor Co.*, 232 F. Supp. 3d 1206, 1211 (M.D. Fla. 2017), McMath tries a new tack: attacking Moms for Liberty's counsel (Doc. 42 ¶¶ 25–26; Doc. 42-1 ¶¶ 110–115).

McMath accuses Moms for Liberty's counsel, Liberty Counsel, of "monetizing McMath's case" and "us[ing] the pressure of ongoing legal proceedings to generate organizational revenue." (Doc. 42-1 ¶ 115.) She further accuses Liberty Counsel of waging a "public campaign against McMath … while she is a represented opposing party." (*Id.* ¶ 160.) The proposed pleading then takes a darker tone, personally naming a counsel of record in this case, Horatio Mihet, and accusing him of acting with a "purpose" to "use the legal system as an ideological weapon." (*Id.*)

The Court should not countenance a pleading that accuses an opposing party's counsel of "us[ing] the legal system as an ideological weapon." (Doc. 42-1 ¶ 160.) Not only would Moms for Liberty and their counsel be prejudiced by such scandalous accusations, thus warranting denial of leave to amend, *see* 6 Fed. Prac. & Proc. Civ. § 1487 (3d ed.), "[t]he kind of advocacy shown by [McMath's motion for leave and proposed second amended complaint] has no place in the administration of justice and should neither be permitted nor rewarded," *United States v. Young*, 470 U.S. 1, 9 (1985).

As the Florida Supreme Court observed: "Effective and zealous representation does not require antagonistic or acrimonious behavior. Whether orally or in writing, and whether in or out of court, lawyers should avoid vulgar language, *disparaging personal remarks*, or *acrimony toward other counsel*, parties, or witnesses." *The Fla. Bar v. Norkin*, 132 So. 3d 77, 90–91 (Fla. 2013) (quoting Guidelines for Professional Conduct, General Principles) (emphasis added). Scouring opposing counsel's personal Facebook page then alleging (falsely) that said counsel has a "persona" (Doc. 42-1 ¶ 156) and "public self-identification as 'Harry the Hammer'" (*id*. ¶ 160), conflicts with this Court's requirement that parties "be courteous and respectful to each other," *Rafferty v. Retrieval-Masters Creditors Bureau, Inc.*, 2018 WL 2058153, at *2 (M.D. Fla. May 1, 2018).[2]

In any event, McMath's attempt to implicate Liberty Counsel is meritless. In her view, social media communications and fundraising by Moms for Liberty's counsel is "direct evidence of malice supporting the malicious prosecution claim" (Doc. 42 ¶ 26) against *Moms for Liberty*, "circumstantial evidence of improper purpose" (*id*.), and evidence "demonstrate[ing] that [*Moms for Liberty*'s] primary purpose is not civic petitioning" (Doc. 42-1 ¶ 110). McMath cites no case for the proposition that

---

[2] If the Court nevertheless grants leave to file the proposed Second Amended Complaint, Defendants will promptly move to strike the scandalous and impertinent allegations concerning opposing counsel pursuant to Federal Rule of Civil Procedure 12(f). *See Blake v. Batmasian*, 318 F.R.D. 698, 701 n.4 (S.D. Fla. 2017) ("A matter is scandalous if it is both grossly disgraceful (or defamatory) and irrelevant to the action or defense. Black's Law Dictionary."); *accord United States v. Young*, 470 U.S. 1, 9 (1985) ("[C]ounsel, like his adversary, must not be permitted to make unfounded and inflammatory attacks on the opposing advocate.").

subsequent communications by a party's counsel made outside the scope of the representation is proof of a defendant's malice at the time they allegedly committed the tort. Nor could she. To prevail on a malicious prosecution claim, the requisite malice must have *instituted* the original proceeding. *See Beizer v. Judge*, 743 So. 2d 134, 136 (Fla. 4th DCA 1999); *see also Weiland v. Palm Beach Cnty. Sheriff's Off.*, 2013 WL 12177021, at *8 (S.D. Fla. May 16, 2013) ("For a malicious prosecution claim to succeed under Florida law, the prosecution must have been *initiated* both without probable cause and *with malice*." (emphasis added)). Every alleged act by Moms for Liberty's counsel concerning McMath's case occurred *after* Plaintiff filed suit in December 2025. (Doc. 42-1 ¶¶ 113–115.) Nothing in the proposed complaint alleges that said counsel had any role in the September 2025 complaint, the alleged conduct on which McMath's claims depends. The Court should not permit McMath to manufacture malice by attacking opposing counsel for protected speech that occurred long after the events giving rise to this case.

Similarly meritless is McMath's attempt to use Moms for Liberty's counsel's First Amendment-protected speech and fundraising to evade the *Noerr* doctrine. To support her allegation that Moms for Liberty's email to school officials was "not protected petitioning," and thus subject to the "sham exception" to the *Noerr* doctrine, *see Silverhorse*, 232 F. Supp. 3d at 1211, McMath points to what she characterizes as "Liberty Counsel's public campaign and documented fundraising revenue stream tied to McMath's case" and a "coordinated political attack on McMath conducted against her by her adversaries' counsel before a public audience while the case is pending."

13

(Doc. 42-1 ¶ 156.) To begin with, "[c]onclusory allegations, unwarranted factual deductions, or legal conclusions masquerading as facts … are not entitled to the assumption of truth." *Marmol*, 132 F. Supp. 3d at 1362 (citing *Iqbal*, 556 U.S. at 679). That being so, accusing Liberty Counsel of "monetizing McMath's case" and "us[ing] the pressure of ongoing legal proceedings to generate organizational revenue" (Doc. 42-1 ¶ 115), while vilifying individual attorneys with accusations that they "use the legal system as an ideological weapon" (*id.* ¶ 160), are "unwarranted factual deductions" entitled to no assumption of the truth, *Marmol*, 132 F. Supp. 3d at 1362.

More fundamentally, McMath cites no authority—nor could Moms for Liberty find any—for the novel proposition that a party can lose *Noerr* protection for pre-suit petitioning activity based on its counsel's subsequent protected speech months after the original petitioning occurred. Far from being "objectively baseless" so as to trigger the "sham exception" to the *Noerr* doctrine, *see Silverhorse*, 232 F. Supp. 3d at 1211 (citing *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993)), Moms for Liberty's September 2025 email was a good-faith petition to government officials requesting review of a public employee's conduct. (Doc. 32-1.) The First Amendment protects that communication regardless of what counsel later said or did. In any event, a nonprofit public-interest legal organization's fundraising to help defend an advocacy organization from a SLAPP does not and cannot retroactively strip *Noerr* protection from a client's earlier petitioning conduct. Nor does it somehow render the original complaint "objectively baseless." *See Silverhorse*, 232 F. Supp. 3d at 1211. Unsurprisingly, McMath cites no case holding otherwise.

Moreover, Liberty Counsel's speech itself is protected by the First Amendment and therefore cannot form the basis for tort liability. "[L]awyers' out-of-court statements regarding matters in litigation are entitled to First Amendment protection." *Iowa Supreme Ct. Bd. of Pro. Ethics & Conduct v. Visser*, 629 N.W.2d 376, 380 (Iowa 2001). And "the public and the media have an interest in access to facts and opinions about litigation because litigation has important public dimensions." Restatement (Third) of the Law Governing Lawyers § 109 cmt. b (2000). The only instance in which lawyers' out-of-court statements may be circumscribed is if the lawyer knows or reasonably should have known his remarks would create "a substantial likelihood of material prejudice." *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1037–38 (1991). No such showing could be made here.

Liberty Counsel published its remarks exclusively to its own supporters on its own communication platforms and in its own fundraising materials. The proposed second amended complaint makes this clear: it alleges that Liberty Counsel posted on its Instagram account (Doc. 42-1 ¶ 113), that Horatio Mihet posted on his personal Facebook page (*id*. ¶ 114), and that Liberty Counsel issued fundraising letters and communications describing the litigation (*id*. ¶¶ 114–115). These were not statements made to the press, to the public at large in a manner likely to taint a jury pool, or to any party or witness in the case. Thus, they created no "substantial likelihood of material prejudice" to any pending proceeding. *Gentile*, 501 U.S. at 1037–38. They were communications to an organization's existing supporters and donors, which itself is First Amendment-protected speech. *See Church of Scientology Flag Serv. Org., Inc. v.*

*City of Clearwater*, 2 F.3d 1514, 1543 (11th Cir. 1993) ("Solicitation by secular charities, as well as fundraising by political advocacy groups, no less than solicitation by religious organizations, are protected as aspects of First Amendment speech and associational freedoms." (internal citations omitted)).[3] McMath's attempt to transform these protected, non-prejudicial communications into evidence that Moms for Liberty's September 2025 email was "not protected petitioning" is both factually unsupported and legally untenable.

**C.      The proposed new cause of action for "Section 1983 Joint Action Under Color of State Law" would be subject to dismissal, and therefore leave to amend would be futile.**

Leave should likewise be denied because McMath's Motion fails to inform the Court that the proposed second amended complaint adds a new cause of action for "Section 1983 Joint Action Under Color of State Law" (Count X, Doc. 42-1 ¶¶ 174–182.) "A motion for leave to amend must 'state with particularity the grounds' justifying amendment of the complaint." *In re Jan. 2021 Short Squeeze Trading Litig.*, 76 F.4th 1335, 1355 (11th Cir. 2023) (quoting *Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1277 (11th Cir. 2018)); *cf. Jackson v. Baisden*, 2021 WL 11728217, at *2 (M.D. Ga. Mar. 30, 2021) ("If Plaintiff seeks to amend his Complaint, he must file a motion

---

[3] Further proof of McMath's frivolous theory is the proposed amended complaint's characterization of a statement by Liberty Counsel's chairman during a podcast as an "admission" of a "joint-action pipeline." Read Mr. Staver's quoted words: "Moms for the Liberty of Duval, the Duval chapter, … emailed Duval County Public Schools and the Florida Department of Education with screenshots of this teacher's public social media post." (Doc. 42-1 ¶ 115.) McMath does not allege how objectively and truthfully stating the basic facts of the case is an "acknowledgment" of a "joint-action pipeline." (*Id.*). Such characterizations receive no presumption of truth. *Iqbal*, 556 U.S. at 678.

to amend accompanied by the proposed amended Complaint, which sets out a concise statement of claims that Plaintiff *wishes to add* or replace." (emphasis added)). McMath failed to state with particularity that she wishes to add a new Section 1983 cause of action. The closest the Motion comes to acknowledging Count X exists is a single reference to unspecified "new claims" (Doc. 42 ¶ 39), but that reference neither names the claim nor offers a single reason why adding it would not be futile. That is no small omission, because Count X carries federal fee-shifting exposure under 42 U.S.C. § 1988 and seeks a permanent injunction against Moms for Liberty, prohibiting them from "publiciz[ing] disciplinary or licensure proceedings against McMath." (Doc. 42-1 at 94).

Setting aside that omission, and even construing the proposed amended complaint liberally, McMath's new cause of action is subject to dismissal as a matter of law. Count X alleges that Moms for Liberty, Inc., Moms for Liberty-Duval, and Ellye Smith Aull were "willful participants in a joint course of action with state officials" under color of state law. (Doc. 42-1 ¶ 178.) To be sure, a defendant need not always be a state official to act under color of state law. *See Harvey v. Harvey*, 949 F.2d 1127, 1133 (11th Cir. 1992). "It is enough that he is a willful participant in joint action with the State or its agents." *Id*. (quoting *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)). "But to show that defendants are subject to this conspiratorial form of § 1983 liability, 'the plaintiff must plead in detail, through reference to material facts, the relationship or nature of the conspiracy between the state actor(s) and the private persons.'" *Clark v. LC Halsten LLC*, No. 23-12499, 2026 WL 1004818, at *3 (11th Cir. Apr. 14, 2026)

17

(unpublished) (quoting *Harvey*, 949 F.2d at 1133). Specifically, the complaint must show contacts between the defendants that could prove private and alleged state actors had "reached an understanding" to violate the plaintiff's rights. *See Clark*, 2026 WL 1004818, at *3; *see also United States v. Solomon*, 686 F.2d 863, 869 (11th Cir. 1982) ("The primary requirement for establishing a conspiracy is the existence of an agreement."). Any relationship alleged, moreover, "must involve the specific conduct of which the plaintiff complains." *Sheets v. Woelk*, 817 F. Supp. 3d 1246, 1252 (M.D. Fla. 2026) (quoting *Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1278 (11th Cir. 2003)).

The proposed amended complaint's predicates fall woefully short of alleging a conspiratorial agreement. (Doc. 42-1 ¶ 178(a)–(f).) The September 11 complaint to Superintendent Bernier is, at most, an email received by a government official, but "[t]he lynchpin of a conspiracy is an agreement to inflict a wrong, not just an agreement to communicate." *Sheets*, 817 F. Supp. 3d at 1253 (citing *Bendiburg v. Dempsey*, 909 F.2d 463, 469 (11th Cir. 1990)). And the proposed pleading's own chronology admits the October 1 summit invitation to Kamoutsas—another communication—was "planned before his probable cause determination was issued." (Doc. 42-1 ¶ 68).[4] The pleading also fails to allege that any communication from or to

---

[4] Moreover, the proposed amended complaint alleges that Kamoutsas "addressed McMath's case" at the summit (Doc. 42-1 ¶ 178(d)), yet the proposed pleading elsewhere states that Kamoutsas addressed not McMath's case but instead "a teacher in Clay County, Florida" whose social media posts condoned Kirk's assassination (*id.* ¶ 61).

Moms for Liberty and Kamoutsas or any other official "involve[s] the specific conduct of which the plaintiff complains." *Sheets*, 817 F. Supp. 3d at 1252. In all, not one alleged predicate set forth in the proposed pleading shows an agreement—express or implied—between Moms for Liberty and the co-Defendants to violate McMath's rights or otherwise cause her injury. Pure speculation is insufficient to survive dismissal.

**D.    The proposed naming of Ellye Smith Aull as a defendant does not cure this Court's lack of jurisdiction over Moms for Liberty-Duval.**

As Moms for Liberty argued in its Motion to Dismiss (Doc. 32 at 20–22), this Court lacks jurisdiction over Moms for Liberty-Duval because it is an unincorporated association, which cannot be sued in its own right, *see Asociacion de Perjudicados v. Citibank*, 770 So. 2d 1267, 1269 (Fla. 3d DCA 2000). McMath now seeks to add Ellye Smith Aull as an individual defendant, "as principal of" Moms for Liberty-Duval (Doc. 42 ¶ 37), ostensibly to cure that defect (Doc. 42-1 ¶¶ 27–28). That attempt would be futile. "Process served only on the president of an unincorporated voluntary association is not sufficient to vest the court with jurisdiction over the individual members of the association." 3A Fla. Jur 2d Associations & Clubs § 24. "The individual members of a voluntary nonprofit unincorporated association in no way represent the entity through which the association functions, nor can one individual member be subject to personal judgment by service on another member." *Id*. "[T]hus, service of process is effective against an association only if it is served *on each member individually*." *Id*. (emphasis added).

Naming Aull as a defendant or serving her as principal of Moms for Liberty-Duval does not confer jurisdiction upon this Court. *Cf., e.g.*, *Walton-Okaloosa-Santa Rosa Med. Soc. v. Spires*, 153 So. 2d 325 (Fla. 1st DCA 1963) (holding that service of process upon president of local unincorporated medical society did not vest trial court with jurisdiction over individual members of local society); *Mt. Nebo Missionary Baptist Church v. Glee*, 14 So. 3d 1080, 1081 (Fla. 1st DCA 2009) ("Mt. Nebo was an unincorporated association and … its individual members were not served notice. Therefore, the trial court did not have personal jurisdiction over Mt. Nebo….").  The proposed amended complaint keeps Moms for Liberty-Duval as a named defendant in every count in which it appears. (Doc. 42-1 ¶¶ 27, 152, 158, 174.) It adds Aull as the association's only individually named member, identified solely as its "principal." (*Id.* ¶¶ 27–28.) But it alleges no authority in Aull to accept service for the association, to bind it, or to speak for it beyond her own membership. Jurisdiction is a threshold requirement. Until each member is named and served individually, this Court lacks jurisdiction over Moms for Liberty-Duval and its members.

## CONCLUSION

For the foregoing reasons, the Court should deny McMath leave to file a second amended complaint as to Defendants Moms for Liberty, Inc. and Moms for Liberty-Duval, and instead grant Moms for Liberty's Motion to Dismiss (Doc. 32).

Dated: July 14, 2026

Respectfully submitted,

/s/ Daniel J. Piedra

Mathew D. Staver (FBN 0701092)
Horatio G. Mihet (FBN 0611131)
Daniel J. Piedra (FBN 1074774)
Mariah Gondeiro (FBN 1070190)
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
court@lc.org
hmihet@ lc.org
dpiedra@lc.org
mgondeiro@ lc.org

*Counsel for Defendants Moms for
Liberty and Moms for Liberty-Duval*

21

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Respectfully submitted,

/s/ Daniel J. Piedra
Daniel J. Piedra

*Counsel for Defendants Moms for Liberty and Moms for Liberty-Duval*

22