**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

Case No. 3:25-cv-01498-HES-LLL

HOPE McMATH,

Plaintiff,

v.

THE SCHOOL BOARD OF DUVAL COUNTY, FLORIDA; CHARLOTTE JOYCE; APRIL CARNEY; MELODY BOLDUC; FLORIDA DEPARTMENT OF EDUCATION; ANASTASIOS KAMOUTSAS; DR. HENRY MACK, AS COMMISSIONER OF EDUCATION; MOMS FOR LIBERTY, INC.; MOMS FOR LIBERTY-DUVAL; and ELLYE SMITH AULL,

Defendants.

_____________________________________________/

# SECOND AMENDED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF AND DEMAND FOR JURY TRIAL

1. Plaintiff Hope McMath sues Defendants and alleges as follows. This is a civil-rights action arising from the retaliatory investigation and removal of a veteran public-school arts teacher because of a personal, off-duty social-media post she made as a private citizen on

a matter of public concern. Plaintiff seeks declaratory and injunctive relief, damages, and attorneys' fees.[1]

## I. JURISDICTION AND VENUE

2. This action arises under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. section 1983. This Court has subject-matter jurisdiction under 28 U.S.C. sections 1331 and 1343.

3. This Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. section 1367(a) because they form part of the same case or controversy as the federal claims.

4. This Court may grant declaratory and injunctive relief under 28 U.S.C. sections 2201 and 2202 and Federal Rules of Civil Procedure 57 and 65.

5. Venue is proper in the Middle District of Florida, Jacksonville Division, under 28 U.S.C. section 1391(b) because all Defendants reside in this District and the events giving rise to the claims occurred in Duval County, Florida.

[1] This Second Amended Complaint is timely filed pursuant to the Court's Order of September 9, 2026 (Dkt. 54), which granted Plaintiff's Motion for Extension of Time to File Second Amended Complaint and for Brief Continuance of the Preliminary Pretrial Conference (Dkt. 53), extended the deadline to file this pleading to September 21, 2026, and rescheduled the preliminary pretrial conference for October 14, 2026, at 1:30 p.m.

## II. PARTIES

6. Plaintiff Hope McMath is an adult resident of Duval County, Florida. At all material times she was employed as a visual-arts teacher at Douglas Anderson School of the Arts, a public school operated by Defendant The School Board of Duval County, Florida.

7. Defendant The School Board of Duval County, Florida ("DCPS"), is the body corporate established under section 1001.41(4), Florida Statutes, that operates the Duval County public school system. DCPS acts under color of state law and is a "person" within the meaning of 42 U.S.C. section 1983.

8. Defendant Charlotte Joyce was at all material times the Chair of the DCPS School Board. She is sued in her individual capacity for actions taken under color of state law and is a resident of Duval County, Florida.

9. Defendant April Carney was at all material times the Vice Chair of the DCPS School Board. She is sued in her individual capacity for actions taken under color of state law and is a resident of Duval County, Florida.

10. Defendant Melody Bolduc was at all material times a member of the DCPS School Board. She is sued in her individual capacity for actions taken under color of state law and is a resident of Duval County, Florida.

11. Defendant Florida Department of Education ("FDOE") is an agency of the State of Florida responsible for administering educator-certificate discipline under sections 1012.795 and 1012.796, Florida Statutes.

12. Defendant Anastasios Kamoutsas was at all material times the Commissioner of Education of the State of Florida and the chief executive officer of FDOE. He is sued in his individual capacity for damages to the extent authorized by law. During the pendency of this action, Dr. Henry Mack succeeded Commissioner Kamoutsas as Commissioner of Education. Defendant Dr. Henry Mack is sued in his official capacity only, for prospective declaratory and injunctive relief under *Ex parte Young*, 209 U.S. 123 (1908), and is automatically substituted for Commissioner Kamoutsas as to all official-capacity claims pursuant to Federal Rule of Civil Procedure 25(d).

13. Defendant Moms for Liberty, Inc. ("M4L, Inc.") is a Florida nonprofit corporation with its principal place of business in Florida. It operates a national network of local chapters or affiliates and advances its agenda in local jurisdictions through coordinated complaint campaigns, public advocacy, and support of aligned candidates for public office.

14. Defendant Moms for Liberty-Duval ("M4L-Duval") is the Duval County chapter or affiliate of M4L, Inc. It is an unincorporated association that operates under the Moms for Liberty banner and is recognized on M4L, Inc.'s website and its own social media. M4L-Duval signed and filed the complaint with DCPS that DCPS accepted as the operative complaint in its investigation of Plaintiff.

15. Defendant Ellye Smith Aull is the principal of M4L-Duval and a resident of Duval County, Florida. She is sued in her individual capacity for actions taken under color of state law and in her capacity as principal of the unincorporated association M4L-Duval.

## III. <u>FACTUAL ALLEGATIONS</u>

### A. ***Plaintiff's Employment and Protected Speech***

16. Plaintiff has spent her adult life as an artist and arts educator, including approximately twenty-three years at the Cummer Museum of Art and Gardens in Jacksonville, the last seven as its executive director. She holds Florida Educator's Certificate No. 1484487 in the area of Art.

17. Plaintiff has been employed by DCPS since 2022 and taught Advanced Placement Art History to eleventh- and twelfth-grade students at Douglas Anderson School of the Arts, an audition-only public arts magnet school. She has never been reprimanded or disciplined as a teacher, and no student, parent, or administrator ever complained of her teaching.

18. Plaintiff maintained personal Facebook and Instagram accounts on which she posted personal opinions, including on political subjects, as a private citizen and separate from her employment. Students who attempt to follow her are blocked, and she conducts no private communications with students outside the District's monitored platform.

19. On September 10, 2025, the political activist Charlie Kirk was killed. His death immediately became the subject of widespread national public commentary.

20. Later that day, while off duty and away from any work environment, Plaintiff authored a personal post on her own Facebook account commenting on the public reaction to Mr. Kirk's death, and separately shared on that account an image created by a political cartoonist. Neither item was made at school, during school hours, or in connection with Plaintiff's duties, and neither referenced any student.

### B. *The Department Opened Its Investigation Before Any Public Complaint*

21. The first item in FDOE's investigative file is a screen capture of Plaintiff's post. FDOE has no record of how that screen capture reached the agency or who sent it. The screen capture reached FDOE at 9:26 a.m. on September 11, 2025.

22. Upon information and belief, the screen capture in FDOE's file bears an on-screen avatar matching the Facebook profile photograph of Defendant April Carney, the Vice Chair of the DCPS School Board. The basis for pleading this allegation on information and belief is that FDOE has no record of the sender's identity, that the FDOE employee, Morgan

Thompson, who first relayed that such cases were incoming and who issued the letter opening the inquiry, is deceased and unavailable as a witness, and that Defendants have produced no records of the transmission.

23. At approximately 2:34 p.m. on September 11, 2025, the FDOE Chief of Professional Practices Services emailed DCPS's Executive Director of Professional Standards, stating that Commissioner Kamoutsas wanted him to look into social-media postings by Plaintiff and asking DCPS to confirm Plaintiff's employment, position, and worksite. That inquiry preceded every public complaint later placed in the record.

24. DCPS confirmed Plaintiff's employment within minutes, and within approximately nine minutes of the initial inquiry FDOE had scheduled a visit to Douglas Anderson. By approximately 4:30 p.m. that day, FDOE had issued and mailed a letter to Plaintiff opening its inquiry.

25. At approximately 2:56 p.m. on September 11, 2025, M4L-Duval submitted a complaint to DCPS, signed "Moms for Liberty Duval." No individual human complainant was ever identified in the DCPS investigation.

26. At approximately 11:00 p.m. on September 11, 2025, an anonymous email from the address "AmericanPatriot2022@protonmail.com" reported Plaintiff's posts to FDOE. That email arrived after FDOE had already opened its investigation and mailed its letter to Plaintiff, and FDOE does not accept anonymous complaints as a matter of policy.

27. The sequence is therefore established: Plaintiff's post reached FDOE from an unidentified sender before any complaint existed; the Commissioner's office directed an inquiry that afternoon; and the M4L-Duval complaint and the anonymous email followed. The State did not react to a public complaint; it moved first, and the private complaints trailed the State's own action.

### C. *The Commissioner's Personal Direction and Selective Treatment*

28. In the weeks following Charlie Kirk's death, FDOE opened approximately fifty investigations of Florida educators for social-media speech concerning that event. These investigations were opened notwithstanding that the speech at issue was, in each instance, off-duty citizen commentary on a matter of national public debate.

29. Upon information and belief, among those investigations Commissioner Kamoutsas personally directed the investigation of Plaintiff and personally made the probable-cause determination in her case, which was issued by letter dated October 8, 2025. The selection of Plaintiff for investigation, and the Commissioner's personal involvement in her case in particular, reflect targeting based on the viewpoint of her speech rather than any neutral enforcement criterion.

30. The Commissioner's office managed the pace and progress of Plaintiff's investigation directly, including directing internal follow-up after a news-media inquiry about Plaintiff's case in late September 2025.

## D. *The Investigation Found No Harm and No Disruption*

31. FDOE's investigator traveled to Douglas Anderson and interviewed approximately ten of Plaintiff's students. Not one indicated that they had been indoctrinated or politicized, that they had any problem with Plaintiff's social media, or that they had even seen the posts. No person affiliated with Douglas Anderson provided FDOE any evidence of disruption.

32. As FDOE's own fact finder, its investigator found no facts supporting any level of disruption in the school, the District, or the State

educational system; no student, teacher, or administrator whose work or education was impaired; no need for added security; no school function that stopped; and no protests or violence.

33. DCPS's investigator interviewed one person: Plaintiff. He identified no actual disruption, testifying that District policy speaks only of the "potential" for disruption; he was aware of no disruption that actually occurred; he identified no victim and no affected student. Neither investigator performed any First Amendment analysis.

34. The principal of Douglas Anderson, the only school administrator to address the matter, stated that the content of the post never came up at the school, that students, teachers, and parents were not discussing it, and that no student or parent ever raised it as a concern. He would return Plaintiff to the classroom today.

**E. *DCPS Board Conduct and the Moms for Liberty Defendants***

35. At a regular DCPS School Board meeting on October 7, 2025, Vice Chair April Carney read aloud, without attribution, an anonymous parent letter attacking Plaintiff by name.

36. Defendant Ellye Smith Aull authored that letter. On October 11, 2025, four days after the meeting, Aull publicly republished the letter

and acknowledged her authorship, stating that she was posting it "in its entirety" and that it "was sent to the entire board."

37. On or about April 29, 2026, Defendant Bolduc, in her official capacity as a DCPS School Board Member, appointed Aull as her District 7 representative to a DCPS subcommittee.

38. Throughout the same period, sitting members of the DCPS School Board, including Anthony Ricardo, maintained publicly accessible social media accounts on which they posted pointed political content comparable in tone and subject matter to the posts for which Plaintiff was investigated and removed from her classroom. No Board member was investigated, reassigned, or disciplined for that expression. The District's disparate treatment of comparable off-duty political speech, turning on the viewpoint expressed, is alleged in support of Plaintiff's viewpoint-discrimination and municipal-liability claims.

39. M4L-Duval, acting through its principal Aull, submitted the September 11, 2025 complaint to DCPS that DCPS accepted as the operative complaint initiating its investigation of Plaintiff.

40. M4L, Inc. operates the national chapter network of which M4L-Duval is the Duval County affiliate. During the pendency of the

complaint M4L-Duval filed, M4L, Inc. publicly promoted and hosted Commissioner Kamoutsas at a national event and published coordinated posts on its verified channels associating the Commissioner with its political agenda in his official capacity.

41. Through its Founder and Chairman, Mathew D. Staver, who also serves as counsel of record for the M4L Defendants, M4L, Inc. publicly stated that citizens "reported the teacher's public posts to Moms for Liberty, which then forwarded the concerns to school officials, the Duval County Public Schools (DCPS), and the Florida Department of Education (FDOE) for review." That published statement is an acknowledgment, by a party through its Chairman and counsel, of Moms for Liberty's forwarding of the matter to both the employing district and the licensing agency. Upon information and belief, M4L, Inc. directed, coordinated with, or ratified M4L-Duval's complaint against Plaintiff as part of a national model of using government enforcement mechanisms against ideological targets.

**F. *Continued Removal and Injury***

42. After her posts were disseminated, Plaintiff received specific threats directed at her and her family, arriving in her private messages

from individuals outside her community. The record thus reflects harm flowing toward Plaintiff on account of her speech, not any harm flowing from it.

43. On September 15, 2025, DCPS reassigned Plaintiff to its Art Resource Center and removed her from the classroom. The DCPS investigation closed with a verbal warning and coaching, and DCPS sought no further discipline; the certificate proceeding by the Commissioner nonetheless continued.

44. Plaintiff remained removed from the classroom while she was reassigned, and her part-time teaching contract ended on June 30, 2026. The only interruption of her service was the government's own precautionary action. Plaintiff has suffered and continues to suffer loss of employment, income, professional standing, and the exercise of her constitutional rights.

45. On September 18, 2026, Administrative Law Judge Garnett W. Chisenhall of the Division of Administrative Hearings issued his Recommended Order in *Mack v. McMath*, DOAH Case No. 25-5786PL (as amended September 21, 2026, to correct a scrivener's error), recommending that the Education Practices Commission enter a Final

Order dismissing all five counts against Plaintiff's Educator Certificate. The Recommended Order made specific factual findings dispositive of the State's and DCPS's asserted justifications for Plaintiff's discipline, including: (a) that the DCPS investigator "found no evidence that the operations of Douglas Anderson or the School District were disrupted" and identified "no teacher, administrator, or student within the School District who complained about Ms. McMath" and "no students who viewed the social media posts at issue"; (b) that the FDOE investigator likewise "found no evidence that the social media postings at issue disrupted operations at Douglas Anderson or anywhere else within the School District" and "no evidence that the social media postings at issue were made via school property or during school hours"; (c) that Principal Timothy Feagins credibly testified: "The content of the posts never came up at the school. Students weren't talking about it. Teachers weren't talking about it. Parents weren't talking about it. . . . Not one of those students or parents ever said anything about the posts."; (d) that Principal Feagins would like to have Plaintiff "back," and that "[t]here was no explanation as to why the School District transferred Ms. McMath to a non-teaching position"; and (e) that the Commission "failed to

demonstrate that those students' learning and/or mental health would have been negatively impacted" and "did not present any evidence indicating that a reasonable person might conclude that Douglas Anderson and/or the School District shared the sentiments expressed in Ms. McMath's social media postings." The ALJ further found that "the Record lacks any persuasive explanation for why the School District took that action"; that "the evidence conclusively demonstrates that [Plaintiff] is still capable of being an effective classroom teacher"; and that there was "no competent, substantial evidence to support a finding Ms. McMath's conduct brought her or the education profession into public disgrace or disrespect." The Recommended Order confirms, in a fully briefed and adjudicated administrative proceeding, that no reasonable factual predicate existed for the Government Defendants' investigations, reassignment, or continuing removal of Plaintiff from her classroom, and it credits the same absence of harm and disruption Plaintiff has alleged from the outset of this action. Analogous Recommended Orders have issued in other Kirk-speech educator cases: *Martin Cnty. Sch. Bd. v. Theobald*, DOAH Case No. 25-6580TTS (Rec. Order June 17, 2026), and *Sumter Cnty. Sch. Bd. v. Thorton*, DOAH Case No. 25-5430TTS (Rec.

Order June 26, 2026), each recommending dismissal or rescission of comparable discipline.[2]

## IV. CAUSES OF ACTION

### COUNT I. Declaratory and Injunctive Relief: DCPS Policy 6.84(D)(1) (Defendant DCPS)

46. Plaintiff realleges and incorporates paragraphs 16 through 45 as if fully set forth herein.

47. DCPS Policy 6.84(D)(1), on its face and as applied to Plaintiff, restricts the off-duty speech of public employees on matters of public concern without any showing of disruption to school operations, in violation of the First and Fourteenth Amendments. Plaintiff is entitled to a declaration that the policy is unconstitutional on its face and as applied, and to an injunction restraining its enforcement against protected off-duty speech.

### COUNT II. Declaratory and Injunctive Relief: Section 1012.795(1) as Applied (Defendants FDOE and Dr. Henry Mack, as Commissioner of Education, in his official capacity)

[2] Because the administrative proceeding has not yet terminated by final order, Plaintiff does not assert a claim for malicious prosecution in this pleading. Plaintiff omits that claim without waiver and expressly reserves the right to assert malicious prosecution and related claims, in this action or by separate action, upon favorable termination of the administrative proceeding.

48. Plaintiff realleges and incorporates paragraphs 16 through 45 as if fully set forth herein.

49. Section 1012.795(1), Florida Statutes, as applied by FDOE to sanction Plaintiff's off-duty, off-campus speech on a matter of public concern, is unconstitutionally vague and overbroad and fails to constrain arbitrary and viewpoint-based enforcement, in violation of the First and Fourteenth Amendments. Plaintiff is entitled to declaratory and injunctive relief.

**COUNT III. First Amendment Retaliation**
**42 U.S.C. § 1983**
**(DCPS, Kamoutsas, Joyce, Carney, and Bolduc)**

50. Plaintiff realleges and incorporates paragraphs 16 through 45 as if fully set forth herein.

51. Plaintiff's September 10, 2025 post was speech by a private citizen on a matter of public concern, made off duty and off campus, bearing no nexus to her classroom duties.

52. Defendants took adverse action against Plaintiff because of that protected speech, including opening an investigation, reassigning her, removing her from the classroom, and pursuing certificate discipline.

Each action would deter a person of ordinary firmness from engaging in protected speech.

53. Plaintiff's protected speech was the but-for and substantial motivating cause of the adverse action. The causal connection is shown by the immediacy of the response, by Defendants' own investigators finding no disruption, no affected student, and no harm of any kind, and by the fact that the discipline was pursued on a record devoid of the injury the governing standard requires. The asserted justifications are pretextual; the true motivation was the viewpoint Plaintiff expressed. Defendants acted under color of state law, causing Plaintiff injury. The retaliation is continuing: DCPS has maintained Plaintiff's reassignment from the classroom even after an impartial state tribunal, applying the clear-and-convincing standard to DCPS's own investigator's testimony, found no evidence of disruption, no student who saw the post, no complaint about Plaintiff from any teacher, administrator, parent, or student, and no persuasive explanation for the reassignment.

54. The September 18, 2026 Recommended Order in Mack v. McMath, DOAH Case No. 25-5786PL (as amended September 21, 2026), provides post-suit confirmation that the Government Defendants'

investigation, reassignment, and continuing removal of Plaintiff were undertaken without any factual or legal basis sufficient to sustain educator discipline under the clear-and-convincing-evidence standard. The Recommended Order found that neither DCPS's nor FDOE's investigators identified any disruption of school operations, any complaining student, teacher, administrator, or parent, or any student who viewed Plaintiff's posts. That factual record, developed through discovery and adjudicated at a full evidentiary hearing before an impartial state tribunal, forecloses any post-hoc justification for Defendants' adverse action against Plaintiff's protected speech.

**COUNT IV. Viewpoint Discrimination**
**42 U.S.C. § 1983**
**(DCPS, Joyce, Carney, and Bolduc)**

55. Plaintiff realleges and incorporates paragraphs 16 through 45 as if fully set forth herein.

56. Defendants targeted Plaintiff's speech because of the viewpoint it expressed, while not subjecting comparable speech expressing favored viewpoints to investigation or discipline, in violation of the First and Fourteenth Amendments. Defendants acted under color of state law, causing Plaintiff injury.

### COUNT V. Violation of Section 1003.4505 Florida Statutes (Defendant DCPS)

57. Plaintiff realleges and incorporates paragraphs 16 through 45 as if fully set forth herein.

58. Section 1003.4505, Florida Statutes, prohibits district school boards and their administrative personnel from taking affirmative action that infringes the rights afforded to instructional personnel by the First Amendment absent express written consent. DCPS took such affirmative action against Plaintiff, including her removal from the classroom under Policy 6.84(D)(1) because of her protected speech, without her consent. DCPS's actions violated that statute, entitling Plaintiff to declaratory and injunctive relief.

### COUNT VI. Tortious Interference with Employment Relationship (M4L-Duval, Aull, and M4L, Inc.)

59. Plaintiff realleges and incorporates paragraphs 16 through 45 as if fully set forth herein.

60. Plaintiff had a business and employment relationship with DCPS of which each of these Defendants was aware.

61. M4L-Duval, acting through its principal Aull, intentionally and without justification interfered with that relationship by filing the September 11, 2025 complaint that DCPS accepted as the operative complaint initiating its investigation of Plaintiff. That complaint was objectively baseless and a sham: it identified no complaining student, parent, or employee; no disruption had occurred or was reasonably foreseeable from off-duty posts on Plaintiff's personal account; and, as the Recommended Order, amended September 21, 2026, confirms on the sworn record, no factual or legal basis existed for discipline. No objectively reasonable complainant could have expected the outcome nominally sought, and the complaint was filed to injure Plaintiff through the machinery of government process rather than to obtain any legitimate outcome of that process.

62. Aull intentionally and without justification interfered with that relationship by authoring the anonymous parent letter read aloud at the October 7, 2025 Board meeting and by publicly republishing it on October 11, 2025.

63. M4L, Inc. intentionally and without justification interfered with that relationship through its own conduct, including operating the

national chapter network that filed the complaint, promoting and hosting the Commissioner during the pendency of that complaint, acknowledging through counsel the coordinated dual filing to DCPS and FDOE, and directing, coordinating with, or ratifying M4L-Duval's objectively baseless complaint.

64. The interference by each of these Defendants was a proximate cause of Plaintiff's investigation, reassignment, and loss of her teaching position, causing Plaintiff damages.

**COUNT VII. Monell Municipal Liability**
**42 U.S.C. § 1983**
**(Defendant DCPS)**

65. Plaintiff realleges and incorporates paragraphs 16 through 45 as if fully set forth herein.

66. DCPS maintained a policy, custom, or practice that was the moving force behind the violation of Plaintiff's First and Fourteenth Amendment rights, including its enforcement of Policy 6.84(D)(1) against protected off-duty speech and a practice of investigating and removing educators for disfavored off-duty expression without any showing of disruption.

67. The unconstitutional conduct was undertaken by, or ratified by, DCPS's final policymaking authority, the Superintendent and School Board, whose members participated in and amplified the campaign against Plaintiff and who maintained her removal from the classroom. The ratification was manifest in the record before the Division of Administrative Hearings: DCPS itself imposed a verbal warning and coaching only, yet nonetheless removed Plaintiff from her classroom without any recorded explanation, and it has maintained that removal to the present day. The state tribunal expressly found "no explanation as to why the School District transferred Ms. McMath to a non-teaching position" and "no persuasive evidence" that Plaintiff's effectiveness was reduced. The decision to maintain the reassignment despite the absence of any lawful basis represents an affirmative choice by the final policymaker and constitutes ratification of the underlying unconstitutional conduct, deliberate indifference to Plaintiff's clearly established First Amendment rights, and a policy or custom of viewpoint-selective enforcement of DCPS Policy 6.84(D)(1). The deprivation was therefore the result of official DCPS policy or custom, not the isolated act of a subordinate employee.

**COUNT VIII. Right to Petition and Public-Forum Viewpoint Discrimination**
**42 U.S.C. § 1983**
**(Joyce, Carney, and Bolduc)**

68. Plaintiff realleges and incorporates paragraphs 35 through 45 as if fully set forth herein.

69. The DCPS Board meeting was a designated or limited public forum. Defendants administered that forum in a viewpoint-discriminatory manner, including by amplifying an anonymous attack on Plaintiff while disfavoring speech supporting her, in violation of the First and Fourteenth Amendments. Defendants acted under color of state law, causing Plaintiff injury.

**COUNT IX. First Amendment Retaliation via Joint Action Under Color of State Law**
**42 U.S.C. § 1983**
**(M4L-Duval, Aull, and M4L, Inc.)**

70. Plaintiff realleges and incorporates paragraphs 21 through 45 as if fully set forth herein.

71. The private Defendants and the state Defendants reached an understanding and agreement, express or tacit, and engaged in a coordinated arrangement to use government enforcement power against Plaintiff because of her protected speech, constituting joint action under

color of state law. Acting jointly with the state Defendants, the private Defendants retaliated against Plaintiff for her protected First Amendment speech in violation of the First and Fourteenth Amendments to the United States Constitution, redressable under 42 U.S.C. § 1983.

72. The coordination is shown not by political alignment but by the operational sequence: Plaintiff's post reached FDOE from an unidentified sender at 9:26 a.m. on September 11, 2025, bearing an avatar matching Board Vice Chair Carney's profile; the Commissioner's office directed an FDOE inquiry at 2:34 p.m., before any public complaint existed; M4L-Duval filed its DCPS complaint at 2:56 p.m.; and M4L, Inc., through its Chairman and counsel, publicly acknowledged that Moms for Liberty forwarded the matter to both DCPS and FDOE for review.

73. Through this arrangement the private Defendants identified: Plaintiff as a target and transmitted her speech to state actors outside ordinary channels; the Commissioner personally directed the investigation and the probable-cause determination; and DCPS maintained Plaintiff on reassignment. Each Defendant acted willfully toward a common, unconstitutional objective, causing Plaintiff injury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Hope McMath respectfully requests that this Court:

a. Declare that DCPS Policy 6.84(D)(1) and section 1012.795(1), Florida Statutes, are unconstitutional on their face and as applied to Plaintiff's protected off-duty speech;

b. Enter preliminary and permanent injunctive relief restraining Defendants from enforcing the challenged policy and statute against Plaintiff's protected speech and from maintaining her removal from the classroom on that basis;

c. Award compensatory damages against the Defendants liable under the federal and state claims;

d. Award Plaintiff's reasonable attorneys' fees and costs under 42 U.S.C. section 1988 and other applicable law;

e. Order Defendant The School Board of Duval County, Florida to reinstate Plaintiff to a full-time AP Art History teaching position at Douglas Anderson School of the Arts, with restoration of all incidents of employment, in light of the Recommended Order's (amended September 21, 2026) findings that no factual basis existed for her removal; and

f. Award such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

## CERTIFICATION REGARDING THE USE OF GENERATIVE ARTIFICIAL INTELLIGENCE

I HEREBY CERTIFY that generative artificial intelligence was used in the drafting and preparation of this filing. I further certify that the AI-generated content was diligently reviewed by a human for accuracy and applicability, including verification that all factual assertions, legal citations, and characterizations of legal authority are accurate, and that no fictitious or hallucinated authority has been cited. I acknowledge that reliance on generative AI alone does not satisfy the "reasonable inquiry" required under Fed. R. Civ. P. 11(b).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy hereof was forwarded to Michael Kelley, Esq., Lawson, Huck, Gonzalez, PLLC, 4705 South Apopka

Vineland Road, Suite 210, Orlando, FL 32819 michael@lawsonhuckgonzalez.com; adam@lawsonhuckgonzalez.com; ashley@lawsonhuckgonzalez.com; eric@lawsonhuckgonzalez.com (Counsel for Defendants The School Board of Duval County Florida, Charlotte Joyce, April Carney, Melody Bolduc, Florida Department of Education, and Anastasios Kamoutsas, as Commissioner of Education) and Horatio Mihet, Esq. Liberty Counsel, P. O. Box 540774, Orlando, FL 32854, hmihet@lc.org; dpiedra@lc.org; (Counsel for Moms for Liberty, Inc. and Moms for Liberty - Duval) and was electronically filed in the U.S. District Court, Middle District of Florida, Jacksonville Division using the CM/ECF system, this 21st day of September, 2026.

Law Office of Phillips, Hunt & Walker

**/s/ John M. Phillips**
JOHN M. PHILLIPS, B.C.S.
Florida Bar Number: 0477575

**/s/ William K. Walker**
WILLIAM K. WALKER, ESQUIRE
Florida Bar Number: 0085552
660 Park Street
Jacksonville, FL 32204
(904) 444-4444
(904) 508-0683 (facsimile)

Attorneys for Plaintiff
jmp@floridajustice.com
william@floridajustice.com
anne@floridajustice.com