# Exhibit C

**BEFORE THE EDUCATION PRACTICES COMMISSION**
**OF THE STATE OF FLORIDA**

DR. HENRY MACK, AS
COMMISSIONER OF EDUCATION,

Petitioner,

v. DOAH Case No.: 25-5786PL

EPC Case No.: 250853TC

HOPE McMATH,

Respondent,

___________________________________/

**RESPONDENT'S RESPONSE TO PETITIONER'S EXCEPTIONS TO AMENDED RECOMMENDED ORDER**

**INTRODUCTION**

1. Respondent, Hope McMath, by and through undersigned counsel, hereby responds to Petitioner's Exceptions to the Amended Recommended Order ("Exceptions") entered by Administrative Law Judge G.W. Chisenhall on September 21, 2026. For the reasons set forth below, Petitioner's Exceptions should be denied in their entirety, and the Amended Recommended Order dismissing all charges should be adopted as the Final Order of the Commission.

## STANDARD OF REVIEW

2. The Commission's authority to modify or reject an Administrative Law Judge's recommended order is strictly circumscribed by statute. Section 120.57(1)(l), Florida Statutes, draws a sharp line between findings of fact and conclusions of law.

3. **As to findings of fact, the Commission may reject or modify them *only* if it first determines, from a review of the complete record, and states with particularity, that the findings were not based upon competent substantial evidence or that the proceedings did not comply with essential requirements of law.** § 120.57(1)(l), Fla. Stat. The Commission may not reweigh the evidence, resolve conflicts in the testimony, or assess the credibility of witnesses, as those are matters within the sole province of the Administrative Law Judge. *Heifetz v. Dep't of Bus. Reg.*, 475 So. 2d 1277, 1281 (Fla. 1st DCA 1985); *see also Goin v. Comm'n on Ethics*, 658 So. 2d 1131 (Fla. 1st DCA 1995) (agency may not reject what is in substance a factual finding merely because it is labeled a "conclusion of law").

4. **As to conclusions of law, the Commission may reject or modify them only if they fall within its substantive jurisdiction and it states with particularity its reasons for rejecting or modifying such conclusion of law or interpretation of administrative rule and finds that its substituted conclusion of law or interpretation of administrative rule is as or more reasonable than that**

**which was rejected or modified.** § 120.57(1)(l), Fla. Stat. (emphasis added). Critically, "[r]ejection or modification of conclusions of law may not form the basis for rejection or modification of findings of fact." *Id.*

5. This proceeding is penal in nature, and the Commissioner therefore bears the burden of proving the charges by clear and convincing evidence. *Dep't of Banking & Fin. v. Osborne Stern & Co.*, 670 So. 2d 932, 935 (Fla. 1996). The applicable statutes and rules must be strictly construed, with any ambiguity resolved in favor of the licensee. *Elmariah v. Dep't of Prof'l Reg.*, 574 So. 2d 164, 165 (Fla. 1st DCA 1990); *Beckett v. Dep't of Fin. Servs.*, 982 So. 2d 94, 100 (Fla. 1st DCA 2008).

6. Measured against these exacting standards, Petitioner's Exceptions fail at every turn. They amount to a wholesale invitation for the Commission to reweigh the evidence, second-guess the ALJ's credibility determinations, and substitute the Commissioner's preferred interpretation of the facts for the findings made by the trier of fact who actually heard the witnesses. The law forbids that.

**RESPONSE TO EXCEPTION NO. 1**

**Count I — Gross Immorality**

7. Petitioner's first exception contends that the ALJ erred in concluding that Ms. McMath's social media posts did not constitute "gross immorality" under § 1012.795(1)(d), Florida Statutes, and Rule 6A-10.083(1). Petitioner argues that the

ALJ (1) measured "public disgrace" by the wrong audience, (2) treated the non-exhaustive provisions of Rule 6A-10.083(2)–(6) as "limits," and (3) failed to apply the first three prongs of the four-part definition. Each contention is meritless.

### A. The ALJ Applied the Correct Analytical Framework

8. Rule 6A-10.083(1) defines "gross immorality" as conduct that is "(a) inconsistent with the standards of public conscience and good morals; (b) sufficiently notorious as to bring the individual concerned or the education profession into public disgrace or disrespect and impair the individual's service in the community; (c) serious rather than minor in nature; and (d) a flagrant disregard for moral standards." The ALJ's Amended Recommended Order quotes this definition in full and analyzes it. See Am. Rec. Order §§ 27–32.

9. Petitioner complains that the ALJ focused on the classroom and school community rather than the broader public. But the rule itself requires that the conduct "impair the individual's service in the community." That is exactly what the ALJ evaluated—and the unrebutted evidence was devastating for Petitioner:

- No teacher, administrator, or student at Douglas Anderson ever complained about Ms. McMath's posts. T. 79:16–24; 81:1–5; 107:13–23; 111:6–18.
- Not a single one of the approximately ten students Mr. Kosac interviewed had even *seen* Ms. McMath's posts, let alone been harmed by them. T. 107:13–17; 111:12–18.

• Principal Feagins testified: "The content of the post never came up at the school. Students weren't talking about it. Teachers weren't talking about it. Parents weren't even talking about it." T. 133:4–7.

• "Not one of those students or parents ever said anything about the posts." T. 133:12–13.

• Students who were interviewed shared "very positive information" about Ms. McMath. T. 112:17–20.

• No disruption occurred at any level—no protests, no violence, no added security, no school functions stopped. T. 81:7–12; 110:7–17; 112:21–113:23.

10. This is not a case where the ALJ looked at the wrong audience. It is a case where the Commissioner searched for *any* audience that was actually affected by Ms. McMath's off-duty speech and found none. The ALJ's finding that "there is a lack of clear and convincing evidence to support Count I" (Am. Rec. Order § 30) is a factual determination supported by competent substantial evidence, and the Commission lacks authority to disturb it.

### B. The ALJ Did Not Treat Subsections (2)–(6) as "Limits"

11. Petitioner mischaracterizes the ALJ's analysis. The ALJ discussed subsections (2) through (6) because the Commissioner's own Proposed Recommended Order relied on them. The ALJ observed that Ms. McMath's conduct does not fall within any of the categories enumerated in subsection (2)—it was not a felony or first-degree misdemeanor, not intentional falsification, and not a test-security violation—and that no reasonable person could equate the conduct with the

criminal offenses listed in subsection (5). Am. Rec. Order §§ 30, 32. These observations demonstrate that the very framework the rules provide does not support the charge. The ALJ was not treating the subsections as “limits”; he was showing that the Commissioner’s case fails even under the Commissioner’s own theory.

### C. The Evidence Does Not Satisfy the Four-Part Definition

12. Even taking the four-part definition of Rule 6A-10.083(1) as Petitioner urges, the record does not support a finding of gross immorality by clear and convincing evidence. Part (b) requires that the conduct be “sufficiently notorious as to bring the individual concerned or the education profession into public disgrace or disrespect *and* impair the individual’s service in the community.” Every witness—including the Commissioner’s own—testified that Ms. McMath’s service was not impaired. Principal Feagins wants her back. T. 132:12–14. Mr. Bennett confirmed the District closed its investigation with a non-progressive verbal warning and is not seeking revocation. T. 82:3–14; 83:12–84:5. Mr. Kosac found no disruption. T. 110:7–17. Without impairment of service, the definition is not met.

13. As for the “standards of public conscience and good morals” (part (a)) and “flagrant disregard for moral standards” (part (d)), Ms. McMath’s posts were private political commentary about matters of intense public concern—the assassination of a public figure and a civil lawsuit against the President of the United States. The posts were made from her personal accounts, on her own time, away

from school property. T. 114:1–2; 122:14–15. Whatever one's view of the posts' tone, off-duty political speech on a matter of public concern does not rise to the level of "gross immorality" as a matter of law, particularly under the strict-construction standard applicable in penal proceedings.

## <u>RESPONSE TO EXCEPTION NO. 2</u>

### <u>Rule 6A-10.083(4) Factors</u>

14. Petitioner's second exception argues that the ALJ "misread" the subsection (4) factors—specifically factors (c) (malice/cruelty), (d) (deliberation), and (f) (harm). This exception asks the Commission to reweigh the evidence and substitute its own credibility findings for those of the ALJ. The Commission may not do so. *Heifetz*, 475 So. 2d at 1281.

**A. Factor (d) — Deliberation**

15. Petitioner fixates on the fact that Ms. McMath "deliberately" posted on social media. But factor (d) asks whether the conduct "reflects deliberation, premeditation, or contemplation." The ALJ correctly read this factor as asking whether the *underlying act* was deliberate, premeditated, or contemplated—not whether the act of typing on a keyboard was voluntary. Every social media post is "deliberate" in the trivial sense that the poster intended to type the words. If that were all factor (d) required, it would apply to every act of speech ever uttered. The

ALJ reasoned that, read in context with the other factors—which address violence, malice, cruelty, and harm—factor (d) contemplates deliberation about conduct of a qualitatively different character than political commentary on a public figure's death. That interpretation is not merely reasonable; it is the only one consistent with the rule's structure.

### B. Factor (c) — Malice/Cruelty

16. Petitioner argues the ALJ failed to consider whether the posts reflected "malice or cruelty." Ms. McMath testified unequivocally that she was not celebrating Mr. Kirk's death: "There was nothing to celebrate that day. I felt, and the language in my post reflects that it was a dark moment." T. 123:6–8. She testified she does not support violence: "I do not." T. 123:18. She explained the E. Jean Carroll image as a symbolic artistic reference in the tradition of Judith and Holofernes. T. 124:9–19. The ALJ credited this testimony. The Commission cannot reweigh it.

### C. Factor (f) — Harm

17. Petitioner contends the ALJ disregarded evidence of harm. But the uncontradicted record shows there *was* no harm. No student was harmed. No school operations were disrupted. No evidence was presented—from any source—that any student, parent, or colleague at Douglas Anderson was injured, insulted, or offended by the posts. The complaints that triggered the investigation came from members of

the general public, including an unverified anonymous email from "AmericanPatriot2022@protonmail.com" (T. 106:22–107:2) and a Moms for Liberty communication that arrived *after* the investigation letter had already been sent (T. 102:22–104:16). These are not the kind of "harm" contemplated by factor (f), which speaks to "harm, injury, or insult to the victim." There is no victim here.

## RESPONSE TO EXCEPTION NO. 3

### Count II — Reduced Effectiveness

18. Petitioner's third exception attacks the ALJ's conclusion that Ms. McMath's effectiveness was not seriously reduced. Petitioner argues the ALJ (1) required "direct proof" when circumstantial evidence should suffice, (2) focused too narrowly on the classroom, and (3) disregarded the stipulated fact that Ms. McMath was reassigned. Each argument fails.

### A. The ALJ Applied the Correct Standard

19. Section 1012.795(1)(g) authorizes discipline where the educator's effectiveness has been "seriously reduced." The ALJ did not require "direct proof"—he evaluated all the evidence in the record. The problem for Petitioner is not the standard the ALJ applied; it is that *every witness* negated the charge:

- Principal Feagins: "I would still offer her the position back." T. 149:20–21. McMath's first year teaching AP Art History, three-quarters of her students earned college credit, matching the national

pass rate. T. 126:1–3; 130:19–25. Without her, the pass rate dropped to 56%. T. 130:23–131:2.

• Bennett: The District's own investigation is closed. The discipline was a non-progressive verbal warning. The District is *not* seeking to have Ms. McMath's certification pulled. T. 82:3–4; 83:12–84:5.

• Kosac: Students shared "very positive information" about Ms. McMath. T. 112:17–20.

20. This case is remarkably similar to *Caggiano v. Duval County School Board*, 403 So. 3d 1081 (Fla. 5th DCA 2025), where the Fifth District reversed discipline of a Duval County teacher for off-duty Facebook reposts that "amounted to little more than harmless political chitchat." The court found the posts were protected political speech and that the Board had not shown any actual disruption—just as here. Indeed, this case is stronger than *Caggiano*: unlike in that case, Ms. McMath's principal affirmatively wants her back, and the District itself declined to seek revocation.

**B. Reassignment Does Not Equal Reduced Effectiveness**

21. Petitioner leans heavily on the fact that the District reassigned Ms. McMath as proof that her effectiveness was "seriously reduced." The ALJ addressed this directly: "[T]he Record lacks a persuasive explanation for that action." Am. Rec. Order § 33. The reassignment was the District's decision, not Principal Feagins'. T. 143:1–6. Mr. Bennett testified that the reassignment was based on "potential" for disruption under District policy—not actual disruption. T. 81:7–8. Potential

disruption under a school board employment policy is not the same as "seriously reduced" effectiveness under the certification statute.

22. Allowing an employer's precautionary reassignment to serve as proof of reduced effectiveness would create a perverse incentive: a school district could manufacture grounds for certification revocation simply by removing a teacher from the classroom and then pointing to the removal as evidence. The law does not countenance such circular reasoning. *See McNeill v. Pinellas Cnty. Sch. Bd.*, 678 So. 2d 476 (Fla. 2d DCA 1996) (reversing teacher termination where conduct did not impair effectiveness in community or school system).

## RESPONSE TO EXCEPTION NO. 4

### Count V — Distinguishing Personal Views

23. Petitioner's fourth exception challenges the ALJ's conclusion on Rule 6A-10.081(2)(b)1, which requires educators to take "reasonable precautions to distinguish between personal views and those of any educational institution or organization with which the individual is affiliated." Petitioner contends the ALJ improperly added a "reasonable observer" test not found in the rule text. This misstates the ALJ's reasoning.

24. The rule requires "reasonable precautions." The ALJ evaluated what was reasonable under the totality of the circumstances—which is exactly what the word "reasonable" demands. The ALJ found that Ms. McMath posted on her

personal accounts, not school accounts. Am. Rec. Order § 38. She did not purport to speak on behalf of Douglas Anderson or the Duval County School District. No evidence was presented that anyone actually confused her personal views with those of her employer. *Id.* The ALJ found that "there is no evidence that anyone could reasonably conclude that Ms. McMath's sentiments were shared by her employers." *Id.*

25. Petitioner essentially argues that Ms. McMath violated the rule because she did not affix a disclaimer to her personal social media accounts. But the rule does not require a disclaimer. It requires "reasonable precautions." The ALJ's finding that posting on personal accounts—not school accounts—without purporting to speak for the District constitutes a "reasonable precaution" is a mixed finding of fact and law supported by competent substantial evidence. Ms. McMath herself testified that adding a disclaimer to every individual post would be impractical: "No. And to do that, you would have to do it on every individual post." T. 52:1–4.

26. The ALJ's interpretation of Rule 6A-10.081(2)(b)1 is at least "as or more reasonable" than Petitioner's reading, which would effectively prohibit any public-facing teacher from expressing a personal opinion on any controversial subject absent a formal disclaimer. That construction would raise serious constitutional concerns and should be rejected under the principle of strict construction. *Elmariah*, 574 So. 2d at 165.

## RESPONSE TO EXCEPTION NO. 5

**Count III — Violation of Principles of Professional Conduct**

27. Petitioner's fifth exception is a single paragraph asserting that Count III (violation of the Principles of Professional Conduct, § 1012.795(1)(j)) should be sustained because it "follows from" Counts IV and V. Since the ALJ correctly dismissed Counts IV and V—and Petitioner's exceptions to those dismissals should be denied for the reasons set forth above—Count III necessarily fails as well. A derivative charge cannot stand when the predicate charges do not.

## RESPONSE TO EXCEPTION NO. 6

**Proposed Penalty**

28. Petitioner's sixth exception requests a five-year suspension of Ms. McMath's teaching certificate, followed by three years of probation and an ethics course. Because Respondent has demonstrated that each of Petitioner's substantive exceptions should be denied, the penalty exception is moot. Where there is no violation, there can be no penalty.

29. Even were the Commission to find a violation—which the evidence does not support—the proposed penalty is grossly disproportionate. Ms. McMath has no prior disciplinary history. T. 122:6–8. She is a decorated arts educator with over two decades of experience, including seven years as executive director of the Cummer Museum of Art and Gardens. T. 117:13–17. Her principal considers her

"an asset to the school" and wants her back. T. 132:13–14. Her own school district has closed its investigation and imposed only a non-progressive verbal warning. T. 82:8–14. A five-year suspension for off-duty social media speech—with no disruption, no student harm, and no finding that the speech was anything other than constitutionally protected political commentary—would be arbitrary, punitive, and chilling to the free-expression rights of every public educator in this State.

## FIRST AMENDMENT CONSIDERATIONS

30. The Commission need not reach the constitutional question to dismiss these charges, and Respondent preserves her First Amendment arguments in full for any subsequent judicial review. Respondent does note, however, that the record is replete with evidence that Ms. McMath was speaking as a private citizen, on her own time, on her personal social media accounts, about matters of profound public concern. T. 122:14–23. Neither the District's investigator (Mr. Bennett) nor the State's investigator (Mr. Kosac) performed any First Amendment analysis before pursuing discipline. T. 77:22–78:24; 108:17–24. The ALJ specifically noted he was allowing Respondent to build a First Amendment record for appellate review. T. 147:3–14.

31. Under *Pickering v. Board of Education*, 391 U.S. 563 (1968), and *Garcetti v. Ceballos*, 547 U.S. 410 (2006), a public employee's speech on matters of public concern, made in a private capacity, is entitled to First Amendment

protection. The Fifth District's recent decision in *Caggiano* confirms that Florida courts will not tolerate discipline of public school teachers for off-duty political speech that causes no actual disruption. Should the Commission adopt a final order at odds with the Amended Recommended Order, Respondent will pursue all available remedies, including those under the First and Fourteenth Amendments to the United States Constitution and Article I, Section 4, of the Florida Constitution.

WHEREFORE, for the foregoing reasons, Respondent respectfully requests that the Education Practices Commission deny Petitioner's Exceptions in their entirety and adopt the Amended Recommended Order dismissing all charges against Hope McMath.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via electronic mail to the Education Practices Commission, Lisa M. Forbess, Executive Director, at epc@fl-epc.org; Michael Barrett and Bonnie Ann Wilmot, 325 West Gaines Street, Tallahassee, FL 32399 at bonnie.wilmot@fldoe.org, Michael.Barrett@fldoe.org and Ron Weaver, 101 Marketside Avenue, Suite 404, Box 157, Ponte Vedra, FL 32081 at ron@ronweaverlaw.com (Attorneys for Petitioner *Dr. Henry Mack, Commissioner Of Education*) this 9th day of October, 2026.

**PHILLIPS, HUNT & WALKER**

***/s/ JOHN M. PHILLIPS***

**JOHN M. PHILLIPS, ESQUIRE**
Florida Bar Number: 0477575
660 Park Street
Jacksonville, FL 32204
Phone: (904) 444-4444
Facsimile: (904) 508-0683
Counsel for Respondent
jmp@floridajustice.com
anne@floridajustice.com