**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

HOPE McMATH,

Plaintiff,

v. Case No. 3:25-cv-1498-HES-LLL

THE SCHOOL BOARD OF DUVAL COUNTY, FLORIDA, et al.,

Defendants.
_______________________________________/

# DEFENDANT ANASTASIOS KAMOUTSAS'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendant Anastasios Kamoutsas, former Commissioner of Education, sued in his individual capacity, moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss with prejudice the only claim that Plaintiff Hope McMath asserts against him in the Second Amended Complaint (Doc. 57): Count III, for First Amendment retaliation under 42 U.S.C. § 1983.[1] In support, Mr. Kamoutsas states:

## INTRODUCTION

On September 10, 2025, Charlie Kirk was shot and killed while speaking on a college campus. (Doc. 49 at 2.) That day, McMath, a Duval County public-school

[1] The Second Amended Complaint sues Mr. Kamoutsas only in his individual capacity. (Doc. 57 ¶ 12.) Any official-capacity claim passed to his successor, Commissioner Henry Mack, by operation of Federal Rule of Civil Procedure 25(d), and the Second Amended Complaint pleads it that way. (*Id.*) Commissioner Mack responds to the official-capacity claim in a separate motion.

teacher, took to her public Facebook account. (Doc. 57 ¶¶ 17-20; Ex. A ¶ 6.) She wrote that "Karma's a bitch" and that "she heard all your speeches when you proudly proclaimed that you didn't give a shit about other people's lives." (Doc. 49 at 2; Ex. A ¶ 8.) She also shared a cartoon of a woman holding the severed head of the President of the United States. (Ex. A ¶ 8.) Her account identified her as a Duval County teacher. (*Id.* ¶ 6.)

The next morning, a screen capture of the post reached the Florida Department of Education ("FDOE"). (Doc. 57 ¶ 21.) Florida law told FDOE what to do with it. FDOE "shall cause to be investigated expeditiously any complaint filed before it or otherwise called to its attention" that, if legally sufficient, contains grounds for discipline of an educator certificate. § 1012.796(1)(a), Fla. Stat. So FDOE looked into it. According to McMath, the Commissioner "wanted" FDOE's Chief of Professional Practices Services "to look into" the posts. (Doc. 57 ¶ 23.) After the investigation, the Commissioner found probable cause and issued an Administrative Complaint. (*Id.* ¶ 29.) That, too, is what the statute directs. § 1012.796(3), (6), Fla. Stat.

What happened next is the part McMath leaves out of her theory. She requested a hearing. An independent administrative law judge heard the case, applied a clear-and-convincing-evidence standard, and has recommended that the Education Practices Commission dismiss the charges. (Doc. 57 ¶ 45; Ex. A at 8-20.)

The Commissioner has filed exceptions to that recommendation. (Ex. B.) The Commission, not the Commissioner, decides whether to impose any discipline. § 1012.796(6)-(7), Fla. Stat. It has not yet done so. (Doc. 57 at 17 n.2.) And if it ever does, McMath may raise her First Amendment arguments on appeal. (Ex. A at 3 (citing *Caggiano v. Duval Cnty. Sch. Bd.*, 403 So. 3d 1081, 1084 (Fla. 5th DCA 2025)).)

That is Florida's system working as designed. It is not a constitutional tort. And it is no basis for making Mr. Kamoutsas, who has since left office, pay damages out of his own pocket.

Count III fails for three independent reasons. **First**, deciding that probable cause exists and prosecuting an administrative complaint is a prosecutorial function, and it carries absolute immunity. *Butz v. Economou*, 438 U.S. 478, 515-17 (1978). **Second**, the only other act the pleading attributes to Mr. Kamoutsas, asking his staff to look into a report that the statute required FDOE to investigate, does not state a retaliation claim. **Third**, Mr. Kamoutsas is entitled to qualified immunity. No clearly established law told a reasonable Commissioner in September 2025 that following the statutory process in response to that post violated the First Amendment. McMath has had her final opportunity to plead a claim. Count III should be dismissed with prejudice as to Mr. Kamoutsas.

## BACKGROUND

### A. The statutory process for educator discipline.

Florida divides educator discipline among several actors. FDOE investigates complaints "filed before it or otherwise called to its attention." § 1012.796(1)(a), Fla. Stat. The Commissioner of Education then determines whether probable cause exists, after the Department's general counsel reviews the investigative findings. § 1012.796(3), Fla. Stat. If the Commissioner finds probable cause, he files a formal complaint and prosecutes it under chapter 120. § 1012.796(6), Fla. Stat. An administrative law judge of the Division of Administrative Hearings hears any disputed issues of fact and makes a recommendation. *Id.* And an Education Practices Commission panel enters the final order, either dismissing the complaint or imposing a penalty. § 1012.796(7), Fla. Stat. The Commissioner never imposes discipline himself. And the Commission "may not be subject to control, supervision, or direction by the Department of Education." § 1012.79(6)(a), Fla. Stat.

### B. What the Second Amended Complaint alleges about Mr. Kamoutsas.

The Second Amended Complaint alleges that a screen capture of McMath's post reached FDOE at 9:26 a.m. on September 11, 2025. (Doc. 57 ¶ 21.) At about 2:34 p.m. that afternoon, FDOE's Chief of Professional Practices Services emailed the School District, "stating that Commissioner Kamoutsas wanted him to look

into social-media postings by Plaintiff and asking DCPS to confirm Plaintiff's employment, position, and worksite." (*Id.* ¶ 23.) FDOE then scheduled a school visit and mailed McMath a letter opening its inquiry. (*Id.* ¶ 24.)

McMath alleges, on information and belief, that Mr. Kamoutsas "personally directed the investigation" and "personally made the probable-cause determination in her case," which issued on October 8, 2025. (*Id.* ¶ 29.) She alleges that the Commissioner's office "managed the pace and progress" of the investigation, including by "directing internal follow-up after a news-media inquiry." (*Id.* ¶ 30.) She alleges that FDOE opened about fifty investigations of educators for social-media posts about Mr. Kirk's killing. (*Id.* ¶ 28.) And she alleges that Moms for Liberty, Inc. hosted the Commissioner at a national event. (*Id.* ¶ 40.)

The Second Amended Complaint does not allege that Mr. Kamoutsas employed McMath, supervised her, reassigned her, or disciplined her. It alleges that the School District reassigned her. (*Id.* ¶ 43.) And it concedes that the administrative proceeding "has not yet terminated by final order." (*Id.* at 17 n.2.)

### C. The documents the Court may consider.

In ruling on a motion to dismiss, the Court may consider a document outside the four corners of the complaint if it is central to the plaintiff's claim and its authenticity is undisputed. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). The Amended Recommended

Order in *Mack v. McMath*, DOAH Case No. 25-5786PL (Sept. 21, 2026), attached as Exhibit A, meets that test. The Second Amended Complaint quotes it at length and rests Count III on it. (Doc. 57 ¶¶ 45, 53-54.) The Administrative Complaint, attached as Exhibit C, is the probable-cause charging document that Count III challenges. (*Id.* ¶¶ 29, 52.) The Commissioner's October 6, 2026 exceptions, attached as Exhibit B, are a filing in the same proceeding. All three are also public records of a state proceeding, of which the Court may take judicial notice to determine what they say, though not to prove the truth of their contents. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999); *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994). Mr. Kamoutsas cites the Recommended Order for the procedural history it recites and for facts that McMath herself pleads, embraces, or does not dispute. He does not ask the Court to adopt its recommended conclusions, which remain subject to exceptions and to the Commission's final order.

## MEMORANDUM OF LAW

## I. LEGAL STANDARDS

### A. Rule 12(b)(6): Pleading sufficiency and the plausibility standard

Rule 12(b)(6) allows dismissal of complaints that do not state a valid claim. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible if the facts support a reasonable inference of the defendant's liability; mere possible misconduct is insufficient. *Iqbal*, 556 U.S. at 678. The Court treats well-pleaded factual allegations as true and draws reasonable inferences in the plaintiff's favor, but legal conclusions and conclusory statements are not accepted. *Id.* at 678-79; *Twombly*, 550 U.S. at 555.

### B. Section 1983: Personal participation, causation, and limits on liability

Section 1983 provides a cause of action against any person who, acting under color of state law, deprives another of a right secured by the Constitution or federal law. *Monroe v. Pape*, 365 U.S. 167, 171 (1961). To state a claim under Section 1983, a plaintiff must plausibly allege that a federal right was violated and that the defendant's own conduct caused the violation. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Each official, "his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* at 677. So supervisors and government officials are not liable solely based on their position or authority. *Cottone*, 326 F.3d at 1360.

## II. MR. KAMOUTSAS IS ABSOLUTELY IMMUNE FROM DAMAGES FOR FINDING PROBABLE CAUSE AND PROSECUTING THE ADMINISTRATIVE COMPLAINT.

Prosecutors are absolutely immune from damages under Section 1983 for initiating and pursuing a prosecution. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). That immunity holds even when the prosecutor is accused of acting with malice, because the alternative would subject every charging decision to suit by the person charged. *Id.* at 427-28. Immunity turns on the function performed, not the title of the person performing it. *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993).

The Supreme Court extended that protection to agency officials decades ago. In *Butz v. Economou*, it held that "agency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts." 438 U.S. at 515. It explained that "[t]he decision to initiate administrative proceedings against an individual or corporation is very much like the prosecutor's decision to initiate or move forward with a criminal prosecution." *Id.* And it rested that conclusion on the safeguards built into administrative adjudication: the charged party can present her case to an independent hearing officer, and the agency's decision is subject to judicial review. *Id.* at 512-17.

Courts in this Circuit apply *Butz* to Florida licensing officials who do exactly what the Commissioner did here. In *Rindley v. Gallagher*, the court held that members of the Board of Dentistry's probable cause panels were absolutely

immune for finding probable cause and directing the issuance of administrative complaints, because "[m]aking a determination that probable cause exists is a function 'similar to those involved in the judicial process.'" 890 F. Supp. 1540, 1556 (S.D. Fla. 1995) (adopting report and recommendation) (quoting *Kutilek v. Gannon*, 766 F. Supp. 967, 972 (D. Kan. 1991)). The same court held that "the filing of an administrative complaint is clearly within the prosecutorial function" and absolutely immune. *Id.* And it held that an allegation that the defendants conspired to enforce the disciplinary statutes selectively does not strip that immunity away. *Id.*; *see also Log Creek, LLC v. Kessler*, 717 F. Supp. 2d 1239, 1243-44 (N.D. Fla. 2010) (decision to initiate administrative enforcement proceeding absolutely immune under *Butz*); *Watson v. Fla. Jud. Qualifications Comm'n*, 746 F. App'x 821, 825-26 (11th Cir. 2018) (members of Judicial Qualifications Commission's investigative panel function like prosecutors and are entitled to absolute prosecutorial immunity). The Eleventh Circuit asks what function the official performed. *Kadivar v. Stone*, 804 F.2d 635, 637 (11th Cir. 1986). And the official claiming absolute immunity bears the burden of showing that it attaches to that function. *Burns v. Reed*, 500 U.S. 478, 486 (1991); *Kassa v. Fulton Cnty.*, 40 F.4th 1289, 1292 (11th Cir. 2022). Here the statute answers that question.

Every one of those features is present here. Florida law assigns the Commissioner the decision whether probable cause exists and, if it does, the job of

filing and prosecuting the formal complaint. § 1012.796(3), (6), Fla. Stat. The Commissioner does not adjudicate the charge. An independent administrative law judge hears the evidence, and the Education Practices Commission decides. § 1012.796(6)-(7), Fla. Stat. McMath has used every one of those safeguards. She demanded a hearing, tried her case, and won a recommendation of dismissal from a neutral judge who held the Commissioner to a clear-and-convincing standard. (Doc. 57 ¶ 45; Ex. A at 8-20.) Any final order will be subject to judicial review, where McMath may raise her First Amendment arguments. (Ex. A at 3.) That is the structure *Butz* described.

The Second Amended Complaint's central allegation against Mr. Kamoutsas falls squarely within this immunity. McMath alleges that he "personally made the probable-cause determination in her case." (Doc. 57 ¶ 29.) The statute required him to make it. § 1012.796(3), Fla. Stat. Calling that act "personal" does not change its function, and alleging a bad motive does not strip the immunity. *Imbler*, 424 U.S. at 427-28. So, to the extent Count III rests on the probable-cause determination, the Administrative Complaint, or the prosecution of the case (Doc. 57 ¶¶ 29, 43, 52), Mr. Kamoutsas is absolutely immune.

## III. THE ONLY OTHER ACT ATTRIBUTED TO MR. KAMOUTSAS DOES NOT STATE A RETALIATION CLAIM.

Strip away the prosecutorial function, and what is left? McMath alleges that Mr. Kamoutsas "wanted" his staff "to look into" her posts (*id.* ¶ 23), that he

"personally directed the investigation" (*id.* ¶ 29), and that his office managed its pace, including internal follow-up after a media inquiry (*id.* ¶ 30). Those allegations describe the investigation that preceded the probable-cause determination. That conduct may be absolutely immune too. *Rindley* extended absolute immunity to officials who directed others to investigate a complaint, as distinct from conducting the investigation themselves, reasoning that a prosecutor's role includes developing and evaluating the case before charges are filed. Directing staff is all McMath alleges Mr. Kamoutsas did. (Doc. 57 ¶¶ 23, 29.) 890 F. Supp. at 1555-56 & n.13. Under *Buckley*, investigative work before probable cause may carry only qualified immunity. 509 U.S. at 273-74; *see Kadivar*, 804 F.2d at 637. Either way, the result is the same. And the allegation that he personally directed the investigation is not entitled to the presumption of truth. McMath pleads it only "[u]pon information and belief," and unlike her allegation about the screen capture, she offers no basis for that belief. (*Compare* Doc. 57 ¶ 29, *with id.* ¶ 22.) The Court need not accept such allegations when they lack facts making them plausible. *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013). Even taken as true, these allegations describe the Commissioner seeing to it that FDOE did what the statute required. They do not state a claim, and qualified immunity bars them in any event. *See infra* Part IV.

### A. The statute required FDOE to investigate, and the pleading shows it was responding to a report.

A retaliation plaintiff must plausibly allege that the defendant's own adverse conduct was caused by her protected speech. *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). McMath's theory is that "[t]he State did not react to a public complaint; it moved first." (Doc. 57 ¶ 27.) Her own allegations refute it. She pleads that a screen capture of her post reached FDOE at 9:26 a.m. on September 11. (*Id.* ¶ 21.) The Commissioner's direction to "look into" the post came more than five hours later. (*Id.* ¶ 23.) FDOE was responding to a report that had been "called to its attention," as the statute required. § 1012.796(1)(a), Fla. Stat. The administrative law judge on whose findings McMath relies described it the same way: the Chief of Professional Practices Services "received complaints from the public about Ms. McMath's social media postings and opened an investigation." (Ex. A ¶ 15.)

McMath makes much of the fact that FDOE has no record of who sent the screen capture. (Doc. 57 ¶¶ 21-22.) But the statute does not limit FDOE to complaints from identified senders. It reaches any matter "otherwise called to its attention." § 1012.796(1)(a), Fla. Stat. A Commissioner who directs his staff to perform a mandatory statutory duty after a report arrives has not plausibly acted out of retaliation. That is an "obvious alternative explanation" for the conduct

alleged, and it defeats any inference of retaliatory motive. *Iqbal*, 556 U.S. at 682 (quoting *Twombly*, 550 U.S. at 567).

**B. McMath does not allege that the charges lacked probable cause.**

A retaliation claim built on the government's decision to bring a proceeding carries an additional element. When the alleged retaliation is a criminal prosecution, the plaintiff must plead and prove that the prosecution lacked probable cause. *Hartman v. Moore*, 547 U.S. 250, 265-66 (2006). The same is true of a retaliatory arrest. *Nieves v. Bartlett*, 587 U.S. 391, 402 (2019). And the Eleventh Circuit has applied the rule to proceedings the government brings in the civil courts: "the presence of probable cause will generally defeat a § 1983 First Amendment retaliation claim based on a civil lawsuit as a matter of law." *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1304 (11th Cir. 2019). The reason is the same "causation gap" *Hartman* identified: an attorney, not the allegedly retaliating official, files the proceeding, and the government's decision to proceed is entitled to a presumption of regularity. *Id.* at 1291-92, 1304. District courts in this Circuit have applied *DeMartini* to administrative enforcement proceedings. *Garate v. Town of Sw. Ranches*, No. 24-CV-62089, 2025 WL 2933895, at *14 (S.D. Fla. July 28, 2025) (report and recommendation), *adopted*, 2025 WL 2751040 (S.D. Fla. Sept. 26, 2025). In this setting, probable cause "requires no more than a reasonable belief

that there is a chance that a claim may be held valid upon adjudication." *DeMartini*, 942 F.3d at 1301 (cleaned up).

The same causation gap exists here, and it is wider. The Department's general counsel reviews the investigative findings and makes a recommendation before the Commissioner decides whether probable cause exists. § 1012.796(3), Fla. Stat. An independent administrative law judge then hears the evidence, and the Education Practices Commission decides whether any discipline follows. § 1012.796(6)-(7), Fla. Stat. So the *Hartman* rule applies with full force.

The Second Amended Complaint does not allege that probable cause was lacking. It alleges instead that an administrative law judge, after a full evidentiary hearing and applying a clear-and-convincing-evidence standard, recommended dismissal. (Doc. 57 ¶¶ 45, 54.) That is a different question, answered under a far higher standard, months after the charging decision. It says nothing about whether the Commissioner had a reasonable belief, in October 2025, that the charges "may be held valid upon adjudication." *DeMartini*, 942 F.3d at 1301. He did. The Administrative Complaint charged violations of section 1012.795(1)(d), (g), and (j), Florida Statutes, and of the Principles of Professional Conduct. (Ex. C at 2; Ex. A at 2.) Those charges rested on a public post invoking "karma" hours after a political assassination and a shared image of the President's severed head, published on an account that identified McMath as a Duval County teacher and

carried no disclaimer. (Ex. A ¶¶ 6, 8.) Whatever the ultimate merits, those facts supported at least a reasonable belief that a charge might be sustained.

Nor does McMath plead her way into the exception for cases in which officials typically decline to act even when probable cause exists. That exception requires objective evidence that similarly situated people who did not engage in the same protected speech were not charged, although that evidence need not take the form of virtually identical comparators. *Gonzalez v. Trevino*, 602 U.S. 653, 658 (2024) (per curiam); *Nieves*, 587 U.S. at 407. The only comparators the Second Amended Complaint offers are sitting School Board members. (Doc. 57 ¶ 38.) It does not allege that they hold educator certificates, that their posts were ever reported to FDOE, or that the Commissioner ever reviewed them. So, Count III fails for want of an allegation that probable cause was absent.

### C. Mr. Kamoutsas did not reassign McMath, and the pleading lumps him with four other defendants.

Count III lists four adverse actions: "opening an investigation, reassigning her, removing her from the classroom, and pursuing certificate discipline." (Doc. 57 ¶ 52.) It attributes all four to five defendants collectively. (*Id.*) That is the same defect this Court found in the proposed Second Amended Complaint, which "assert[ed] multiple claims against multiple defendants without identifying the acts or omissions attributable to each defendant." (Doc. 49 at 12-14 (citing *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321-23 (11th Cir. 2015)).)

Read against the rest of the pleading, two of the four actions have nothing to do with Mr. Kamoutsas. The School District, not FDOE, employed McMath, reassigned her, and removed her from the classroom. (Doc. 57 ¶¶ 6, 17, 43.) The pleading does not allege that the Commissioner had any authority to reassign a School District employee, or that he tried. The third, "pursuing certificate discipline," is the prosecutorial function for which he is absolutely immune. That leaves "opening an investigation," which, as shown above, was FDOE's statutory duty upon receiving a report.

The remaining allegations add nothing. That the Commissioner's office followed up after a media inquiry (*id.* ¶ 30) describes an agency head keeping track of a matter of public interest. And that a political organization hosted the Commissioner at an event (*id.* ¶ 40) shows, at most, political alignment. This Court has already held that allegations of that kind do not plausibly show an agreement to violate McMath's rights. (Doc. 49 at 10.) They show no retaliatory motive either.

## IV. MR. KAMOUTSAS IS ENTITLED TO QUALIFIED IMMUNITY.

Qualified immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). It is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). So it should be resolved "at the earliest possible

stage in litigation." *Pearson*, 555 U.S. at 232 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)).

### A. Mr. Kamoutsas acted within his discretionary authority.

An official acts within his discretionary authority when he pursues a job-related goal through means within his power. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265-66 (11th Cir. 2004). Overseeing FDOE's investigation of a complaint against a certificate holder, and deciding whether probable cause exists, are core functions that Florida law assigns to the Commissioner. § 1012.796(1)(a), (3), (6), Fla. Stat. So the burden shifts to McMath to show that qualified immunity does not apply. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

### B. No clearly established law told a reasonable Commissioner that following the statutory process violated the First Amendment.

A right is clearly established only if existing precedent has placed the question "beyond debate," so that "every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (cleaned up). The right must be defined with specificity, not at a high level of generality. *Id.* at 742; *City of Escondido v. Emmons*, 586 U.S. 38, 42 (2019) (per curiam). In this Circuit, only decisions of the Supreme Court, the Eleventh Circuit, and the highest court of the relevant state can clearly establish the law. *Jenkins ex rel. Hall v. Talladega City Bd. of Educ.*, 115 F.3d 821, 826 n.4 (11th Cir. 1997)

(en banc). And the law must have been clearly established at the time of the challenged conduct. *al-Kidd*, 563 U.S. at 741.

McMath cannot meet that standard for four reasons.

**First, the Pickering balance.** Even in the ordinary case of a public employer disciplining its own employee, the First Amendment question turns on a balance of the employee's interest in speaking against the government's interest in the effective performance of public service. *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). Because that balance is struck case by case, the Eleventh Circuit's decisions "tilt strongly in favor of immunity by recognizing that only in the rarest of cases will reasonable government officials truly know that the termination or discipline of a public employee violated 'clearly established' federal rights." *Hansen v. Soldenwagner*, 19 F.3d 573, 576 (11th Cir. 1994). The official is entitled to immunity "except in the extraordinary case where Pickering balancing would lead to the inevitable conclusion that the discharge of the employee was unlawful." *Dartland v. Metro. Dade Cnty.*, 866 F.2d 1321, 1323 (11th Cir. 1989). This is not that case. A teacher whose public account identified her as a Duval County teacher responded to a political assassination by invoking "karma" and shared an image of the President's severed head. (Ex. A ¶¶ 6, 8.) Florida's rules require educators to "take reasonable precautions to distinguish between personal views and those of any educational institution" with which they are affiliated, and to "make reasonable

effort to protect the student from conditions harmful to learning and/or to the student's mental and/or physical health and/or safety." Fla. Admin. Code R. 6A-10.081(2)(b)1., (2)(a)1. A reasonable official could conclude that those facts warranted investigation and a probable-cause determination under the statute. Nor did the official have to wait for disruption to materialize. The Eleventh Circuit and the Supreme Court "have given substantial weight to government employers' reasonable predictions of disruption, even when the speech involved is on a matter of public concern," and an employer need not "allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action." *Green v. Finkelstein*, 73 F.4th 1258, 1268 (11th Cir. 2023) (quotations omitted). Applying that principle to a public employee's inflammatory comments made at a time of heightened racial tension, the Eleventh Circuit held that the employer "needed to demonstrate only a reasonable possibility" of disruption, whether or not it had received complaints or faced protests. *Snipes v. Volusia Cnty.*, 704 F. App'x 848, 852-53 (11th Cir. 2017). Nor does *Rankin v. McPherson*, 483 U.S. 378 (1987), place the question beyond debate. The clerical employee there made her remark in a private conversation with a coworker, and the Court stressed that she served no "confidential, policymaking, or public contact role." *Id.* at 390-91. McMath published her post to the public on an account that identified her as a Duval County teacher. (Ex. A ¶¶ 6, 8.)

Courts applying Pickering to public employees' inflammatory social-media posts continue to reach different results on different facts. *Compare Labriola v. Miami-Dade Cnty.*, 142 F.4th 1305 (11th Cir. 2025) (balance favored employer), *Lucas v. City of Delray Beach*, 692 F. Supp. 3d 1271, 1297-1306 (S.D. Fla. 2023) (same), *and Inendino v. Nance-Holt*, 182 F.4th 571, 586 (7th Cir. 2026) (same, where firefighter's public account identified his employer and his posts undermined public trust), *with Caggiano*, 403 So. 3d at 1086-87 (balance favored teacher). "If judges thus disagree on a constitutional question, it is unfair to subject [officials] to money damages for picking the losing side of the controversy." *Wilson v. Layne*, 526 U.S. 603, 618 (1999).

**Second, the governing framework itself was unsettled.** Mr. Kamoutsas was not McMath's employer. He headed the agency that certifies educators. Florida's courts have analyzed discipline of teachers for social-media speech under the Pickering framework. *See Caggiano*, 403 So. 3d at 1086-87. But in September and October 2025, no decision of the Supreme Court, the Eleventh Circuit, or the Supreme Court of Florida had decided what First Amendment standard governs a state certifying authority's review of a public-school teacher's off-duty speech. When the governing framework is itself unsettled, the answer under it cannot have been beyond debate.

**Third, Mr. Kamoutsas initiated a process; he did not impose a penalty.** The acts alleged are an inquiry and a probable-cause determination, both of which led to a hearing before a neutral administrative law judge and a decision reserved to the Education Practices Commission. § 1012.796(6)-(7), Fla. Stat. No controlling decision holds that a state official violates the First Amendment by referring a licensee's conduct into a statutory process that affords her notice, a hearing before an independent adjudicator, a clear-and-convincing burden of proof, and judicial review. To the contrary, the Eleventh Circuit has observed that "[t]he Supreme Court has never defined retaliatory investigation, standing alone, as a constitutional tort," and it granted qualified immunity on that basis. *Rehberg v. Paulk*, 611 F.3d 828, 851 (11th Cir. 2010), *aff'd*, 566 U.S. 356 (2012). And the Eleventh Circuit has held that the probable cause standard, which that process applies, generally defeats a retaliation claim based on a government-initiated proceeding. *DeMartini*, 942 F.3d at 1304.

**Fourth, the authorities McMath invokes came too late and from the wrong source.** The Second Amended Complaint relies on three recommended orders issued by administrative law judges in June and September 2026. (Doc. 57 ¶ 45.) Those orders postdate everything Mr. Kamoutsas is alleged to have done in September and October 2025. They are not final. And recommended orders of

administrative law judges cannot clearly establish federal constitutional law in any event. *Jenkins*, 115 F.3d at 826 n.4.

Nor does the Eleventh Circuit's recent decision in *Acevedo v. City of Miami*, 189 F.4th 1092 (11th Cir. 2026), change the analysis. There the court held that city commissioners who fired a police chief for his speech as a private citizen, in order to harass and silence a whistleblower, violated clearly established law. *Id.* at 1103-10. That was an employer's termination of its own employee, and the court stressed that nothing in the complaint suggested a legitimate reason, such as speech that "was disruptive or unprofessional." *Id.* at 1109. The same opinion granted qualified immunity to the city manager, who had only suspended the chief with pay pending a decision by others, because it was not clearly established that such an interim step was an adverse action at all. *Id.* at 1110-11 (citing *Bell v. Sheriff of Broward Cnty.*, 6 F.4th 1374, 1379 (11th Cir. 2021)). This case concerns a certifying official's decision to send a licensee's conduct into a statutory process with an independent hearing officer, a clear-and-convincing burden, and judicial review. *Acevedo* says nothing about that.

Qualified immunity is judged objectively. *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982). The question is not what Mr. Kamoutsas subjectively intended but whether a reasonable official in his position could have believed his conduct was lawful. So it does not matter that, as McMath alleges, neither investigator

performed a First Amendment analysis. (Doc. 57 ¶ 33.) *Pickering* balancing is a question of law for the court, *Moss v. City of Pembroke Pines*, 782 F.3d 613, 617-18 (11th Cir. 2015), and the administrative law judge recognized that the question belongs to a court on judicial review. (Ex. A at 3.) On these facts, a reasonable Commissioner could believe that the statute required FDOE to investigate the report and that probable cause existed to charge a violation. That some later adjudicator weighed the evidence differently under a higher standard of proof does not make the Commissioner's decision unreasonable, much less clearly unconstitutional. Mr. Kamoutsas is entitled to qualified immunity.

## V. McMATH HAS HAD HER FINAL OPPORTUNITY, AND DISMISSAL SHOULD BE WITH PREJUDICE.

This is the fourth complaint McMath has drafted and the third she has filed. (Docs. 1, 28, 42-1, 57.) When this Court rejected the third, it told McMath that she would receive "one final opportunity to amend." (Doc. 49 at 4.) She has now had the benefit of discovery and a full evidentiary hearing in the administrative case. (Doc. 57 ¶¶ 45, 54.) The defects in Count III are not pleading gaps. Absolute immunity and qualified immunity are legal bars, and no additional facts could overcome them. A district court need not permit amendment when amendment would be futile. *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007); *see also Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018).

## CONCLUSION

Defendant Anastasios Kamoutsas respectfully requests that the Court dismiss Count III of the Second Amended Complaint as to him with prejudice.

Dated: October 30, 2026

Respectfully submitted,

/s/ Adam B. Brandon
Jason B. Gonzalez (FBN: 146854)
Samuel J. Salario, Jr. (FBN: 83460)
Michael C. Kelley (FBN: 99492)
Eric C. Reed (FBN: 0557161)
Adam B. Brandon (FBN: 99316)
LAWSON HUCK GONZALEZ, PLLC
101 E. College Avenue, 5th Floor
Tallahassee, Florida 32301
jason@lawsonhuckgonzalez.com
samuel@lawsonhuckgonzalez.com
michael@lawsonhuckgonzalez.com
eric@lawsonhuckgonzalez.com
adam@lawsonhuckgonzalez.com
michelle@lawsonhuckgonzalez.com

*Counsel for Defendant Anastasios Kamoutsas*

## LOCAL RULE 3.01(g) CERTIFICATE

I HEREBY CERTIFY that undersigned counsel conferred with counsel for Plaintiff by email regarding the relief requested in this motion. Plaintiff opposes the motion in its entirety.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 30, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Adam B. Brandon
Attorney