# Exhibit A

# STATE OF FLORIDA
# DIVISION OF ADMINISTRATIVE HEARINGS

DR. HENRY MACK, AS
COMMISSIONER OF EDUCATION[1],

Petitioner,

vs. Case No. 25-5786PL

HOPE MCMATH,

Respondent.
_______________________________/

## AMENDED RECOMMENDED ORDER

Pursuant to notice, a formal administrative hearing was conducted, via Zoom, before Administrative Law Judge Garnett W. Chisenhall, of the Division of Administrative Hearings ("DOAH"), on July 27, 2026.

## APPEARANCES

For Petitioner: Ron Weaver, Esquire
101 Marketside Avenue
Suite 404, Box 157
Ponte Vedra, Florida 32081

Bonnie Wilmot, Esquire
Chase D. Jones, Esquire
Florida Department of Education
325 West Gaines Street, Suite 1232
Tallahassee, Florida 32399-6533

For Respondent: John M. Phillips, Esquire
Phillips, Hunt, & Walker
660 Park Street
Jacksonville, Florida 32204

[1] During the course of this proceeding, Dr. Henry Mack succeeded Anastasios Kamoutsas as the Commissioner of Education.

## STATEMENT OF THE ISSUES

Whether Respondent ("Hope McMath") committed the violations alleged in the Administrative Complaint; and if so, what penalty should be imposed.

## PRELIMINARY STATEMENT

On October 8, 2025, the Commissioner of Education ("the Commissioner") issued an Administrative Complaint setting forth the following allegations against Ms. McMath:

> 4. On or about September 11, 2025, [Ms. McMath] posted unprofessional comments on her personal and open to the public social media account that were grossly immoral in the wake of the murder of public figure Charlie Kirk. [Ms. McMath]'s message stated, "Karma's a bitch – and she heard all your speeches when you proudly proclaimed that you didn't give a shit about other people's lives."
>
> 5. Additionally, [Ms. McMath] posted or reposted an artist's rendition of an individual holding the screaming severed head of what clearly is intended to represent the President of the United States, Donald Trump.

The Commissioner asserted that Ms. McMath's alleged conduct violated sections 1012.795(1)(d), (g), and (j) of the Florida Statutes. The Commissioner also asserted that Ms. McMath's alleged conduct violated Florida Administrative Code Rules 6A-10.081(2)(a)1 and (b)1.

After Ms. McMath requested a formal administrative hearing, the Education Practices Commission ("the Commission")[2] referred this matter to DOAH on November 5, 2025. A final hearing was ultimately scheduled for July 27, 2026.

---

[2] Throughout this Recommended Order, the Commissioner of Education and the Education Practices Commission shall be referred to interchangeably as "the Commissioner" or "the Commission."

During a June 5, 2026, status conference, the undersigned stated that he had no authority to adjudicate the First Amendment argument Ms. McMath had been making in multiple pleadings filed prior to the status conference. Nevertheless, the undersigned stated that Ms. McMath would be allowed to build a record necessary for making a First Amendment argument to an appellate court. *See Caggiano v. Duval County Sch. Bd*, 403 So. 3d 1081, 1084 (Fla. 5th DCA 2025)(stating "[o]n appeal, Caggiano argues that his suspension and reprimand violate his free speech rights, a claim the administrative law judge lacked authority to rule upon, but which can be asserted for the first time in a Florida appellate court, provided the record is sufficient to adjudicate the claim.").

The Commissioner presented testimony from Ms. McMath, Ronald Bennett, Jr., and Randy Kosec, Jr. Petitioner's Exhibits 1 through 3, and 6 through 9 were accepted into evidence. Ms. McMath testified on her own behalf and presented testimony from Timothy Feagins. Respondent's Exhibits 1 through 8, 10 through 12, 17, 18, 23, 25, and 27 through 32 were accepted into evidence.

The one-volume final hearing transcript was filed on August 19, 2026. Both parties filed timely Proposed Recommended Orders that were considered in the preparation of this Recommended Order.

Unless stated otherwise, all statutory citations shall be to the 2025 version of the Florida Statutes. *See McCloskey v. Dep't of Fin. Serv.*, 115 So. 3d 441, 444 (Fla. 5th DCA 2013) (indicating that the question of whether a statute was violated is based on the version of the statute in effect when the conduct at issue occurred).

FINDINGS OF FACT

Based on the oral and documentary evidence adduced at the final hearing, facts subject to official recognition, the entire record of this proceeding, and reasonable inferences drawn therefrom, the following Findings of Fact are made:

1. The Commissioner is the head of the Florida Department of Education and is statutorily authorized to investigate and prosecute disciplinary actions against those holding Florida educator certificates.

2. Ms. McMath holds Florida Educator's Certificate No. 1484487 covering the area of Art. Her certificate is valid through June 30, 2027.

3. Douglas Anderson School of the Arts ("Douglas Anderson") is a magnet school in Jacksonville open to ninth, tenth, eleventh, and twelfth graders.

4. In September of 2025, the Duval County School District had a policy governing its employees' use of social media websites. The policy stated the following:

> District employees are expected to be professional, civil and appropriate in all their communications with students, parents, fellow employees and the public, including in their electronic and online communications. This expectation applies to the posting of publicly accessible communications and material (collectively referred to as "Material") on the Internet, where it is available for viewing by members of the public, including students and parents. For the purpose of this rule, websites, other electronic media and online material are deemed to be publicly accessible if they can or may be viewed by District students, parents or the general public. The School Board finds that publication of inappropriate or unbecoming Material on publicly accessible websites or electronic media by an employee has the potential to disrupt the educational process, damage the reputation of the District, it's teachers and staff, damage the District's reputation and stature, and subject the District, its teachers and employees to ridicule. Accordingly, employees shall refrain from publishing material on

> publicly accessible media that fails to align with the Principles of Professional Conduct for the Education Profession in Florida, as outlined in Florida Administrative Code, 6A-10.081.

5. Ms. McMath began working for the Duval County School District ("the School District") in the fall of 2022 as a part-time gallery manager at Douglas Anderson. She began teaching Advanced Placement Art History to 11th and 12th graders in the fall of 2024.

6. Ms. McMath has Facebook and Instagram accounts, and her postings can be viewed by anyone. Those accounts note that Ms. McMath is employed as a Duval County teacher, but there is no disclaimer announcing that her expressed opinions are not necessarily shared or endorsed by the School District.

7. Ms. McMath told her students that she will not communicate with them via social media:

> So they can't follow me on social media. If they try to pop in and follow me, they are blocked. We do not have private conversations outside of the classroom, especially around any kind of issues of a social-political context. We actually have pretty strict rules around how we're allowed to directly communicate with students and parents. And those communications have to happen through the Duval County Public School platform called Focus . . .

8. After the assassination of Charlie Kirk, a well-known political activist, on September 10, 2025, Ms. McMath wrote the following message on her Facebook account, "Karma's a bitch – and she heard all your speeches when you proudly proclaimed that you didn't give a shit about other people's lives." She also shared an image of the author, E. Jean Carroll, holding the severed head of Donald Trump, the President of the United States.[3]

[3] The image of Ms. Carroll and President Trump is clearly a cartoon rather than an attempt to publish a realistic-looking depiction of Ms. Carroll holding the President's severed head.

9. With regard to her posting about karma, Ms. McMath asserts she was not celebrating Mr. Kirk's assassination: "There was nothing to celebrate that day. I felt, and the language in my post reflects that it was a dark moment. It was a hard moment. And it was a moment also filled with a lot of complexity. And so I was not celebrating, and the language in that post and the intention behind that post was not celebratory."

10. As for the image of Ms. Carroll holding President Trump's severed head. Ms. McMath asserts the image has symbolic significance:

> So it's an image by a political cartoonist that I follow and appreciate. It's an image of Jean Carroll holding the severed head of Donald Trump. He put it out – he made that drawing, the artist, on the day that Jean Carroll received justice within the judicial system for her lawsuit against the President on allegations of rape and sexual assault.
>
> It also was an image that I found compelling because it's a symbolic image. It's not an image where the artist or me are saying that somebody needs to go out and cut somebody's head off. It's an image that actually falls in a long history of images of survivorship that go back to the Middle Ages from Judith and Holofernes. I mean, I could list off all kinds of examples, but we're not here for an art history lesson. And so it's a symbolic image that is about women who have been abused overcoming their abuser.

11. There is no evidence that Ms. McMath's posts were made during any school-related function or through the use of school-owned property. There is no indication within the posts that Ms. McMath was speaking on behalf of Douglas Anderson or the School District. There is no evidence that the posts were associated with her duties as an educator employed by the School District.

---

Petitioner's Exhibit One, containing the social media postings at issue, is appended to the end of this Recommended Order.

12. Ronald Dean Bennett, Jr., works for the School District in its Office of Professional Standards, and he investigates allegations of misconduct by School District employees. He received a complaint about the social media postings described above. He conducted an investigation and determined there was a potential for the social media postings at issue to disrupt School District operations. Ms. McMath then received the following sanctions: (a) a verbal warning; (b) coaching/counseling; and (c) a temporary reassignment to the School District's Art Resource Center with no teaching duties.[4]

13. During his investigation, Mr. Bennett found no evidence that the operations of Douglas Anderson or the School District were disrupted. In addition, Mr. Bennett's investigation uncovered none of the following: (a) any teacher, administrator, or student within the School District who complained about Ms. McMath; or (b) any students who viewed the social media posts at issue.

14. Randy Kosac is the Chief of the Florida Department of Education's Office of Professional Practices and investigates complaints against Florida educators.

15. In September of 2025, he received complaints from the public about Ms. McMath's social media postings and opened an investigation.

16. Mr. Kosac spoke to about ten of Ms. McMath's students, and none of them stated that they had seen any of her social media posts. Mr. Kosac found: (a) no evidence that the social media postings at issue disrupted operations at Douglas Anderson or anywhere else within the School District; (b) no students claiming that their education had been disrupted by Ms. McMath's postings; (c) no evidence of any protests against Ms. McMath;

---

[4] Mr. Bennett testified that "the investigation was substantiated. The determination was made to issue a non-progressive verbal warning and [] counseling, which basically was, be mindful of what you put on your publicly accessible platforms as per policy is essentially what the coaching and counseling/nonverbal warning was." There was no explanation as to why the School District transferred Ms. McMath to a non-teaching position.

and (d) no evidence that the social media postings at issue were made via school property or during school hours.

17. Timothy Feagins is the Principal at Douglas Anderson. While he received complaints when Ms. McMath was removed from the classroom, he received no complaints about her character, teaching abilities, or interactions with students. According to Principal Feagins, the social media postings at issue caused no disruption at Douglas Anderson:

> The content of the posts never came up at the school. Students weren't talking about it. Teachers weren't talking about it. Parents weren't talking about it. They were aware because it was in the news, but nobody ever brought it up as far as a concern of her being in front of their children. She teaches two classes, about 45, 44, 45 students. No, more like 50 between the two classes. Not one of those students or parents ever said anything about the posts.

18. Principal Feagins would like to have Ms. McMath "back." The School District, not Principal Feagins, was responsible for assigning Ms. McMath to a different position.

## CONCLUSIONS OF LAW

19. DOAH has jurisdiction over the subject matter and the parties to this action in accordance with sections 120.569 and 120.57(1), Florida Statutes (2024).

20. The Commission is the state agency charged with the certification and regulation of Florida educators pursuant to chapter 1012, Florida Statutes.

21. This is a proceeding in which the Commissioner seeks to impose discipline against Ms. McMath's educator certificate. Because disciplinary proceedings are considered penal in nature, the Commissioner is required to prove the allegations in the Administrative Complaint by clear and convincing evidence. *Dep't of Banking & Fin. v. Osborne Stern & Co.*, 670 So. 2d 932 (Fla. 1996); *Ferris v. Turlington*, 510 So. 2d 292 (Fla. 1987).

22. Clear and convincing evidence "requires more proof than a 'preponderance of the evidence' but less than 'beyond and to the exclusion of a reasonable doubt.'" *In re Graziano*, 696 So. 2d 744, 753 (Fla. 1997). As stated by the Florida Supreme Court:

> Clear and convincing evidence requires that the evidence must be found to be credible; the facts to which the witnesses testify must be distinctly remembered; the testimony must be precise and lacking in confusion as to the facts in issue. The evidence must be of such a weight that it produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established.

*In re Davey*, 645 So. 2d 398, 404 (Fla. 1994)(quoting, with approval, *Slomowitz v. Walker*, 429 So. 2d 797, 800 (Fla. 4th DCA 1983)); *See also In re Henson*, 913 So. 2d 579, 590 (Fla. 2005). "Although this standard of proof may be met where the evidence is in conflict, it seems to preclude evidence that is ambiguous." *Westinghouse Elec. Corp. v. Shuler Bros.*, 590 So. 2d 986, 989 (Fla. 1991).

23. Charges in a disciplinary proceeding must be strictly construed, with any ambiguity construed in the licensee's favor. *Elmariah v. Dep't of Prof'l Reg.*, 574 So. 2d 164, 165 (Fla. 1st DCA 1990); *Taylor v. Dep't of Prof'l Reg.*, 534 So. 2d 782, 784 (Fla. 1st DCA 1988). Disciplinary statutes and rules must be construed in terms of their literal meaning, and words used by the Legislature may not be expanded to broaden their application. *Beckett v. Dep't of Fin. Servs.*, 982 So. 2d 94, 99-100 (Fla. 1st DCA 2008); *Dyer v. Dep't of Ins. & Treas.*, 585 So. 2d 1009, 1013 (Fla. 1st DCA 1991).

24. Factual findings in a recommended order are uniquely within the province of the ALJ, based on the broad discretion afforded to him or her. *Goin v. Comm'n on Ethics*, 658 So. 2d 1131 (Fla. 1st DCA 1995). *See also Heifetz v. Dep't of Bus. Regul., Div. of Alcoholic Beverages & Tobacco*, 475 So. 2d 1277 (Fla. 1st DCA 1985). More specifically, the ALJ has the best vantage

point to resolve conflicts, determine the credibility of witnesses, draw permissible and reasonable inferences from the evidence, and reach ultimate findings of fact, based on the competent and substantial evidence presented. *Goin*, 658 So. 2d at 1138; *Dep't of Bus. and Pro. Regul. v. McCarthy*, 638 So. 2d 57 (Fla. 1st DCA 1994).

25. Whether a respondent committed the charged offense(s) is a question of ultimate fact to be decided by the trier-of-fact in the context of each alleged violation. *McKinney v. Castor*, 667 So. 2d 387, 389 (Fla. 1st DCA 1995); *Langston v. Jamerson*, 653 So. 2d 489, 491 (Fla. 1st DCA 1995).

26. An agency may not substitute its own facts for that of the ALJ so long as there is adequate evidence in the record to support the ALJ's factual findings. *Lantz v. Smith*, 106 So. 3d 518 (Fla. 1st DCA 2013). *See also Resnick v. Flagler Cnty. Sch. Bd.*, 46 So. 3d 1110, 1112-13 (Fla. 5th DCA 2010)(stating that "[i]n a fact-driven case such as this, where an employee's conduct is at issue, great weight is given to the findings of the [ALJ], who has the opportunity to hear the witnesses' testimony and evaluate their credibility.")

27. Turning to the instant case, the Commissioner alleges in Count I of the Administrative Complaint that Ms. McMath violated section 1012.795(1)(d), Florida Statutes, which provides, in pertinent part, that the Education Practices Commission may revoke a person's educator certificate if that person "[h]as been guilty of gross immorality or an act involving moral turpitude as defined by rule of the State Board of Education . . ."[5] Florida Administrative Code Rule 6A-10.083(1) defines "gross immorality as

> conduct that is inconsistent with the standards of public conscience and good morals. It is conduct that is serious, rather than minor in nature, and that constitutes a flagrant disregard for proper moral standards. Further, the conduct brings the individual concerned or the education profession into public disgrace or disrespect and impairs the

[5] In its Proposed Recommended Order, the Commission states that it "does not contend that [Ms. McMath] committed moral turpitude within the meaning of the rule."

> individual's service in the community.

28. The remainder of Rule 6A-10.083 is helpful for assessing what conduct rises to the level of "gross immorality" within the meaning of the rule:

> (2) Without limiting the conduct here defined, conduct listed below in paragraphs (2)(a)-(c), will prompt review for gross immorality. Except as provided in subsection (5), in determining whether the conduct, act or omission meets the definition of gross immorality, the factors found in subsection (4) must be considered.
>
> (a) An act or omission, regardless of whether the individual is charged with or convicted of any criminal offense, that would constitute a felony or a first degree misdemeanor under the laws of the State of Florida or equivalent law in another state or U.S. Territory, or laws of the United States of America.
>
> (b) An act or omission that results in the intentional falsification of any document or information submitted by an educator for the purpose of inducing the Florida Department of Education to issue, reissue, or renew a Florida educator's certificate.
>
> (c) An intentional violation of test or exam security protocols with the purpose of altering the results for the personal benefit of the educator or which results in a negative impact upon a student or school, such as the invalidation of a student's results/score or requiring a student to re-take a test or use an alternate assessment measure.
>
> (3) For the purpose of Sections 1012.795(1)(d) and 1012.796, F.S., an act of moral turpitude is defined as a crime, regardless of whether the individual is charged or convicted, that is a felony or a first degree misdemeanor under the laws of the State of Florida or equivalent law in another state or U.S. Territory, or laws of the United States of America, that is evidenced by an act of baseness, vileness or depravity in the private and social duties, which,

according to the accepted standards of the time, a man owes to his or her fellow man or to society in general, and the doing of the act itself and not its prohibition by statute fixes the moral turpitude.

(4) Except as provided in subsection (5), the following factors shall be considered in determining whether an act or omission rises to the level of gross immorality or moral turpitude under subsections (1), (2), and (3):

(a) The educator's dishonesty or deception;

(b) The educator's use, attempted use or threatened use, of violence;

(c) The educator's malice or cruelty;

(d) The educator's deliberation, premeditation, or contemplation of an act;

(e) The educator's repeated behavior that displays a disregard for law, order, or human safety;

(f) The harm, injury or insult to the victim;

(g) The age, ability or limitation of the victim;

(h) The benefit derived by the educator;

(i) The presence or absence of mitigating factors, such as the educator's age, experience, mental illness, or actions in self-defense.

(5) An act or omission, regardless of whether the individual is charged with or convicted of any criminal offense, that would constitute a violation of Sections 794.011, 794.027, 794.05, 794.051, 800.02, 800.03, 800.04, 800.09, 800.101, 827.03, 827.04, 827.071, 827.10, or 827.11, F.S., is presumed to be a gross immorality, unless the certificate holder can prove by a preponderance of the evidence through mitigating factors that the act or omission was not one of gross immorality.

> (6) Accidental, negligent or reckless conduct alone, does not meet the definition of an act of moral turpitude or gross immorality.

29. In its Proposed Recommended Order, the Commission set forth the following argument for finding that Ms. McMath violated section 1012.795(1)(d):

> 80. Publicly invoking "karma" against a man on the day he was shot and killed – telling the world that "she heard all your speeches when you proudly proclaimed that you didn't give a shit about other people's lives" – conveys that the victim brought his killing upon himself. Circulating an image of a woman holding the screaming severed head of the sitting President of the United States conveys approval of lethal violence against a political figure. Both acts were deliberate. Both were published under [Ms. McMath]'s own name, on accounts identifying her as a Duval County teacher, to an unrestricted public audience. Neither carried any disclaimer. One of them remains published.
>
> 81. Conduct of that character is inconsistent with the standards of public conscience and good morals; it is serious in nature; and it reflects a flagrant disregard of the moral standards the public is entitled to expect of those entrusted with teaching children in schools in Florida. It brought disgrace upon the education profession, as reflected in the public complaints received by both the District and the Department, the news coverage, and the attention the matter drew in connection with a School Board meeting. The rule 6A-10.083(4) factors of violence, deliberation, and the vulnerability of the affected audience, i.e., students, are present. [The Commission] has proved Count I by clear and convincing evidence.

30. The analysis of Count I turns on whether Ms. McMath's social media postings rise to the level of "gross immorality" within the meaning of Rule 6A-10.083(1), and any reasonable analysis shows a lack of clear and

convincing evidence to support Count I. For instance, with regard to subsection (1) of the Rule, there is no competent, substantial evidence to support a finding Ms. McMath's conduct brought her or the education profession into public disgrace or disrespect. As noted above, Mr. Bennett and Mr. Kosac fielded no complaints from School District students or employees. There is also no competent, substantial evidence that the social media postings at issue impaired Ms. McMath's service in the community. As for subsection (2), Ms. McMath's social media postings were not: (a) a felony or first degree misdemeanor; (b) an act or omission resulting in the intentional falsification of any document or information intended to induce the Florida Department of Education to issue, reissue, or renew an educator's certificate; or (c) an intentional violation of test or exam security protocols.

31. As for subsection (4), the Commission argues that the factors of violence, deliberation, and the vulnerability of the affected audience, i.e., students, are present. However, the Commission's argument is unsupported by the evidence and based on a misreading of subsection (4). As noted above, charges in a disciplinary proceeding must be strictly construed, with any ambiguity construed in the licensee's favor. Subsection (4) identifies an "educator's use, attempted use or threatened use of violence" as being indicative of gross immorality. The social media postings did not reflect any use, attempted use, or threatened use of violence by Ms. McMath. Also, the Commissioner has not argued that Ms. McMath's post was a legitimate threat to sever President Trump's head. Subsection (4) identifies "[t]he educator's deliberation, premeditation, or contemplation of an act" as being indicative of gross immorality. The social media postings did not reflect any deliberation, premeditation, or contemplation of any act by Ms. McMath. Finally, Ms. McMath persuasively testified that students were not her intended audience.

32. Subsection (5) identifies several criminal offenses that amount to gross immorality. No reasonable person could equate Ms. McMath's conduct with those offenses.[6]

33. In Count II, the Commissioner alleges that Ms. McMath violated section 1012.795(1)(g) which provides that the Commission may revoke a person's educator certificate if that person "has been found guilty of personal conduct that seriously reduces that person's effectiveness as an employee of the district school board." In its Proposed Recommended Order, the Commission set forth the following argument in support of Count II:

> The District investigated the matter, substantiated the allegations, imposed discipline, and removed [Ms. McMath] from all contact with students. That removal began in September 2025, lasted the entirety of the 2025-2026 school year, and ended [Ms. McMath]'s classroom teaching. An educator who cannot be placed in front of students is an educator whose effectiveness as an employee of the district school board has been seriously reduced.

34. The Commission failed to carry its burden of presenting clear and convincing evidence in support of Count II. There is no evidence that the social media postings at issue seriously reduced Ms. McMath's effectiveness as a School District employee. While the School District reassigned her to a position that included no teaching duties, the Record lacks any persuasive explanation for why the School District took that action. In fact, Principal Feagins would like to have Ms. McMath "back." There is also no persuasive evidence to support the Commission's assertion that Ms. McMath cannot teach students. On the contrary, the evidence conclusively demonstrates that

[6] The offenses identified in Subsection (5) include sexual battery; unlawful sexual activity with certain minors; indecent, lewd, or lascivious touching of certain minors; exposure of sexual organs; lewd or lascivious offenses committed upon or in the presence of persons less than 16 years of age; school employees soliciting or engaging in sexual conduct with students; abuse, aggravated abuse, and neglect of a child; contributing to the delinquency or dependency of a child; unlawful desertion of a child; and exposing children to adult live performances.

she is still capable of being an effective classroom teacher. As noted above, Mr. Bennett's investigation found no teacher, administrator, or student within the School District who complained about Ms. McMath. Also, Mr. Kosac found no students claiming that Ms. McMath's social media postings disrupted their education. *See Sumter Cty Sch. Bd. v. Thorton*, Case No. 25-5430TTS (Fla. DOAH June 26, 2026; final order pending) (recommending that charges arising from a teacher's social media activity following the Kirk assassination be dropped by finding, in part, that "[a]t most, Superintendent Brown had to deal with a handful of inquiries about the posting, but nothing that indicated Respondent's effectiveness as a teacher was impaired. For example, there was no evidence that parents requested to have their students pulled from Respondent's classroom or that her colleagues refused to work with her. Thus, there was no evidence of any substantial impact upon the school district from her posts that would warrant discipline of any sort.").

35. The Commissioner alleges in Count III that Ms. McMath violated section 1012.795(1)(j) by acting contrary to "the Principles of Professional Conduct for the Education Profession ["the Principles of Professional Conduct"] prescribed by State Board of Education rules." In Counts IV and V, the Commissioner identifies which of the Principles of Professional Conduct Ms. McMath allegedly violated.

36. In Count IV, the Commissioner alleges that Ms. McMath violated Florida Administrative Code Rule 6A-10.081(2)(a)1, which requires Florida-licensed educators to "make reasonable effort to protect the student from conditions harmful to learning and/or to the student's mental and/or physical health and/or safety." In support of this allegation, the Commission argued the following:

> 88. ... The rule measures the educator's effort. It does not require proof of injury or proof that a particular student was in fact harmed; it requires proof that the educator failed to make reasonable

> effort to protect students from such conditions.
> 89. [Ms. McMath] taught eleventh- and twelfth-grade students. On an account that identified her as a Duval County teacher and that was open to the entire world, she published, on the day of a public assassination, a statement invoking "karma" against the victim and reciting that "she heard all your speeches." On the same account she circulated an image depicting the screaming severed head of the sitting President of the United States. Content that trivializes a homicide and that generally depicts the decapitation of a national figure is a condition harmful to learning and to the mental health of the adolescent students who encounter it.
>
> 90. [Ms. McMath] made no effort to protect her students from exposure to that content. She did not restrict the accounts, she did not remove the posts, she did not disclaim them, and she did not remove the identification of her employer from her profile. Her accounts remain public, and the "Karma's a bitch" post remains published and accessible by students.
>
> 91. No individual student was identified as having viewed the posts. That does not defeat the charge. The obligation the rule imposes is one of reasonable effort in the fact of a harmful condition, and an educator who broadcasts such content to a world-wide audience and who takes no protective measure whatsoever, before or after, fails to make that effort. [The Commission] has proved County IV by clear and convincing evidence.

37. The Commission failed to carry its burden of presenting clear and convincing evidence in support of Count IV. The record evidence establishes that Ms. McMath did not attempt to impose her political views on her students. As discussed above, she does not allow students to follow her on social media, and she does not have private conversations with students outside the classroom. While the Commissioner asserts that Ms. McMath's social media postings were "harmful to learning and to the mental health of

the adolescent students who encounter[ed them]," the Commissioner offered no persuasive evidence, such as expert testimony from a child psychologist, to support that assertion. In addition, the Commissioner did not offer testimony from any students claiming their learning and/or mental health were negatively impacted by the social media postings at issue. Therefore, even if students had seen Ms. McMath's social media postings, the Commission has failed to demonstrate that those students' learning and/or mental health would have been negatively impacted. *See Martin Cty Sch. Bd. v. Theobald*, Case No. 25-6580TTS (Fla. DOAH June 17, 2026; final order pending) (concluding that "[w]ith regard to rule 6A-10.081(2)(a)1., the School Board did not prove that Respondent failed to make reasonable effort to protect his students from conditions harmful to their learning, mental or physical health, or safety. The Facebook comments were not directed toward any student, did not reference any student, and bore no relationship to Respondent's students or his classroom duties. The comments were made on Respondent's personal Facebook account in the course of a discussion with adults and were not made in the presence of any students. Moreover, the evidence established that Respondent does not accept friend requests from current students and does not maintain Facebook connections with them. As a result, it would not have been reasonably foreseeable that his students would encounter the comments through Respondent's Facebook page.").

38. In Count V, the Commissioner alleges that Ms. McMath violated rule 6A-10.081(2)(b)1, which requires Florida-licensed educators to "take reasonable precautions to distinguish between personal views and those of any educational institution or organization with which the individual is affiliated." In its Proposed Recommended Order, the Commission set forth the following argument in support of this allegation:

> 92. ... The rule imposes an affirmative duty of precaution and is violated by the failure to take reasonable precautions. The rule does not require proof that any particular person was actually

> confused as to attribution, and it does not require proof of disruption, of an identified student who viewed the posts, or of resulting harm.
>
> 93. [Ms. McMath] published the posts on accounts that were set to public; that were viewable by anyone, follower or not; and that identified her as an employee of the Duval County school system. She placed no disclaimer of any kind on either account or on either post. Mr. Bennett, who viewed the posts, confirmed both that the posts identified [Ms. McMath] as a Duval County public school teacher and that no disclaimer appeared.
>
> 94. [Ms. McMath]'s practice of telling students not to follow her, and of blocking those who try, is not a reasonable precaution to distinguish her personal views from those of the school district. By her own testimony, blocking does not prevent a student or a parent from viewing her public Facebook page.
>
> 95. [Ms. McMath]'s explanation that a disclaimer "would have to be [done] on every individual post" does not excuse compliance. The rule requires reasonable precautions, and [Ms. McMath] took none, not on the accounts, not in her profile, and not on the posts themselves. She could have made the accounts private, removed any link to her employer, added a standing disclaimer, or declined to publish under a profile identifying her as a Duval County teacher. She did none of these things, and she has done none of them since. [The Commission] has proved Count V by clear and convincing evidence.

39. Even though Ms. McMath's social media accounts identify her as a Duval County school teacher, the Commission did not present any evidence indicating that a reasonable person might conclude that Douglas Anderson and/or the School District shared the sentiments expressed in Ms. McMath's social media postings. Also, the social media postings at issue appeared on Ms. McMath's personal social media accounts rather than any social media accounts maintained by Douglas Anderson or the School District. In short,

there is no evidence indicating that anyone could reasonably conclude that Ms. McMath's sentiments were shared by her employers. Therefore, the Commission failed to present clear and convincing evidence to support this allegation.

## RECOMMENDATION

Based on the foregoing Findings of Fact and Conclusions of Law, it is RECOMMENDED that the Education Practices Commission issue a Final Order dismissing the charges against Hope McMath.

DONE AND ENTERED this 21st day of September, 2026, in Tallahassee, Leon County, Florida.

Case No. 25-5780PL

Garnett Chisenhall

G. W. CHISENHALL
Administrative Law Judge
DOAH Tallahassee Office

Division of Administrative Hearings
2001 Drayton Drive
Tallahassee, Florida 32311
(850) 488-9675
www.doah.state.fl.us

Filed with the Clerk of the
Division of Administrative Hearings
this 21st day of September, 2026.

COPIES FURNISHED:

Randy M. Kosec, Chief
(eServed)

John M. Phillips, Owner
(eServed)

Bonnie Ann Wilmot, Esquire
(eServed)

Michael Barrett, General Counsel
(eServed)

Ron Weaver, Esquire
(eServed)

Chase D. Jones, Senior Attorney
(eServed)

Lisa M. Forbess, Executive Director
(eServed)

NOTICE OF RIGHT TO SUBMIT EXCEPTIONS

All parties have the right to submit written exceptions within 15 days from the date of this Recommended Order. Any exceptions to this Recommended Order should be filed with the agency that will issue the Final Order in this case.


9:26
5G+ 91
Hope McMath
Hope McMath
10h ·
Karma's a bitch - and she heard all your speeches when you proudly proclaimed that you didn't give a shit about other people's lives.
44
3 comments 2 shares
Like
Comment
Share
Hope McMath
Stories · Fugazi · Suggestion · 21h ·
misterjesseduquette
Add friend
Message
Home
Friends
Marketplace
Groups
Notifications
Menu