**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

HOPE McMATH,

Plaintiff,

v. Case No. 3:25-cv-1498-HES-LLL

THE SCHOOL BOARD OF DUVAL COUNTY, FLORIDA, et al.,

Defendants.
_______________________________________/

**DEFENDANT THE SCHOOL BOARD OF DUVAL COUNTY, FLORIDA'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

Defendant The School Board of Duval County, Florida (the "School Board") moves under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss every claim that Plaintiff Hope McMath asserts against it in the Second Amended Complaint (Doc. 57). Those claims are Count I (declaratory and injunctive relief against School Board Policy 6.84(D)(1)), Count III (First Amendment retaliation), Count IV (viewpoint discrimination), Count V (violation of section 1003.4505, Florida Statutes), and Count VII (municipal liability). In support, the School Board states:

## INTRODUCTION

Hope McMath no longer works for the School Board. Her part-time teaching contract "ended on June 30, 2026." (Doc. 57 ¶ 44.) She does not allege that the

School Board ended it because of her speech. She does not allege that she has applied to come back. Yet two of her five counts against the School Board ask only for declarations and injunctions: one against a School Board policy that no longer governs her (Count I), and one to enforce a state statute that gives her no right to sue (Count V). And her prayer asks the Court to order the School Board to reinstate her to a "full-time" teaching position she never held. (*Id.* at 27, Prayer ¶ (e).) A former employee has no standing to seek prospective relief against her former employer's policies. Counts I and V should be dismissed for that reason alone, and Count V also fails because section 1003.4505 creates no private cause of action.

The remaining counts seek damages under Section 1983. A school board is liable under that statute only for its own policy or custom, or for a decision of its final policymaker. The Second Amended Complaint pleads none. The policy McMath challenges says nothing about reassigning teachers, and the School District's investigation under it closed with a verbal warning and coaching. (*Id.* ¶ 43.) And the Second Amended Complaint does not allege that the School Board, acting as a board, ever made the reassignment decision, reviewed it, or approved it. Florida law vests the Board's authority in the Board acting as a body, not in individual members, and certainly not in their public remarks. McMath alleges no custom either, only her own case. Counts III, IV, and VII fail to state a claim against the School Board and should be dismissed with prejudice.

## BACKGROUND

### A. Procedural history.

McMath filed this suit on December 8, 2025. (Doc. 1.) She amended her complaint on February 25, 2026. (Doc. 28.) The Government Defendants moved to dismiss the Amended Complaint. (Doc. 30.) McMath then sought leave to file a Second Amended Complaint. (Doc. 42.)

On August 26, 2026, this Court denied leave to file the proposed pleading because it failed to state a claim against the Moms for Liberty defendants and was a shotgun pleading. (Doc. 49 at 4, 7-14.) Among other defects, the Court found that the proposed pleading "asserts multiple claims against multiple defendants without identifying the acts or omissions attributable to each defendant," and so "does not adequately notify each defendant of the factual grounds for each claim against them." (*Id.* at 12-14.) The Court gave McMath "one final opportunity to amend." (*Id.* at 4.) It warned that failure to file a Second Amended Complaint would "result in the immediate dismissal of this action." (*Id.* at 14.)

### B. What the Second Amended Complaint alleges about the School Board.

McMath filed the Second Amended Complaint on September 21, 2026. (Doc. 57.) It alleges that the School Board employed McMath beginning in 2022 and that she taught Advanced Placement Art History at Douglas Anderson School of the Arts. (*Id.* ¶¶ 6, 17.) On September 10, 2025, she posted about the death of Charlie

Kirk on her personal Facebook account. (*Id.* ¶¶ 19-20.) She alleges that the next day, Moms for Liberty-Duval submitted a complaint to the School District, which the School District "accepted as the operative complaint initiating its investigation." (*Id.* ¶¶ 25, 39.) The School District's investigator interviewed McMath. (*Id.* ¶ 33.) On September 15, 2025, the School District reassigned McMath to its Art Resource Center. (*Id.* ¶ 43.) The School District's investigation "closed with a verbal warning and coaching, and [the School District] sought no further discipline." (*Id.*) McMath remained reassigned until "her part-time teaching contract ended on June 30, 2026." (*Id.* ¶ 44.)

Separately, FDOE investigated McMath and the Commissioner of Education pursued discipline against her educator certificate. (*Id.* ¶¶ 21-32, 43.) An administrative law judge has recommended that the Education Practices Commission dismiss those charges. (*Id.* ¶ 45.)

The Second Amended Complaint alleges that the Vice Chair of the School Board read a constituent's letter at a Board meeting on October 7, 2025, and that another Board member appointed a constituent to a subcommittee in April 2026. (*Id.* ¶¶ 35-37.) It alleges that other Board members posted political content on their own social-media accounts and were not investigated. (*Id.* ¶ 38.) It does not allege that the School Board, acting as a board, ever voted on, reviewed, or approved McMath's reassignment or any other action concerning her.

On those allegations, McMath asserts five claims against the School Board. Count I seeks a declaration that School Board Policy 6.84(D)(1) is unconstitutional on its face and as applied, and an injunction against its enforcement. (*Id.* ¶ 47.) Counts III and IV assert First Amendment retaliation and viewpoint discrimination under Section 1983. (*Id.* ¶¶ 50-56.) Count V seeks declaratory and injunctive relief under section 1003.4505, Florida Statutes. (*Id.* ¶ 58.) And Count VII asserts municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). (*Id.* ¶¶ 65-67.) Among other things, McMath asks the Court to enjoin enforcement of the policy against her and to order the School Board "to reinstate Plaintiff to a full-time AP Art History teaching position." (*Id.* at 27, Prayer ¶¶ (a), (b), (e).)

## MEMORANDUM OF LAW

## I. LEGAL STANDARDS

### A. Rule 12(b)(1): Facial challenges to subject-matter jurisdiction

Under Article III of the U.S. Constitution, federal courts exercise limited jurisdiction. A Rule 12(b)(1) motion contests subject-matter jurisdiction and may challenge the complaint's jurisdictional allegations on their face. *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). In such cases, the Court assumes the truth of those allegations and asks whether they are sufficient to establish federal jurisdiction, using a standard similar to Rule 12(b)(6). *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (per curiam). The

plaintiff bears the burden of establishing standing by showing injury in fact, causation, and redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). And "standing is not dispensed in gross"; a plaintiff must demonstrate standing "for each claim that [she] press[es]." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Courts must address these threshold jurisdictional questions first, because they cannot reach questions they never had jurisdiction to entertain. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998).

**B. Rule 12(b)(6): Pleading sufficiency and the plausibility standard**

Rule 12(b)(6) allows dismissal of complaints that do not state a valid claim. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible if the facts support a reasonable inference of the defendant's liability; mere possible misconduct is insufficient. *Iqbal*, 556 U.S. at 678. The Court treats well-pleaded factual allegations as true and draws reasonable inferences in the plaintiff's favor, but legal conclusions and conclusory statements are not accepted. *Id.* at 678-79; *Twombly*, 550 U.S. at 555.

### C. Section 1983: Personal participation, causation, and limits on liability

Section 1983 provides a cause of action against any person who, acting under color of state law, deprives another of a right secured by the Constitution or federal law. *Monroe v. Pape*, 365 U.S. 167, 171 (1961). To state a claim under Section 1983, a plaintiff must plausibly allege that a federal right was violated and that the defendant's own conduct caused the violation. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Each official, "his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* at 677. So supervisors and government officials are not liable solely based on their position or authority. *Cottone*, 326 F.3d at 1360.

## II. A FORMER EMPLOYEE HAS NO STANDING TO SEEK PROSPECTIVE RELIEF AGAINST HER FORMER EMPLOYER (COUNTS I AND V).

Declaratory and injunctive relief look forward. They protect a plaintiff from future injury; they do not redress past injury. So "[w]hen the threat of future harm dissipates, the plaintiff's claims for equitable relief become moot because the plaintiff no longer needs protection from future injury." *Adler v. Duval Cnty. Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if

unaccompanied by any continuing, present adverse effects." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (quotation omitted). The same is true of a declaratory judgment, which requires a substantial likelihood of future injury. *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346-47 (11th Cir. 1999). And a plaintiff must show standing "for each claim that [she] press[es] and for each form of relief that [she] seek[s]." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

Applying those rules, the Eleventh Circuit has held that former employees lack standing to seek injunctive relief against their former employer when they "allege neither that they will be discriminated against by [the employer] in the future nor any facts that would support such a conclusion." *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1006 (11th Cir. 1997). That describes McMath exactly. Her contract ended on June 30, 2026. (Doc. 57 ¶ 44.) She does not allege that she remains a School Board employee, that she has sought or will seek reemployment, or that Policy 6.84(D)(1) will ever be applied to her again. Policy 6.84(D)(1) governs "District employees." (Ex. A ¶ 4.)[1] McMath is not one.

[1] The text of Policy 6.84(D)(1) is quoted in the Amended Recommended Order in *Mack v. McMath*, DOAH Case No. 25-5786PL (Sept. 21, 2026), attached as Exhibit A. The Second Amended Complaint quotes and relies on that order (Doc. 57 ¶¶ 45, 53-54, 67), and Count I challenges the policy itself (*id.* ¶ 47), so the Court may consider both. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). The Court may also take judicial notice of the order to determine what it says, though not for the truth of its findings. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999).

That disposes of Count I, which seeks only a declaration that the policy is unconstitutional and "an injunction restraining its enforcement against protected off-duty speech." (Doc. 57 ¶ 47.) It disposes of Count V, which seeks only "declaratory and injunctive relief." (*Id.* ¶ 58.) And it disposes of the prayer's requests for prospective relief against the School Board. (*Id.* at 27, Prayer ¶¶ (a), (b).) Labeling Count I a facial challenge changes nothing. A plaintiff must still show her own injury in fact before she may seek relief on any theory. *See Lujan*, 504 U.S. at 560-61; *TransUnion*, 594 U.S. at 431.

The request for reinstatement does not save these counts either. Reinstatement remedies a wrongful termination. McMath does not allege that she was terminated, or that her contract ended because of her speech. Count III lists the adverse actions she challenges, and the end of her contract is not among them. (Doc. 57 ¶ 52.) She alleges only that the contract "ended." (*Id.* ¶ 44.) And the position she asks the Court to restore, "a full-time AP Art History teaching position" (*id.* at 27, Prayer ¶ (e)), is one she does not allege she ever held. She describes her own contract as "part-time." (*Id.* ¶ 44.) A court cannot restore someone to a job she never had.

Because McMath lacks standing to seek prospective relief against the School Board, Counts I and V should be dismissed for lack of subject-matter jurisdiction.

## III. SECTION 1003.4505 CREATES NO PRIVATE CAUSE OF ACTION (COUNT V).

Count V fails for a second, independent reason. Section 1003.4505 provides, in full:

> District school boards, administrative personnel, and instructional personnel are prohibited from taking affirmative action, including, but not limited to, the entry into any agreement, that infringes or waives the rights or freedoms afforded to instructional personnel, school staff, or students by the First Amendment to the United States Constitution, in the absence of the express written consent of any individual whose constitutional rights would be impacted by such infringement or waiver.

§ 1003.4505, Fla. Stat. That is the whole statute. It says nothing about who may enforce it, how, or with what remedy.

Under Florida law, "legislative intent . . . should be the primary factor considered by a court in determining whether a cause of action exists when a statute does not expressly provide for one." *Murthy v. N. Sinha Corp.*, 644 So. 2d 983, 985 (Fla. 1994). Nothing in section 1003.4505 suggests an intent to create a private right to sue. It contains no remedial language at all. Florida courts have declined to imply private causes of action from comparable provisions of the education code. *See Almagro v. Sch. Bd. of Miami-Dade Cnty.*, 418 So. 3d 212, 212-13 (Fla. 3d DCA 2025) (no express or implied private right of action for teachers to enforce salary-schedule provision of section 1012.22). And the statute adds nothing that Section 1983 does not already provide. A teacher whose First

Amendment rights are violated by a school board has a federal remedy; section 1003.4505 does not create a second one.

At a minimum, whether section 1003.4505 creates a private cause of action is a novel question of state law that no Florida court has decided. If any part of Count V survived, the Court should decline to exercise supplemental jurisdiction over it. 28 U.S.C. § 1367(c)(1).

## IV. THE SECOND AMENDED COMPLAINT DOES NOT STATE A MONELL CLAIM (COUNTS III, IV, AND VII).

### A. A school board is liable only for its own policy, custom, or final decision.

A local government body "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691. It is liable only when "execution of [its] policy or custom . . . inflicts the injury." *Id.* at 694. The policy or custom must be the "moving force" behind the violation. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997). A plaintiff may satisfy that requirement by identifying (i) an official policy; (ii) an unofficial custom or practice so permanent and well settled that it carries the force of law; or (iii) a decision by an official with final policymaking authority. *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*, 48 F.4th 1222, 1228 (11th Cir. 2022). An official whose decisions are subject to "meaningful administrative review" is not a final policymaker. *Scala v. City of*

*Winter Park*, 116 F.3d 1396, 1401 (11th Cir. 1997); *see Chabad Chayil*, 48 F.4th at 1229-30.

Counts III, IV, and VII rest on the same theory of School Board liability. Count VII labels that theory as a separate count, but *Monell* is the standard by which a local government's liability under Section 1983 is measured, not an independent source of rights. So the three counts rise or fall together. They fall.

**B. Policy 6.84(D)(1) was not the moving force behind the reassignment.**

McMath's principal theory is that the School Board is liable because it enforced Policy 6.84(D)(1) against her, including by removing her from the classroom "under" it. (Doc. 57 ¶¶ 58, 66.) But the Second Amended Complaint identifies only one result of the School District's investigation under that policy: the investigation "closed with a verbal warning and coaching, and [the School District] sought no further discipline." (*Id.* ¶ 43.) Count III does not list the verbal warning or coaching among the adverse actions it challenges. (*Id.* ¶ 52.) Nor could it. An adverse employment action is one that "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." *Akins v. Fulton Cnty.*, 420 F.3d 1293, 1300 (11th Cir. 2005) (quotation omitted). A verbal reminder to be mindful of what one posts publicly does none of those things. The Eleventh Circuit has affirmed a ruling that "memoranda of reprimand

or counseling that amount to no more than a mere scolding, without any following disciplinary action, do not rise to the level of adverse employment actions." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1236 (11th Cir. 2001) (quoting district court). Applying that rule, a court in this Circuit held that a written reprimand for a police officer's inflammatory Facebook post was not an adverse action for purposes of a First Amendment retaliation claim. *Lucas v. City of Delray Beach*, 692 F. Supp. 3d 1271, 1288-89 (S.D. Fla. 2023). A verbal warning is less than that. Count III also lists the investigation itself. (Doc. 57 ¶ 52.) But "[t]he Supreme Court has never defined retaliatory investigation, standing alone, as a constitutional tort." *Rehberg v. Paulk*, 611 F.3d 828, 851 (11th Cir. 2010), *aff'd*, 566 U.S. 356 (2012).

The action McMath does challenge is the reassignment. (Doc. 57 ¶¶ 43, 52-53.) But the policy says nothing about reassignment. It asks employees to "refrain from publishing material on publicly accessible media that fails to align with the Principles of Professional Conduct for the Education Profession in Florida." (Ex. A ¶ 4.) It does not require, authorize, or even mention reassigning anyone. A discretionary personnel decision that the policy does not direct is not the execution of the policy. So the policy was not the "moving force" behind the reassignment. *Bryan Cnty.*, 520 U.S. at 404.

### C. No final policymaker made or ratified the reassignment.

McMath next alleges that the reassignment was "undertaken by, or ratified by, [the School Board's] final policymaking authority, the Superintendent and School Board." (Doc. 57 ¶ 67.) That theory fails as to both.

**The Superintendent.** Under Florida law, the superintendent recommends and the Board decides. The superintendent recommends employees for transfer, and the Board acts on those recommendations. §§ 1012.22(1)(e), 1012.27(4), Fla. Stat. Because the superintendent's decisions are subject to meaningful review by the Board, the superintendent is not a final policymaker for *Monell* purposes. *Scala*, 116 F.3d at 1401. And the Second Amended Complaint does not allege that the Superintendent made the reassignment decision anyway.

**The Board.** The Board, in turn, acts only as a body. Under Florida law, "[t]he district school board, acting as a board," exercises the Board's powers. § 1001.42, Fla. Stat. So "[a]n individual School Board member does not have authority to act alone." *Fla. Fam. Ass'n, Inc. v. Sch. Bd. of Hillsborough Cnty.*, 494 F. Supp. 2d 1311, 1323 (M.D. Fla. 2007). And transfers of district employees start with the superintendent, who recommends them and may make them in an emergency; the Board acts only on his recommendation. §§ 1012.22(1)(e), 1012.27(4), Fla. Stat. The Second Amended Complaint does not allege that the Board, acting as a board, ever voted on, reviewed, or approved McMath's reassignment. Instead it alleges that

individual members "participated in and amplified the campaign against Plaintiff." (Doc. 57 ¶ 67.) The only facts behind that conclusion are one member's reading of a constituent's letter at a meeting and another member's later appointment of a constituent to a subcommittee. (*Id.* ¶¶ 35-37.) Statements and actions by individual members are not the acts of the Board. *Fla. Fam. Ass'n*, 494 F. Supp. 2d at 1323 (citing *Church v. City of Huntsville*, 30 F.3d 1332, 1343 (11th Cir. 1994)).

**Ratification.** Nor does the Second Amended Complaint plead ratification. "The final policymaker . . . must ratify not only the decision itself, but also the unconstitutional basis for it." *Matthews v. Columbia Cnty.*, 294 F.3d 1294, 1297 (11th Cir. 2002). When a plaintiff relies on a single incident, she "must demonstrate that local government policymakers had an opportunity to review the subordinate's decision and agreed with both the decision and the decision's basis." *Salvato v. Miley*, 790 F.3d 1286, 1296 (11th Cir. 2015) (quotation omitted). The Eleventh Circuit applied that rule to a school board just last year, rejecting the theory that a board ratified a subordinate's action simply by failing to intervene. *Huggins v. Sch. Dist. of Manatee Cnty.*, 151 F.4th 1268, 1285-86 (11th Cir. 2025). McMath's theory is the same one. She alleges that the Board "maintained" the reassignment and that its failure to reverse it "represents an affirmative choice." (Doc. 57 ¶ 67.) She does

not allege that the Board ever reviewed the decision, much less that it agreed with an unconstitutional basis for it. That is not ratification.

**D. McMath alleges no custom.**

Finally, McMath alleges "a practice of investigating and removing educators for disfavored off-duty expression." (*Id.* ¶ 66.) But she identifies no educator other than herself. A custom requires a practice "so permanent and well settled as to constitute a custom or usage with the force of law." *Monell*, 436 U.S. at 691 (quotation omitted). A single incident does not establish one. *Craig v. Floyd Cnty.*, 643 F.3d 1306, 1310-11 (11th Cir. 2011). The only comparison McMath offers is that sitting Board members posted political content on their own accounts and were not investigated. (Doc. 57 ¶ 38.) Board members are elected officials, not employees subject to an employee conduct policy. Their treatment says nothing about how the School Board treats its employees. And the assertion that the School Board acted with "deliberate indifference" (*id.* ¶ 67) is a label without facts. *Iqbal*, 556 U.S. at 678.

**E. The policy is not unconstitutional for lacking a disruption requirement.**

McMath's attack on Policy 6.84(D)(1) itself rests on one premise: that the policy restricts employees' off-duty speech "without any showing of disruption to school operations." (Doc. 57 ¶ 47; *see id.* ¶ 66.) That premise is wrong as a matter of law. *Pickering* does not require a public employer to wait for disruption before

acting. The Supreme Court has given "substantial weight to government employers' reasonable predictions of disruption, even when the speech involved is on a matter of public concern." *Waters v. Churchill*, 511 U.S. 661, 673 (1994) (plurality opinion). And the Eleventh Circuit has held that "[t]he government's legitimate interest in avoiding disruption does not require proof of actual disruption." *Moss v. City of Pembroke Pines*, 782 F.3d 613, 622 (11th Cir. 2015).

So the policy's silence about disruption does not make it unconstitutional, and McMath pleads no other basis for her challenge to it. The policy asks employees to "refrain from publishing material on publicly accessible media that fails to align with the Principles of Professional Conduct for the Education Profession in Florida." (Ex. A ¶ 4.) Those are standards the State imposes on every certified educator. Fla. Admin. Code R. 6A-10.081. Whether a particular application of the policy to particular speech survives *Pickering* is a question about that application. It is not a defect in the policy itself. That is an independent reason to reject McMath's theory that the policy, as opposed to a discretionary decision applying it, was the moving force behind any constitutional violation. And if the Court reaches the merits of Count I, it is an independent reason to dismiss that count too.

So, whatever the merits of McMath's complaints about the reassignment, the Second Amended Complaint does not tie that decision to a policy, custom, or

final decision of the School Board. Counts III, IV, and VII fail to state a claim against it.

## V. COUNT IV ALSO FAILS FOR WANT OF A SIMILARLY SITUATED COMPARATOR.

Count IV adds one theory: that the School Board targeted McMath's speech "while not subjecting comparable speech expressing favored viewpoints to investigation or discipline." (Doc. 57 ¶ 56.) The only "comparable speech" the Second Amended Complaint identifies is the social-media activity of sitting Board members. (*Id.* ¶ 38.) Elected Board members are not School District employees. They are not supervised by the superintendent, not subject to employee conduct policies, and not investigated by the School District's Office of Professional Standards. Comparing the School District's treatment of its employee to its treatment of the officials elected to govern it compares things that are not alike. Without a similarly situated comparator, Count IV pleads nothing that Count III does not, and it fails for the same reasons.

## VI. McMATH HAS HAD HER FINAL OPPORTUNITY.

This is the fourth complaint McMath has drafted and the third she has filed. (Docs. 1, 28, 42-1, 57.) When this Court rejected the third, it told McMath that she would receive "one final opportunity to amend." (Doc. 49 at 4.) She has had discovery and a full evidentiary hearing in the certificate case. (Doc. 57 ¶¶ 45, 54.) Her claims for prospective relief fail for lack of jurisdiction, which requires

dismissal without prejudice. *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). But her damages claims fail on the merits, and further amendment would be futile. *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007); *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018). Those claims should be dismissed with prejudice.

## CONCLUSION

The School Board respectfully requests that the Court dismiss Counts I and V of the Second Amended Complaint for lack of subject-matter jurisdiction, dismiss Counts III, IV, and VII with prejudice, and, to the extent any part of Count V survives, decline to exercise supplemental jurisdiction over it.

Dated: October 30, 2026

Respectfully submitted,

/s/ Adam B. Brandon
Jason B. Gonzalez (FBN: 146854)
Samuel J. Salario, Jr. (FBN: 83460)
Michael C. Kelley (FBN: 99492)
Eric C. Reed (FBN: 0557161)
Adam B. Brandon (FBN: 99316)
LAWSON HUCK GONZALEZ, PLLC
101 E. College Avenue, 5th Floor
Tallahassee, Florida 32301
jason@lawsonhuckgonzalez.com
samuel@lawsonhuckgonzalez.com
michael@lawsonhuckgonzalez.com
eric@lawsonhuckgonzalez.com
adam@lawsonhuckgonzalez.com
michelle@lawsonhuckgonzalez.com

*Counsel for Defendant The School Board of Duval County, Florida*

**LOCAL RULE 3.01(g) CERTIFICATE**

I HEREBY CERTIFY that undersigned counsel conferred with counsel for Plaintiff by email regarding the relief requested in this motion. Plaintiff opposes the motion in its entirety.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 30, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Adam B. Brandon
Attorney