**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

HOPE McMATH,

Plaintiff,

v. Case No. 3:25-cv-1498-HES-LLL

THE SCHOOL BOARD OF DUVAL
COUNTY, FLORIDA, et al.,

Defendants.
_________________________________________/

# DEFENDANT APRIL CARNEY'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendant April Carney, sued in her individual capacity, moves under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss every claim that Plaintiff Hope McMath asserts against her in the Second Amended Complaint (Doc. 57).[1] Those claims are Count III (First Amendment retaliation), Count IV (viewpoint discrimination), and Count VIII (right to petition and public-forum viewpoint discrimination). In support, Ms. Carney states:

[1] The Second Amended Complaint sues Ms. Carney only in her individual capacity. To the extent any count could be read to assert an official-capacity claim against her, that claim would be a claim against the School Board of Duval County, which is already a defendant, and it should be dismissed as redundant. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991).

## INTRODUCTION

April Carney is the Vice Chair of the Duval County School Board. The Second Amended Complaint accuses her of two things. The first is that a screen capture of McMath's Facebook post, which reached the Florida Department of Education ("FDOE") on September 11, 2025, "bears an on-screen avatar matching" Ms. Carney's Facebook profile photograph. (Doc. 57 ¶ 22.) McMath pleads that allegation only "[u]pon information and belief," and she explains why: FDOE has no record of who sent the image. (*Id.*) The second is that, at a Board meeting on October 7, 2025, Ms. Carney "read aloud, without attribution, an anonymous parent letter" that criticized McMath. (*Id.* ¶ 35.)

That is the whole case against her. Neither allegation states a constitutional claim.

Take the screen capture first. Even assuming Ms. Carney sent it, passing along a public post from a personal Facebook account is not action under color of state law. A school board member cannot act for the board alone, and McMath does not allege that Ms. Carney claimed to. Nor was sending the post an adverse action against McMath. It imposed nothing on her. What followed was the work of others: FDOE's investigators, the Commissioner of Education, an administrative law judge, and the School District. Their independent decisions break any causal chain back to whoever pressed "send."

The Board meeting fares no better. It came three weeks after the School District had reassigned McMath and nearly four weeks after FDOE had opened its investigation. (*Id.* ¶¶ 23-24, 35, 43.) Nothing that happened on October 7 could have caused either. And an elected official's own speech criticizing someone is not retaliation unless it threatens punishment. Reading a constituent's letter threatened nothing.

McMath's forum claim fails for the additional reason that she never alleges that she attended the meeting or tried to speak, so she has no standing to bring it. Ms. Carney is entitled to qualified immunity on every count. And McMath has had her final opportunity to amend. The claims against Ms. Carney should be dismissed with prejudice.

## BACKGROUND

### A. Procedural history.

McMath filed this suit on December 8, 2025. (Doc. 1.) She amended her complaint on February 25, 2026. (Doc. 28.) The Government Defendants moved to dismiss the Amended Complaint. (Doc. 30.) McMath then sought leave to file a Second Amended Complaint. (Doc. 42.)

On August 26, 2026, this Court denied leave to file the proposed pleading because it failed to state a claim against the Moms for Liberty defendants and was a shotgun pleading. (Doc. 49 at 4, 7-14.) Among other defects, the Court found that

the proposed pleading "asserts multiple claims against multiple defendants without identifying the acts or omissions attributable to each defendant," and so "does not adequately notify each defendant of the factual grounds for each claim against them." (*Id.* at 12-14.) The Court gave McMath "one final opportunity to amend." (*Id.* at 4.) It warned that failure to file a Second Amended Complaint would "result in the immediate dismissal of this action." (*Id.* at 14.)

**B. What the Second Amended Complaint alleges about Ms. Carney.**

McMath filed the Second Amended Complaint on September 21, 2026. (Doc. 57.) It alleges that McMath, then a teacher at Douglas Anderson School of the Arts, posted about the death of Charlie Kirk on her personal Facebook account on September 10, 2025. (*Id.* ¶¶ 6, 17-20.) It alleges that the first item in FDOE's investigative file is a screen capture of that post, which reached FDOE at 9:26 a.m. the next morning from a sender FDOE cannot identify. (*Id.* ¶ 21.) And it alleges, "[u]pon information and belief," that the screen capture "bears an on-screen avatar matching the Facebook profile photograph" of Ms. Carney. (*Id.* ¶ 22.) The stated basis for that belief is that FDOE has no record of the sender, that the FDOE employee who first relayed that such cases were incoming has died, and that Defendants have produced no records of the transmission. (*Id.*)

That allegation has moved. In the Amended Complaint, McMath alleged that screen captures bearing Ms. Carney's profile photograph appeared in the

School District's file, and that FDOE's investigation began with an anonymous email. (Doc. 28 ¶¶ 86-87, 89.) Now she alleges that the screen capture was the first item in FDOE's file. (Doc. 57 ¶¶ 21-22.) Either way, the Second Amended Complaint does not allege that Ms. Carney sent the image in her capacity as a Board member, that she said anything when she sent it, that she asked anyone to do anything, or that she had any further contact with FDOE or the School District about McMath.

The Second Amended Complaint alleges that FDOE's Chief of Professional Practices Services contacted the School District about McMath at about 2:34 p.m. on September 11, and that FDOE mailed McMath a letter opening its inquiry that afternoon. (*Id.* ¶¶ 23-24.) It alleges that Moms for Liberty-Duval submitted a complaint to the School District at 2:56 p.m. that day, which the School District "accepted as the operative complaint initiating its investigation." (*Id.* ¶¶ 25, 39.) It alleges that the School District reassigned McMath on September 15, 2025. (*Id.* ¶ 43.)

Three weeks later, at the October 7, 2025 Board meeting, Ms. Carney "read aloud, without attribution, an anonymous parent letter attacking Plaintiff by name." (*Id.* ¶ 35.) The letter's author, Defendant Ellye Smith Aull, later published it herself and said it "was sent to the entire board." (*Id.* ¶ 36.) The Second Amended

Complaint does not allege that Ms. Carney said anything else about McMath, proposed or voted on any action concerning her, or threatened her with anything.

On those allegations, McMath asserts three claims against Ms. Carney: First Amendment retaliation (Count III), viewpoint discrimination (Count IV), and a right-to-petition and public-forum claim (Count VIII). (*Id.* ¶¶ 50-56, 68-69.)

**MEMORANDUM OF LAW**

## I. LEGAL STANDARDS

### A. Rule 12(b)(1): Facial challenges to subject-matter jurisdiction

Under Article III of the U.S. Constitution, federal courts exercise limited jurisdiction. A Rule 12(b)(1) motion contests subject-matter jurisdiction and may challenge the complaint's jurisdictional allegations on their face. *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). In such cases, the Court assumes the truth of those allegations and asks whether they are sufficient to establish federal jurisdiction, using a standard similar to Rule 12(b)(6). *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (per curiam). The plaintiff bears the burden of establishing standing by showing injury in fact, causation, and redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). And "standing is not dispensed in gross"; a plaintiff must demonstrate standing "for each claim that [she] press[es]." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Courts must address these threshold jurisdictional questions first, because

they cannot reach questions they never had jurisdiction to entertain. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998).

### B. Rule 12(b)(6): Pleading sufficiency and the plausibility standard

Rule 12(b)(6) allows dismissal of complaints that do not state a valid claim. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible if the facts support a reasonable inference of the defendant's liability; mere possible misconduct is insufficient. *Iqbal*, 556 U.S. at 678. The Court treats well-pleaded factual allegations as true and draws reasonable inferences in the plaintiff's favor, but legal conclusions and conclusory statements are not accepted. *Id.* at 678-79; *Twombly*, 550 U.S. at 555.

### C. Section 1983: Personal participation, causation, and limits on liability

Section 1983 provides a cause of action against any person who, acting under color of state law, deprives another of a right secured by the Constitution or federal law. *Monroe v. Pape*, 365 U.S. 167, 171 (1961). To state a claim under Section 1983, a plaintiff must plausibly allege that a federal right was violated and that the defendant's own conduct caused the violation. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). "Because vicarious liability is inapplicable to . . . § 1983 suits, a

plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Each official, "his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* at 677. So supervisors and government officials are not liable solely based on their position or authority. *Cottone*, 326 F.3d at 1360.

## II. McMATH HAS NO STANDING TO CHALLENGE HOW THE BOARD RAN A MEETING AT WHICH SHE NEVER TRIED TO SPEAK (COUNT VIII).

Count VIII alleges that the October 7, 2025 Board meeting "was a designated or limited public forum" and that "Defendants administered that forum in a viewpoint-discriminatory manner, including by amplifying an anonymous attack on Plaintiff while disfavoring speech supporting her." (Doc. 57 ¶ 69.) The count is styled a claim for violation of the "Right to Petition." (*Id.* at 25.)

What the count does not allege is any injury to McMath's own rights of speech or petition. McMath does not allege that she attended the meeting. She does not allege that she signed up to speak, asked to speak, was denied time, was cut off, or submitted anything to the Board. She does not allege that she petitioned the Board for anything at all. The only fact about the meeting that the count incorporates is that the Vice Chair read aloud a letter that criticized McMath. (*Id.* ¶¶ 35, 68.)

That is not an Article III injury to McMath's forum or petition rights. An injury in fact must be concrete and particularized, which means it "must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. And a plaintiff "generally must assert [her] own legal rights and interests, and cannot rest [her] claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *accord Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004). The Eleventh Circuit has recognized that a would-be speaker who reasonably censors herself because of a school board's public-comment rules may have standing to seek prospective relief against those rules. *Moms for Liberty - Brevard Cnty. v. Brevard Pub. Schs.*, 118 F.4th 1324, 1330 (11th Cir. 2024). But McMath does not allege that she wanted to speak, that she held back, or that any rule chilled her. And against Ms. Carney, sued in her individual capacity, McMath seeks damages for a completed injury, which requires that her own rights have been violated. *See id.* A public-forum claim protects a speaker's access to the forum. A petition claim protects the act of petitioning. McMath alleges neither. If some supporter of McMath's received less time or a cooler reception than McMath would have liked, the claim belongs to that supporter. And being criticized from the dais does not restrict the forum rights of the person criticized.

The Government Defendants made this point against the Amended Complaint. (Doc. 30 at 21.) McMath did not respond to it. (*See* Doc. 40.) The Second

Amended Complaint does not cure it. Because McMath alleges no injury to her own rights of speech or petition, Count VIII should be dismissed under Rule 12(b)(1).

## III. THE SCREEN CAPTURE DOES NOT STATE A CLAIM AGAINST MS. CARNEY (COUNTS III AND IV).

The screen-capture allegation fails four times over. It is pleaded on a belief that rests on nothing Ms. Carney did. It describes private conduct, not state action. It describes no adverse action. And it cannot have caused McMath's injuries, because independent decision-makers stand between it and everything that happened to her.

### A. The allegation rests on belief, not fact.

The Court "do[es] not have to take as true" allegations made "upon information and belief" that lack sufficient facts to make them plausible. *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013). McMath's stated basis for her belief is mostly an absence of information: FDOE has no record of the sender, a witness has died, and Defendants have produced no records. (Doc. 57 ¶ 22.) The only affirmative fact is that an avatar in the image "match[es]" Ms. Carney's profile photograph. (*Id.*) Even taken as true, that fact says who was looking at the post when the image was captured. It does not say who sent the image to FDOE, how, or why. And McMath's own account of where the image surfaced has changed

from one complaint to the next. (*Compare* Doc. 28 ¶¶ 86-87, 89, *with* Doc. 57 ¶¶ 21-22.)

**B. Forwarding a public post from a personal account is not state action.**

Section 1983 reaches only conduct "under color of" state law. When a public official uses social media, that conduct is state action "only if the official (1) possessed actual authority to speak on the State's behalf, and (2) purported to exercise that authority when he spoke on social media." *Lindke v. Freed*, 601 U.S. 187, 198 (2024). The appearance and function of the activity matter at the second step, but "they cannot make up for a lack of state authority at the first." *Id.*

McMath's allegation fails both steps. As to the first, an individual school board member has no authority to act for the Board. Under Florida law, "[t]he district school board, acting as a board," exercises the Board's powers. § 1001.42, Fla. Stat. So "[a]n individual School Board member does not have authority to act alone." *Fla. Fam. Ass'n, Inc. v. Sch. Bd. of Hillsborough Cnty.*, 494 F. Supp. 2d 1311, 1323 (M.D. Fla. 2007). Nothing in Florida law authorizes a single member to report anyone to FDOE on the Board's behalf, and McMath identifies no such authority. As to the second, the Second Amended Complaint alleges only that the image bears the avatar from Ms. Carney's personal "Facebook profile photograph." (Doc. 57 ¶ 22.) It does not allege that she invoked her office, used Board letterhead or staff, or purported to speak for the Board. Viewing a public Facebook post and

passing it along is something any citizen can do. The paragraph that describes Ms. Carney as acting "under color of state law" (*id.* ¶ 9) is a legal conclusion, which the Court does not accept as true. *Iqbal*, 556 U.S. at 678. So the screen capture cannot support a Section 1983 claim against Ms. Carney.

### C. Sending a public post to FDOE was not an adverse action against McMath.

A retaliation plaintiff must allege that "the defendant's retaliatory conduct adversely affected the protected speech." *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). Forwarding a post that McMath herself had published to the world imposed nothing on her. It did not discipline her, reassign her, or restrict her speech. It put a public document in front of the state agency that Florida law charges with investigating matters "called to its attention." § 1012.796(1)(a), Fla. Stat. Whatever consequences followed came from what others decided to do with it.

### D. Independent decision-makers broke any causal chain.

That is the decisive point. In a Section 1983 case, the requisite "causal relation" "does not exist when the continuum between [the defendant's] action and the ultimate harm is occupied by the conduct of deliberative and autonomous decision-makers." *Carruth v. Bentley*, 942 F.3d 1047, 1056 (11th Cir. 2019) (quoting *Dixon v. Burke Cnty.*, 303 F.3d 1271, 1275 (11th Cir. 2002)).

The continuum here is crowded. By McMath's own account, FDOE's Chief of Professional Practices Services decided to look into the post, contacted the School District, scheduled a school visit, and mailed McMath a letter. (Doc. 57 ¶¶ 23-24.) The Commissioner of Education found probable cause. (*Id.* ¶ 29.) An administrative law judge heard the case. (*Id.* ¶ 45.) And the Education Practices Commission, not FDOE, decides whether any discipline follows. § 1012.796(6)-(7), Fla. Stat. And the Commission "may not be subject to control, supervision, or direction by the Department of Education." § 1012.79(6)(a), Fla. Stat. On the School District's side, McMath alleges that the School District acted on a different complaint, one it "accepted as the operative complaint initiating its investigation." (Doc. 57 ¶¶ 25, 39.) She does not allege that Ms. Carney wrote that complaint, sent it, or asked anyone to file it.[2] And the School District made its own decision to reassign McMath. (*Id.* ¶ 43.) The Second Amended Complaint does not allege that Ms. Carney directed, influenced, or even communicated with any of those decision-makers. Each exercised its own judgment. So even if Ms. Carney sent the image, nothing that happened to McMath is legally traceable to her.

[2] McMath's earlier pleading gave a different account of the complaint that began the School District's investigation. (*Compare* Doc. 57 ¶¶ 25, 39, *with* Doc. 28 ¶ 83.) The difference does not matter here. Neither account attributes that complaint to Ms. Carney.

## IV. READING A CONSTITUENT'S LETTER AT A BOARD MEETING DOES NOT STATE A CLAIM (COUNTS III, IV, AND VIII).

### A. The meeting came after the actions McMath challenges.

Count III identifies four adverse actions: "opening an investigation, reassigning her, removing her from the classroom, and pursuing certificate discipline." (Doc. 57 ¶ 52.) FDOE opened its investigation on September 11, 2025. (*Id.* ¶¶ 23-24.) The School District reassigned McMath and removed her from the classroom on September 15, 2025. (*Id.* ¶ 43.) Ms. Carney read the letter on October 7, 2025. (*Id.* ¶ 35.) An event cannot cause what came before it. And the Second Amended Complaint does not allege that the Commissioner, who alone decides whether to pursue certificate discipline, § 1012.796(3), (6), Fla. Stat., heard, read, or acted on anything said at the meeting.

### B. An official's own speech is not retaliation absent a threat.

Nor was the reading itself an adverse action. The Supreme Court has held that an elected board's purely verbal censure of one of its own members was not a materially adverse action. *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 477-79 (2022). The Court explained that "no one would think that a mere frown from a supervisor constitutes a sufficiently adverse action to give rise to an actionable First Amendment claim," *id.* at 477, and that the First Amendment "cannot be used as a weapon to silence other representatives seeking to" speak, *id.* at 478. And when the alleged retaliation is an official's own speech, several federal courts of

appeals require the plaintiff to show that the speech amounted to "a threat, coercion, or intimidation intimating that punishment, sanctions, or adverse regulatory action will imminently follow." *Echols v. Lawton*, 913 F.3d 1313, 1320 (11th Cir. 2019) (describing that standard and citing *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 687 (4th Cir. 2000)). The Eleventh Circuit has held that an official's defamatory speech can support a retaliation claim even without a threat. *Echols*, 913 F.3d at 1323.

McMath alleges nothing of either kind. She does not allege that the letter Ms. Carney read contained a false statement of fact, much less that Ms. Carney knew it. Ms. Carney read a letter written by a constituent and sent to the entire Board. (Doc. 57 ¶¶ 35-36.) McMath does not allege that Ms. Carney threatened her, proposed action against her, or called for anything at all. Criticism of a public employee's public statements, voiced at a public meeting, is the kind of responsive speech by public officials that *Wilson* protects. It is not retaliation.

**C. Reading a letter did not restrict anyone's speech in the forum.**

Count VIII fails on the merits for similar reasons. The Eleventh Circuit often classifies public comment periods at school-board meetings as limited public fora. *Huggins v. Sch. Dist. of Manatee Cnty.*, 151 F.4th 1268, 1280 (11th Cir. 2025) (citing *McDonough v. Garcia*, 116 F.4th 1319, 1328-29 (11th Cir. 2024) (en banc)). In a limited public forum, restrictions on speech "only must be reasonable and viewpoint

neutral." *Bloedorn v. Grube*, 631 F.3d 1218, 1231 (11th Cir. 2011). A forum claim requires a restriction on someone's speech. Count VIII identifies none. It does not allege that Ms. Carney cut off, silenced, or limited any speaker. Its reference to "disfavoring speech supporting [McMath]" (*id.* ¶ 69) names no speaker, no restriction, and no act by Ms. Carney. A board member's own remarks from the dais are her speech. They restrict no one else's.

**D. Ms. Carney regulated none of McMath's speech.**

Count IV alleges that "Defendants targeted Plaintiff's speech because of the viewpoint it expressed, while not subjecting comparable speech expressing favored viewpoints to investigation or discipline." (*Id.* ¶ 56.) The First Amendment requires the government to "abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). Ms. Carney did not regulate McMath's speech. She did not investigate McMath, discipline her, or decide whether anyone else would be investigated. The only comparator the pleading offers is the social-media activity of other Board members. (Doc. 57 ¶ 38.) Ms. Carney is not alleged to have had any role in deciding whether they, or anyone, would be investigated. Count IV fails as to Ms. Carney.

## V. MS. CARNEY IS ENTITLED TO QUALIFIED IMMUNITY.

Qualified immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). It is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). So it should be resolved "at the earliest possible stage in litigation." *Pearson*, 555 U.S. at 232 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)). An official invoking the defense must first show that she acted within her discretionary authority, meaning that she pursued a job-related goal through means within her power. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265-66 (11th Cir. 2004). The burden then shifts to the plaintiff to show that the official violated a constitutional right and that the right was clearly established, in terms specific enough that "every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (cleaned up); *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003). Only decisions of the Supreme Court, the Eleventh Circuit, and the Supreme Court of Florida can clearly establish the law in this Circuit. *Jenkins ex rel. Hall v. Talladega City Bd. of Educ.*, 115 F.3d 821, 826 n.4 (11th Cir. 1997) (en banc).

Ms. Carney acted within her discretionary authority. The only official conduct attributed to her is speaking during a Board meeting, which is part of the

job of an elected Board member. (Doc. 57 ¶ 35.) And to the extent McMath claims the screen capture was official conduct, reporting a matter to the state agency responsible for it is a job-related goal pursued through lawful means. *See Holloman*, 370 F.3d at 1265-66. So the burden shifts to McMath.

She cannot carry it. No decision of the Supreme Court, the Eleventh Circuit, or the Supreme Court of Florida holds that a school board member violates the First Amendment by passing a publicly available post along to the state licensing agency. And none holds that a board member violates the First Amendment by reading a constituent's criticism of a public employee at a public meeting. The law points the other way. *Wilson* held that an elected body's verbal censure was not actionable, and it expressly declined to decide whether verbal reprimands directed at others, such as government employees, could be. 595 U.S. at 480-81. And the Eleventh Circuit's decision in *Echols*, which allowed a retaliation claim based on an official's own speech, rested on allegations that the speech was defamatory, and it held that even that right was not clearly established. 913 F.3d at 1324-25. McMath does not allege that anything Ms. Carney read was false. More recently, the Eleventh Circuit granted qualified immunity to a school district official who publicly insinuated that a citizen was dangerous, because no clearly established law held that such speech could support a retaliation claim. *Huggins*, 151 F.4th at 1285. Where the Supreme Court and the Eleventh Circuit have left a question open,

the answer is not "beyond debate." *al-Kidd*, 563 U.S. at 741. Ms. Carney is entitled to qualified immunity on Counts III, IV, and VIII.

## VI. McMATH HAS HAD HER FINAL OPPORTUNITY, AND DISMISSAL SHOULD BE WITH PREJUDICE.

This is the fourth complaint McMath has drafted and the third she has filed. (Docs. 1, 28, 42-1, 57.) When this Court rejected the third, it told McMath that she would receive "one final opportunity to amend." (Doc. 49 at 4.) She used it to move the screen-capture allegation from one file to another and to drop the rest of what she had alleged about Ms. Carney. (*Compare* Doc. 28 ¶¶ 19, 86-90, 139-40, 164-72, *with* Doc. 57 ¶¶ 22, 35.)

Nor has McMath pleaded in the dark. By her own account, she has taken discovery and tried her certificate case to a full evidentiary hearing. (Doc. 57 ¶¶ 45, 54.) With that record in hand, she still alleges nothing that states a claim against Ms. Carney. A district court need not permit further amendment when amendment would be futile. *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007). And a plaintiff who has been given a chance to cure a shotgun pleading and has not done so is not entitled to another. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018). Both principles apply here.

## CONCLUSION

Defendant April Carney respectfully requests that the Court dismiss Counts III and IV of the Second Amended Complaint as to her with prejudice, and dismiss

Count VIII as to her for lack of subject-matter jurisdiction or, in the alternative, with prejudice.

Dated: October 30, 2026

Respectfully submitted,

/s/ Adam B. Brandon
Jason B. Gonzalez (FBN: 146854)
Samuel J. Salario, Jr. (FBN: 83460)
Michael C. Kelley (FBN: 99492)
Eric C. Reed (FBN: 0557161)
Adam B. Brandon (FBN: 99316)
LAWSON HUCK GONZALEZ, PLLC
101 E. College Avenue, 5th Floor
Tallahassee, Florida 32301
jason@lawsonhuckgonzalez.com
samuel@lawsonhuckgonzalez.com
michael@lawsonhuckgonzalez.com
eric@lawsonhuckgonzalez.com
adam@lawsonhuckgonzalez.com
michelle@lawsonhuckgonzalez.com

*Counsel for Defendant April Carney*

**LOCAL RULE 3.01(g) CERTIFICATE**

I HEREBY CERTIFY that undersigned counsel conferred with counsel for Plaintiff by email regarding the relief requested in this motion. Plaintiff opposes the motion in its entirety.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 30, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Adam B. Brandon
Attorney