**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

HOPE McMATH,

Plaintiff,

v. Case No. 3:25-cv-1498-HES-LLL

THE SCHOOL BOARD OF DUVAL COUNTY, FLORIDA, et al.,

Defendants.
________________________________________/

# DEFENDANT MELODY BOLDUC'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendant Melody Bolduc, sued in her individual capacity, moves under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss every claim that Plaintiff Hope McMath asserts against her in the Second Amended Complaint (Doc. 57).[1] Those claims are Count III (First Amendment retaliation), Count IV (viewpoint discrimination), and Count VIII (right to petition and public-forum viewpoint discrimination). In support, Ms. Bolduc states:

[1] The Second Amended Complaint sues Ms. Bolduc only in her individual capacity. To the extent any count could be read to assert an official-capacity claim against her, that claim would be a claim against the School Board of Duval County, which is already a defendant, and it should be dismissed as redundant. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991).

## INTRODUCTION

Melody Bolduc is a member of the Duval County School Board. The Second Amended Complaint accuses her of one thing. On or about April 29, 2026, she appointed Defendant Ellye Smith Aull as her District 7 representative to a School District subcommittee. (Doc. 57 ¶ 37.)

That is it. And the date matters. By April 29, 2026, FDOE had opened its investigation of McMath (September 11, 2025), the School District had reassigned her (September 15, 2025), the Board meeting at the center of Count VIII had come and gone (October 7, 2025), the Commissioner had found probable cause (October 8, 2025), and McMath had filed this lawsuit (December 8, 2025). (*Id.* ¶¶ 23-24, 29, 35, 43; Doc. 1.) An appointment made seven months after the events McMath challenges cannot have caused any of them. And appointing a constituent to a subcommittee does nothing to McMath at all.

Section 1983 liability is personal. A plaintiff must plead what each defendant did to violate her rights. McMath pleads that Ms. Bolduc did nothing to her. Count VIII also fails because McMath never alleges that she tried to speak at the Board meeting, so she has no standing to complain about how it was run. Ms. Bolduc is entitled to qualified immunity. And McMath has had her final opportunity to amend. The claims against Ms. Bolduc should be dismissed with prejudice.

## BACKGROUND

### A. Procedural history.

McMath filed this suit on December 8, 2025. (Doc. 1.) She amended her complaint on February 25, 2026. (Doc. 28.) The Government Defendants moved to dismiss the Amended Complaint. (Doc. 30.) McMath then sought leave to file a Second Amended Complaint. (Doc. 42.)

On August 26, 2026, this Court denied leave to file the proposed pleading because it failed to state a claim against the Moms for Liberty defendants and was a shotgun pleading. (Doc. 49 at 4, 7-14.) Among other defects, the Court found that the proposed pleading "asserts multiple claims against multiple defendants without identifying the acts or omissions attributable to each defendant," and so "does not adequately notify each defendant of the factual grounds for each claim against them." (*Id.* at 12-14.) The Court gave McMath "one final opportunity to amend." (*Id.* at 4.) It warned that failure to file a Second Amended Complaint would "result in the immediate dismissal of this action." (*Id.* at 14.)

### B. What the Second Amended Complaint alleges about Ms. Bolduc.

McMath filed the Second Amended Complaint on September 21, 2026. (Doc. 57.) It alleges that McMath, then a teacher at Douglas Anderson School of the Arts, posted about the death of Charlie Kirk on her personal Facebook account on September 10, 2025. (*Id.* ¶¶ 6, 17-20.) It alleges that FDOE opened an investigation the next day, that the School District reassigned McMath on September 15, 2025,

and that the Commissioner of Education pursued discipline against her educator certificate. (*Id.* ¶¶ 21-34, 43.)

Ms. Bolduc appears in three places: the caption, the headings of Counts III, IV, and VIII, and two numbered paragraphs. Paragraph 10 says she was a member of the School Board, that she is sued in her individual capacity, and that she lives in Duval County. (*Id.* ¶ 10.) Paragraph 37 says that on or about April 29, 2026, she appointed Ms. Aull as her District 7 representative to a School District subcommittee. (*Id.* ¶ 37.) The Second Amended Complaint does not allege that Ms. Bolduc reported McMath's post, investigated McMath, reassigned her, disciplined her, voted on anything concerning her, spoke about her, or did anything at the October 7, 2025 Board meeting.

The Amended Complaint had alleged that Ms. Bolduc's campaign website listed her as a Moms for Liberty "member," that the group endorsed her, and that she wore a Turning Point t-shirt on the dais. (Doc. 28 ¶ 20(a)-(c).) When this Court rejected McMath's proposed Second Amended Complaint, it explained that allegations of endorsement, support, and matching t-shirts do not show an agreement to violate anyone's rights. (Doc. 49 at 10.) The Second Amended Complaint drops those allegations and substitutes the subcommittee appointment.

## MEMORANDUM OF LAW

### I. LEGAL STANDARDS

#### A. Rule 12(b)(1): Facial challenges to subject-matter jurisdiction

Under Article III of the U.S. Constitution, federal courts exercise limited jurisdiction. A Rule 12(b)(1) motion contests subject-matter jurisdiction and may challenge the complaint's jurisdictional allegations on their face. *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). In such cases, the Court assumes the truth of those allegations and asks whether they are sufficient to establish federal jurisdiction, using a standard similar to Rule 12(b)(6). *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (per curiam). The plaintiff bears the burden of establishing standing by showing injury in fact, causation, and redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). And "standing is not dispensed in gross"; a plaintiff must demonstrate standing "for each claim that [she] press[es]." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). Courts must address these threshold jurisdictional questions first, because they cannot reach questions they never had jurisdiction to entertain. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998).

#### B. Rule 12(b)(6): Pleading sufficiency and the plausibility standard

Rule 12(b)(6) allows dismissal of complaints that do not state a valid claim. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible if the facts support a reasonable inference of the defendant's liability; mere possible misconduct is insufficient. *Iqbal*, 556 U.S. at 678. The Court treats well-pleaded factual allegations as true and draws reasonable inferences in the plaintiff's favor, but legal conclusions and conclusory statements are not accepted. *Id.* at 678-79; *Twombly*, 550 U.S. at 555.

### C. Section 1983: Personal participation, causation, and limits on liability

Section 1983 provides a cause of action against any person who, acting under color of state law, deprives another of a right secured by the Constitution or federal law. *Monroe v. Pape*, 365 U.S. 167, 171 (1961). To state a claim under Section 1983, a plaintiff must plausibly allege that a federal right was violated and that the defendant's own conduct caused the violation. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Each official, "his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* at 677. So supervisors and government officials are not liable solely based on their position or authority. *Cottone*, 326 F.3d at 1360.

## II. McMATH HAS NO STANDING TO CHALLENGE HOW THE BOARD RAN A MEETING AT WHICH SHE NEVER TRIED TO SPEAK (COUNT VIII).

Count VIII alleges that the October 7, 2025 Board meeting "was a designated or limited public forum" and that "Defendants administered that forum in a viewpoint-discriminatory manner, including by amplifying an anonymous attack on Plaintiff while disfavoring speech supporting her." (Doc. 57 ¶ 69.) The count is styled a claim for violation of the "Right to Petition." (*Id.* at 25.)

What the count does not allege is any injury to McMath's own rights of speech or petition. McMath does not allege that she attended the meeting. She does not allege that she signed up to speak, asked to speak, was denied time, was cut off, or submitted anything to the Board. She does not allege that she petitioned the Board for anything at all. The only fact about the meeting that the count incorporates is that the Vice Chair read aloud a letter that criticized McMath. (*Id.* ¶¶ 35, 68.)

That is not an Article III injury to McMath's forum or petition rights. An injury in fact must be concrete and particularized, which means it "must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1. And a plaintiff "generally must assert [her] own legal rights and interests, and cannot rest [her] claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *accord Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004).

The Eleventh Circuit has recognized that a would-be speaker who reasonably censors herself because of a school board's public-comment rules may have standing to seek prospective relief against those rules. *Moms for Liberty - Brevard Cnty. v. Brevard Pub. Schs.*, 118 F.4th 1324, 1330 (11th Cir. 2024). But McMath does not allege that she wanted to speak, that she held back, or that any rule chilled her. And against Ms. Bolduc, sued in her individual capacity, McMath seeks damages for a completed injury, which requires that her own rights have been violated. *See id.* A public-forum claim protects a speaker's access to the forum. A petition claim protects the act of petitioning. McMath alleges neither. If some supporter of McMath's received less time or a cooler reception than McMath would have liked, the claim belongs to that supporter. And being criticized from the dais does not restrict the forum rights of the person criticized.

The Government Defendants made this point against the Amended Complaint. (Doc. 30 at 21.) McMath did not respond to it. (*See* Doc. 40.) The Second Amended Complaint does not cure it. Because McMath alleges no injury to her own rights of speech or petition, Count VIII should be dismissed under Rule 12(b)(1).

## III. THE SECOND AMENDED COMPLAINT DOES NOT ALLEGE THAT MS. BOLDUC DID ANYTHING TO McMATH (COUNTS III, IV, AND VIII).

Section 1983 liability rests on what each defendant did. *Iqbal*, 556 U.S. at 676-77; *Cottone*, 326 F.3d at 1360. Every act that McMath claims injured her is attributed by the Second Amended Complaint to someone other than Ms. Bolduc. According to the pleading, an unidentified sender transmitted a screen capture of McMath's post to FDOE. (Doc. 57 ¶¶ 21-22.) FDOE asked the School District to confirm McMath's employment and mailed her a letter. (*Id.* ¶¶ 23-24.) Moms for Liberty-Duval submitted a complaint to the School District. (*Id.* ¶ 25.) McMath alleges, on information and belief, that the Commissioner directed FDOE's investigation. (*Id.* ¶ 29.) The Vice Chair read a letter at a Board meeting. (*Id.* ¶ 35.) The School District reassigned McMath. (*Id.* ¶ 43.) Ms. Bolduc is not the actor in any of these allegations.

The counts do not fill the gap. They accuse "Defendants" as a group. (*Id.* ¶¶ 52-53, 56, 69.) But lumping defendants together is the very defect this Court identified in the proposed Second Amended Complaint: a pleading that "asserts multiple claims against multiple defendants without identifying the acts or omissions attributable to each defendant" does not give each defendant notice of the claims against it. (Doc. 49 at 12-14 (citing *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321-23 (11th Cir. 2015)).) Count III says that five defendants,

collectively, took four adverse actions: "opening an investigation, reassigning her, removing her from the classroom, and pursuing certificate discipline." (Doc. 57 ¶ 52.) The rest of the pleading shows that Ms. Bolduc took none of them.

Nor could Ms. Bolduc have taken them on her own. Under Florida law, "[t]he district school board, acting as a board," exercises the Board's powers. § 1001.42, Fla. Stat. So "[a]n individual School Board member does not have authority to act alone." *Fla. Fam. Ass'n, Inc. v. Sch. Bd. of Hillsborough Cnty.*, 494 F. Supp. 2d 1311, 1323 (M.D. Fla. 2007). And transfers of district employees start with the superintendent, who recommends them and may make them in an emergency; the Board acts only on his recommendation. §§ 1012.22(1)(e), 1012.27(4), Fla. Stat. The Second Amended Complaint does not allege that the Board ever voted on McMath's reassignment, much less that Ms. Bolduc did anything to bring it about. And paragraph 67's assertion that Board "members participated in and amplified the campaign against Plaintiff" is a conclusion without a fact, which the Court does not accept as true. *Iqbal*, 556 U.S. at 678. It sits in Count VII, a *Monell* claim against the School Board alone, and none of the counts against Ms. Bolduc incorporates it. (Doc. 57 ¶¶ 50, 55, 68.)

That leaves the subcommittee appointment. It cannot carry any of the three counts.

## IV. THE SUBCOMMITTEE APPOINTMENT STATES NO CLAIM.

### A. Count III: the appointment came too late to cause anything, and it did nothing to McMath.

To state a First Amendment retaliation claim, a plaintiff must allege that her speech was constitutionally protected, that "the defendant's retaliatory conduct adversely affected the protected speech," and that there is a causal connection between the two. *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005). In the public-employment setting, the plaintiff must show that her speech played a substantial part in the decision to take an adverse employment action against her. *Moss v. City of Pembroke Pines*, 782 F.3d 613, 617-18 (11th Cir. 2015).

The appointment fails each part of that test. It was not an adverse action against McMath; choosing a constituent to sit on a subcommittee changes nothing about McMath's employment, her certificate, or her speech. And it cannot have caused the four actions Count III identifies. FDOE opened its investigation on September 11, 2025. (Doc. 57 ¶¶ 23-24.) The School District reassigned McMath on September 15, 2025. (*Id.* ¶ 43.) The Commissioner found probable cause on October 8, 2025. (*Id.* ¶ 29.) Ms. Bolduc made the appointment on or about April 29, 2026. (*Id.* ¶ 37.) A later act cannot cause an earlier one. Count III fails as to Ms. Bolduc.

### B. Count IV: Ms. Bolduc regulated no speech, much less on the basis of viewpoint.

Count IV alleges that "Defendants targeted Plaintiff's speech because of the viewpoint it expressed, while not subjecting comparable speech expressing

favored viewpoints to investigation or discipline." (*Id.* ¶ 56.) The First Amendment requires the government to "abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995). So a viewpoint-discrimination claim against an individual official requires an allegation that the official regulated, punished, or burdened the plaintiff's speech because of its message. There is no such allegation here. Appointing Ms. Aull to a subcommittee regulated nothing McMath said. And Ms. Bolduc is not alleged to have had any role in deciding whether McMath, or the Board members whose posts McMath offers as comparators, would be investigated. (*Id.* ¶ 38.) Count IV fails as to Ms. Bolduc.

**C. Count VIII: the count alleges nothing about Ms. Bolduc.**

Even if McMath had standing, Count VIII would fail as to Ms. Bolduc. The count incorporates only paragraphs 35 through 45. (*Id.* ¶ 68.) The only one that describes the Board meeting says that the Vice Chair read a letter. (*Id.* ¶ 35.) The only one that mentions Ms. Bolduc describes an appointment made more than six months after the meeting. (*Id.* ¶ 37.) The Eleventh Circuit often classifies public comment periods at school-board meetings as limited public fora. *Huggins v. Sch. Dist. of Manatee Cnty.*, 151 F.4th 1268, 1280 (11th Cir. 2025) (citing *McDonough v. Garcia*, 116 F.4th 1319, 1328-29 (11th Cir. 2024) (en banc)). In a limited public forum,

restrictions on speech "only must be reasonable and viewpoint neutral." *Bloedorn v. Grube*, 631 F.3d 1218, 1231 (11th Cir. 2011). A claim that such a forum was administered in a viewpoint-discriminatory way must at least identify a speaker whose viewpoint was restricted and the defendant who restricted it. Count VIII identifies neither. It fails as to Ms. Bolduc.

## V. MS. BOLDUC IS ENTITLED TO QUALIFIED IMMUNITY.

Qualified immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). It is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). So it should be resolved "at the earliest possible stage in litigation." *Pearson*, 555 U.S. at 232 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)). An official invoking the defense must first show that she acted within her discretionary authority, meaning that she pursued a job-related goal through means within her power. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265-66 (11th Cir. 2004). The burden then shifts to the plaintiff to show that the official violated a constitutional right and that the right was clearly established, in terms specific enough that "every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (cleaned up); *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

Only decisions of the Supreme Court, the Eleventh Circuit, and the Supreme Court of Florida can clearly establish the law in this Circuit. *Jenkins ex rel. Hall v. Talladega City Bd. of Educ.*, 115 F.3d 821, 826 n.4 (11th Cir. 1997) (en banc).

The only act attributed to Ms. Bolduc is an appointment she made "in her official capacity as a DCPS School Board Member." (Doc. 57 ¶ 37.) Appointing a representative to a School District subcommittee is a job-related function carried out through means within a Board member's power. *See Holloman*, 370 F.3d at 1265-66. So the burden shifts to McMath.

She cannot carry it. She identifies no conduct by Ms. Bolduc that violated her rights, and no decision of the Supreme Court, the Eleventh Circuit, or the Supreme Court of Florida holds that a board member violates a teacher's First Amendment rights by appointing a constituent to a subcommittee months after the teacher's reassignment. The qualified-immunity inquiry is made defendant by defendant. *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018). For Ms. Bolduc, it ends quickly. She is entitled to qualified immunity on Counts III, IV, and VIII.

## VI. McMATH HAS HAD HER FINAL OPPORTUNITY, AND DISMISSAL SHOULD BE WITH PREJUDICE.

This is the fourth complaint McMath has drafted and the third she has filed. (Docs. 1, 28, 42-1, 57.) When this Court rejected the third, it told McMath that she would receive "one final opportunity to amend." (Doc. 49 at 4.) She used it to

delete what she had alleged about Ms. Bolduc and to substitute an appointment made seven months after the fact.

Nor has McMath pleaded in the dark. By her own account, she has taken discovery and tried her certificate case to a full evidentiary hearing. (Doc. 57 ¶¶ 45, 54.) With that record in hand, she still alleges nothing that states a claim against Ms. Bolduc. A district court need not permit further amendment when amendment would be futile. *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007). And a plaintiff who has been given a chance to cure a shotgun pleading and has not done so is not entitled to another. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1296 (11th Cir. 2018). Both principles apply here.

## CONCLUSION

Defendant Melody Bolduc respectfully requests that the Court dismiss Counts III and IV of the Second Amended Complaint as to her with prejudice, and dismiss Count VIII as to her for lack of subject-matter jurisdiction or, in the alternative, with prejudice.

Dated: October 30, 2026

Respectfully submitted,

/s/ Adam B. Brandon
Jason B. Gonzalez (FBN: 146854)
Samuel J. Salario, Jr. (FBN: 83460)
Michael C. Kelley (FBN: 99492)
Eric C. Reed (FBN: 0557161)
Adam B. Brandon (FBN: 99316)
LAWSON HUCK GONZALEZ, PLLC
101 E. College Avenue, 5th Floor
Tallahassee, Florida 32301
jason@lawsonhuckgonzalez.com
samuel@lawsonhuckgonzalez.com
michael@lawsonhuckgonzalez.com
eric@lawsonhuckgonzalez.com
adam@lawsonhuckgonzalez.com
michelle@lawsonhuckgonzalez.com

*Counsel for Defendant Melody Bolduc*

**LOCAL RULE 3.01(g) CERTIFICATE**

I HEREBY CERTIFY that undersigned counsel conferred with counsel for Plaintiff by email regarding the relief requested in this motion. Plaintiff opposes the motion in its entirety.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 30, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Adam B. Brandon
Attorney