**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**Case No.: 3:25-cv-01498**

HOPE MCMATH,

Plaintiff,

v.

THE SCHOOL BOARD OF DUVAL COUNTY, FLORIDA; CHARLOTTE JOYCE; APRIL CARNEY; MELODY BOLDUC; FLORIDA DEPARTMENT OF EDUCATION; ANASTASIOS KAMOUTSAS; DR. HENRY MACK, AS COMMISSIONER OF EDUCATION; MOMS FOR LIBERTY, INC.; MOMS FOR LIBERTY-DUVAL; and ELLYE SMITH AULL,

Defendants.
_______________________________/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT MOMS FOR LIBERTY-DUVAL'S MOTION TO QUASH SERVICE OF PROCESS AND TO DISMISS ACTION FOR FAILURE OF SERVICE (Doc. 80)**
**WITH INCORPORATED MEMORANDUM OF LAW**

Plaintiff Hope McMath respectfully opposes the Motion to Quash Service of Process and to Dismiss Action for Failure of Service filed by Defendant Moms for Liberty-Duval ("MFL-Duval") (Doc. 80) and states as follows:

## INTRODUCTION

MFL-Duval asks this Court to dismiss it from this action on the theory that it is simultaneously real enough to file motions, retain nationally prominent counsel, and actively litigate this case, yet so formless that it cannot be served with process.

This is MFL-Duval's second motion to quash. The first (Doc. 31) was granted on August 26, 2026 (Doc. 49) because the original summons was served on the seventeen-year-old son of Moms for Liberty co-founder Tina Descovich. The Court gave Plaintiff an opportunity to re-serve, while emphasizing professionalism and meaningful dialogue about the service issue at the recent hearing. Plaintiff re-served Tina Descovich on October 24, 2026 (Doc. 81). MFL-Duval's counsel refused to engage on how service could be perfected and instead filed this second motion demanding dismissal, preferring perpetual impossibility over meaningful dialogue. As detailed in Sections IV and V below, defense counsel's sole objective was to secure a voluntary dismissal, not to resolve the service issue the Court directed counsel to discuss.

## ARGUMENT

### I. MFL-DUVAL HAS WAIVED ITS SERVICE-OF-PROCESS DEFENSE.

As a threshold matter, MFL-Duval has waived its service-of-process defense. Rule 12(h)(1)(A) provides that a Rule 12(b)(5) defense is waived if omitted from a prior motion under Rule 12. MFL-Duval filed a comprehensive

Motion to Dismiss (Doc. 60) raising merits defenses without preserving any 12(b)(5) objection to service. Having invoked Rule 12 on the merits while omitting a service defense, MFL-Duval waived that defense as a matter of law. Doc. 80 is therefore procedurally foreclosed. The merits confirm the same result.

## II. MFL-DUVAL HAS HAD ACTUAL NOTICE SINCE MARCH 2026 AND HAS ACTIVELY LITIGATED THIS CASE, SATISFYING THE CONSTITUTIONAL PURPOSE OF SERVICE.

The purpose of service of process is to provide a defendant with notice of the pending action and an opportunity to respond. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Where a defendant has received actual notice through counsel's active participation in the litigation, the constitutional requirements of due process are satisfied.

Here, there is no dispute that MFL-Duval has had actual notice of this action for over eight months. Liberty Counsel entered an appearance on behalf of MFL-Duval no later than March 2026. Since that time, MFL-Duval, through Liberty Counsel, has actively litigated this case, including by filing a joint Motion to Dismiss (Doc. 60) and the instant Motion to Quash (Doc. 80). MFL-Duval's own footnote in its Motion concedes that it "appears specially for the limited purpose of contesting service." (Doc. 80 at 1 n.1.) Moms for Liberty, Moms for Liberty-Duval and other members openly and publicly post about the case while Liberty Counsel seeks fundraising alongside its defense. A

defendant that files substantive motions to dismiss on the merits (Doc. 60) has gone well beyond a "special appearance." MFL-Duval has availed itself of this Court's processes when convenient while simultaneously claiming it cannot be reached by those same processes.

Dismissal is not warranted where a defendant has actual notice, has actively participated in the litigation, and suffers no prejudice from a technical deficiency in service. The Court retains broad discretion under Rule 4(m) to extend the time for service or to order alternative service. See Fed. R. Civ. P. 4(m). MFL-Duval has been represented by sophisticated counsel, has filed substantive motions, and has had full access to every filing. It cannot credibly claim prejudice.

## III. FEDERAL RULE 17(b)(3)(A) INDEPENDENTLY CONFERS CAPACITY ON MFL-DUVAL TO BE SUED IN ITS COMMON NAME FOR THE FEDERAL CLAIM.

MFL-Duval's argument that it "lacks the legal capacity to be sued in its own name" (Doc. 80 at 8) under Florida law is inapplicable to Plaintiff's federal claim. The Second Amended Complaint asserts two counts against MFL-Duval: Count VI (tortious interference under Florida law) and Count IX (First Amendment retaliation under 42 U.S.C. Section 1983). (Dkt. 57.)

Federal Rule of Civil Procedure 17(b)(3)(A) provides that the capacity of an unincorporated association "to sue or be sued in its common name" is determined by "the law of the state where the court is located" only when the

suit does not involve "a . . . right . . . under [the Constitution or a law of] the United States." Conversely, when a federal right is at issue, Rule 17(b)(3)(A) confers capacity directly, without reference to state law. Count IX asserts a claim under 42 U.S.C. Section 1983, a federal statute enacted to vindicate constitutional rights. Under Rule 17(b)(3)(A), MFL-Duval has capacity to be sued in its common name for this claim regardless of Florida's treatment of unincorporated associations.

The Eleventh Circuit has squarely held that an unincorporated association is a "person" that may sue and be sued under Section 1983. *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 11 F.4th 1266, 1278 (11th Cir. 2021) ("We hold that FLFNB is a person that may bring suit under [Section] 1983."). This principle traces to the Supreme Court's recognition in *United Mine Workers v. Coronado Coal Co.*, 259 U.S. 344, 385-86 (1922), that unincorporated associations may be sued in their common name in federal court -- the foundation of Rule 17(b)(3)(A).

MFL-Duval's own motion concedes this point, stating only that "[e]ven assuming that Rule 17(b)(3)(A)'s federal-right exception brings MFL-Duval within Rule 4(h)(1) as an entity subject to suit under a common name, attempted service through Ms. Descovich fails." (Doc. 80 at 9-10.) This concession is significant. MFL-Duval acknowledges that its capacity defense under Florida law does not reach the federal claim. The Florida-law authorities

MFL-Duval relies on, including *Johnston v. Meredith*, 840 So. 2d 315 (Fla. 3d DCA 2003), and *Asociacion de Perjudicados v. Citibank*, F.S.B., 770 So. 2d 1267 (Fla. 3d DCA 2000), are therefore irrelevant to Count IX.

As to Count VI, Plaintiff submits that even under Florida law, MFL-Duval should not be permitted to exploit its deliberately informal organizational structure to shield itself from accountability, as discussed further in Section VII below. But at a minimum, the federal claim under Section 1983 survives MFL-Duval's capacity challenge entirely.

## IV. MFL-DUVAL'S SERVICE ARGUMENTS FAIL ON THEIR OWN TERMS.

MFL-Duval raises three service arguments: (A) Descovich is not an officer or agent under Rule 4(h)(1)(B); (B) Florida law independently forecloses service through Descovich; and (C) dismissal is warranted under Rule 4(m). None warrants dismissal.

### A. Service on Descovich Was Reasonable Under the Circumstances.

MFL-Duval argues that Descovich is not an "officer" or "agent" of MFL-Duval within the meaning of Rule 4(h)(1)(B). (Doc. 80 at 5-7.) But MFL-Duval's framing ignores the practical reality. MFL-Duval has no registered agent, no registered office, and no corporate filing. (See Descovich Decl. Paragraphs 15-16.) Descovich is the co-founder of MFL, Inc., the national organization of which MFL-Duval is, by Descovich's own sworn testimony, "a local chapter."

(Descovich Decl. Paragraph 15.) She was served at her personal residence by a process server.

Plaintiff's attempt to serve Descovich, while perhaps technically misdirected given the organizational structure MFL-Duval now asserts, was eminently reasonable. Descovich is the most publicly visible figure associated with the Moms for Liberty brand. At the time of service, MFL-Duval's organizational structure was deliberately opaque. Its chapter leadership was not publicly listed. Only through subsequent investigation has Plaintiff identified that MFL-Duval's own membership portal at portal.momsforliberty.org identifies specific Chapter Leadership: Natalie Dreyer as Chapter Chair, Angela Reichenbach as Chapter Secretary, and Derek Nelson as Chapter Treasurer. Dreyer was publicly identified as the "current chair of the Duval County Chapter of Moms for Liberty" at DCPS Public Comments on August 9, 2025. These are precisely the types of officers, managing or general agents contemplated by Rule 4(h)(1)(B).

As detailed in Section VII below, MFL-Duval's founder Ellye Smith Aull, its chapter leadership, and multiple defendants and defense counsel in this litigation are deeply interconnected, further demonstrating that MFL-Duval is not the formless entity it claims to be.

**B. <u>The Florida Law Argument Is Inapplicable and Contradicted by MFL-Duval's Own Conduct.</u>**

MFL-Duval's Argument B (Doc. 80 at 8-9) contends that Florida law requires every member of an unincorporated association to be sued individually and served individually. This argument fails for multiple reasons.

First, as discussed in Section III above, Rule 17(b)(3)(A) governs capacity for the federal claim, and Florida law is irrelevant to Count IX.

Second, MFL-Duval's reliance on *Johnston v. Meredith*, 840 So. 2d 315 (Fla. 3d DCA 2003), and *Asociacion de Perjudicados v. Citibank*, F.S.B., 770 So. 2d 1267 (Fla. 3d DCA 2000), does not compel dismissal. MFL-Duval's own counsel admitted during conferral that "even if an unincorporated association could be amenable to suit, the law would require every one of its members to be served." (Oct. 28, 2026 email from H. Mihet.) This conditional phrasing ("even if") concedes uncertainty about whether MFL-Duval is amenable to suit at all, and the purported requirement that every member be served is itself a reason the Court should order MFL-Duval to identify its members through its counsel, not a reason to dismiss.

Moreover, MFL chapters have repeatedly invoked the federal courts as named plaintiffs. See, e.g., *Moms for Liberty-Brevard v. Brevard Pub. Schs.*, 118 F.4th 1324 (11th Cir. 2024) ($568,000 settlement). In those cases, defendants executed waivers of service directed to MFL chapters as entities capable of receiving process. MFL chapters cannot selectively invoke the legal

system to bring claims and then disclaim legal existence when sued. See Section VII, infra.

## V. THE COURT SHOULD ORDER ALTERNATIVE SERVICE OR DIRECT MFL-DUVAL TO IDENTIFY A PROPER AGENT, RATHER THAN DISMISS.

Even if the Court determines that service on Tina Descovich was technically insufficient, the proper remedy is not dismissal with prejudice. Federal courts have broad discretion to quash deficient service and permit a plaintiff to re-serve, rather than dismiss the action outright. See *Grisales v. Ocala Nat'l Bank*, 2013 WL 12155961, at *6 (M.D. Fla. May 16, 2013) (noting Rule 12(b)(5) authorizes courts to "either dismiss the complaint or . . . quash . . . service and require the plaintiff to [perfect] service"). The Court should exercise that discretion here.

Plaintiff respectfully requests that the Court enter an order requiring MFL-Duval, through its counsel Liberty Counsel, to identify a proper person or agent authorized to accept service on behalf of MFL-Duval. This request is eminently reasonable given the circumstances. Liberty Counsel simultaneously represents both MFL, Inc. and MFL-Duval in this action. (See Doc. 80 at 12, signature block identifying counsel as representing "Defendants Moms for Liberty and Moms for Liberty-Duval.") If Liberty Counsel is authorized to file motions on MFL-Duval's behalf, it is difficult to understand why it cannot also identify, or itself accept, service for the entity it represents.

The Court should also note that two days after filing the first Motion to Quash, Liberty Counsel published a promotional post using this case to solicit donations, declaring that it was fighting for the lawsuit to be dismissed. This is not the conduct of counsel defending a legal nullity.

Alternatively, the Court may authorize service by alternative means under its inherent authority. Where an entity has no registered agent, no registered office, and no publicly identifiable officers, yet is actively represented by counsel in the very litigation at issue, service upon that counsel is a reasonable and appropriate alternative. See Fed. R. Civ. P. 4(h) (providing for service on unincorporated associations); Fed. R. Civ. P. 4(e) (incorporating state-law methods).

As set forth in the Local Rule 3.01(g) Certificate below, the conferral consisted not of meaningful discussion about how to resolve the service deficiency, but of MFL-Duval's demand that Plaintiff voluntarily dismiss. Defense counsel's own email admits the conferral was "not for the purpose of facilitating service." This failure to confer in good faith independently warrants denial. See *Phillips v. Cario*, 2026 U.S. Dist. LEXIS 36998, at *2 (M.D. Fla. Feb. 24, 2026) (Local Rule 3.01(g)'s importance "cannot be overstated").

## VI. PLAINTIFF HAS SHOWN GOOD CAUSE AND EXCUSABLE NEGLECT FOR ANY DELAY IN PERFECTING SERVICE.

MFL-Duval argues that the 90-day deadline under Rule 4(m) expired in March 2026 and that Plaintiff cannot demonstrate good cause. (Doc. 80 at 10.) This argument ignores both the extraordinary difficulty of serving this particular defendant and the discretion afforded to courts under Rule 4(m).

### A. <u>Rule 4(m) Grants Discretion Even Absent Good Cause.</u>

Rule 4(m) provides that if a defendant is not served within 90 days, the court "must dismiss the action . . . without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m) (emphasis added). Critically, the Rule requires extension "if the plaintiff shows good cause," but courts retain discretion to extend the time for service even without good cause. The Eleventh Circuit has held that district courts have discretion to extend the time for service even in the absence of good cause. See *Lepone-Dempsey v. Carroll County Comm'rs*, 476 F.3d 1277, 1281-82 (11th Cir. 2007) (recognizing that Rule 4(m) grants courts discretionary authority to extend service deadlines even without good cause).

Several factors support the exercise of that discretion here: (1) MFL-Duval has had actual notice since March 2026; (2) the statute of limitations may bar refiling; (3) MFL-Duval has suffered no prejudice, having actively litigated this case; and (4) Plaintiff has made diligent, good-faith efforts to effectuate service on an entity that has deliberately made itself difficult to serve.

**B. Plaintiff Has Demonstrated Good Cause.**

Even under the good-cause standard, Plaintiff's efforts are sufficient. Good cause exists where the plaintiff demonstrates diligence in attempting service despite obstacles beyond the plaintiff's control. The obstacles here are significant and largely of MFL-Duval's own making:

First, MFL-Duval has no registered agent, no registered office, and no corporate filing. Its chapter leadership information exists only within MFL, Inc.'s national membership portal, further demonstrating the entanglement between the national entity and its chapters.

Second, Plaintiff diligently pursued service on Tina Descovich, the most publicly associated national co-founder, in the absence of any identified local agent. When Plaintiff asked defense counsel to identify a proper person for service, that request was refused. Plaintiff cannot be faulted for failing to serve an officer that MFL-Duval refuses to identify.

Third, Liberty Counsel represents both MFL, Inc. and MFL-Duval simultaneously. It could have accepted service or identified the proper person at any point but instead withheld the information needed to perfect service and then sought dismissal.

Fourth, the litigation landscape has evolved since the Court's prior Order. April Carney has waived service and is actively litigating. Attorney Brian J. Aull of Cole, Scott & Kissane has entered an appearance on behalf of

Ellye Smith Aull, MFL-Duval's founder, as detailed in Section VII below. The parties and counsel tied to MFL-Duval's organizational structure are already actively participating in this litigation and could facilitate proper service.

Fifth, when Plaintiff's counsel directly asked defense counsel to identify a proper person for service, defense counsel refused, seeking voluntary dismissal rather than the meaningful engagement the Court had directed.

## VII. MFL-DUVAL SHOULD NOT BE PERMITTED TO EXPLOIT ITS DELIBERATE INFORMALITY TO EVADE ACCOUNTABILITY.

MFL-Duval's litigation strategy amounts to immunity through formlessness. It maintains no registered agent, no corporate filing, no identifiable officers, and no public organizational structure. Yet it is sufficiently organized to send complaints to government agencies about Plaintiff, to retain nationally prominent counsel, and to file substantive motions in this Court. MFL-Duval cannot have it both ways.

An entity that is organized enough to take actions that allegedly caused harm to Plaintiff and that is organized enough to retain counsel and litigate aggressively in federal court must also be organized enough to be held accountable through service of process. To hold otherwise would create a perverse incentive for organizations to avoid all formal structure precisely so they can engage in harmful conduct without any possibility of legal accountability.

The Descovich Declaration itself reveals the tension in MFL-Duval's position. Descovich testifies that MFL-Duval "maintains its own local operations, local governance, and grassroots outreach." (Descovich Decl. Paragraph 18.) An entity with "local governance" necessarily has persons who govern it. An entity with "local operations" necessarily has persons who conduct those operations. MFL-Duval's claim that it cannot be served because no one can be identified as its representative is belied by its own declarant's admission that it has a governance structure and operations.

Descovich further testifies that MFL-Duval is "a local chapter of Moms for Liberty in Duval County, Florida." (Descovich Decl. Paragraph 15.) This admission is significant. It confirms the organizational relationship between MFL-Duval and the national entity that MFL-Duval simultaneously tries to deny for purposes of service. MFL-Duval cannot claim to be a "local chapter" of MFL, Inc. while simultaneously arguing that the co-founder of MFL, Inc. has "no legally cognizable relationship to the entity for purposes of service." (Mihet email, Oct. 28, 2026, quoted in Local Rule 3.01(g) Certificate, infra.)

MFL-Duval's attempt to draw a bright line between itself and MFL, Inc. also fails in light of the Eleventh Circuit's decision in *Moms for Liberty-Brevard v. Brevard Pub. Schs.*, 118 F.4th 1324 (11th Cir. 2024). In that case, another MFL local chapter filed a federal lawsuit and obtained a $568,000 settlement. MFL, Inc. publicly celebrated this chapter victory on its own national portal at

portal.momsforliberty.org, announcing: "Moms for Liberty awarded over half a million in free speech battle against Florida school board." The announcement listed the Group as "Moms for Liberty" -- not "Moms for Liberty-Brevard" -- and was published by MFL, Inc. on its national website. When a chapter wins, the national entity claims credit. The organizational structure employed by MFL chapters to file lawsuits is functionally identical to the structure MFL-Duval now claims renders it immune from suit. MFL chapters cannot selectively invoke the legal system when they wish to bring claims and then disclaim legal existence when they are sued.

Judicial estoppel reinforces this conclusion. The Eleventh Circuit applies judicial estoppel to prevent a party from 'playing fast and loose with the courts.' *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002). The Supreme Court similarly applies the doctrine where: (1) a party's later position is 'clearly inconsistent' with its earlier position; (2) the party succeeded in persuading a tribunal to accept the earlier position; and (3) the party would derive an unfair advantage. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). All three factors are met here. MFL-Duval's earlier position -- that an MFL local chapter has sufficient legal existence to file and prosecute a federal lawsuit, to obtain a $568,000 settlement, and to have that victory celebrated nationally by MFL, Inc. -- is clearly inconsistent with its current position that MFL-Duval has 'no legal existence separate from its members' and cannot be

served with process. MFL-Brevard succeeded in persuading the Eleventh Circuit to accept that chapters have legal capacity. See *Moms for Liberty-Brevard v. Brevard Pub. Schs.*, 118 F.4th 1324 (11th Cir. 2024). And MFL-Duval would derive an obvious unfair advantage if it could invoke the courts to bring claims while disclaiming legal existence to defeat claims brought against it. The doctrine of judicial estoppel should not permit this.

This pattern extends beyond MFL-Brevard. MFL chapters have litigated as named plaintiffs across multiple federal courts, filing Corporate Disclosure Statements under Rule 7.1 identifying MFL, Inc. as an affiliate and executing waivers of service as entities. MFL-Duval cannot credibly claim it alone among MFL chapters lacks legal existence.

MFL-Duval's own membership portal further undermines its separation narrative. The portal features graphics proclaiming that MFL-Duval "can now say a Moms for Liberty majority sits on the Board of Duval County Public Schools." In describing this very lawsuit, the portal states that "Moms for Liberty's Duval chapter emailed Duval County Public Schools and the Florida Department of Education with screenshots of the teacher's public social media posts," identifying the chapter as the organizational actor. These are not the hallmarks of a legal nullity.

The entanglement goes deeper still. As detailed above, Ellye Smith Aull, who publicly declared she is "the woman who started all three chapters of

Moms for Liberty in NE Florida," is MFL-Duval's founder, and her husband is defense counsel for four other Defendants. Defendants Carney and Joyce each signed MFL's "Parent Pledge" for candidates and elected officials, pledging to advance MFL's policy positions. MFL's own pledge form references "Moms for Liberty, Inc., its Chapter(s), PAC or any other affiliate," acknowledging the layered organizational structure that MFL-Duval's motion attempts to deny. Contemporaneous news accounts in the Florida Times-Union, WJCT News, and Florida Politics uniformly describe MFL-Duval as a real organization with real influence, directly contradicting the motion's claim that the Duval chapter had no meaningful existence.

The Court should not reward MFL-Duval's strategic opacity. MFL-Duval has identifiable Chapter Leadership (Dreyer, Reichenbach, Nelson), an identified founder (Ellye Smith Aull), and deep organizational ties to MFL, Inc., to the individual Defendants, and even to defense counsel in this case. At a minimum, the Court should order MFL-Duval, through Liberty Counsel, to identify the individuals who compose its "local governance" so that Plaintiff can effectuate proper service.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court:

(1) Deny MFL-Duval's Motion to Quash and Motion to Dismiss;

(2) In the alternative, if the Court finds service on Ms. Descovich technically deficient, quash service without dismissal and order MFL-Duval, through its counsel Liberty Counsel, to identify a proper person or agent authorized to accept service within fourteen (14) days;

(3) In the further alternative, authorize Plaintiff to effectuate service upon MFL-Duval through its counsel of record, Liberty Counsel;

(4) In the further alternative, authorize Plaintiff to effectuate service upon MFL-Duval through any of its identified Chapter Leadership, including Natalie Dreyer (Chapter Chair), Angela Reichenbach (Chapter Secretary), and/or Derek Nelson (Chapter Treasurer), as listed on MFL-Duval's own membership portal at portal.momsforliberty.org;

(5) Extend the time for Plaintiff to perfect service on MFL-Duval under Rule 4(m); and

(6) Grant such other and further relief as the Court deems just and proper.

**LOCAL RULE 3.01(g) CERTIFICATE**

Pursuant to Local Rule 3.01(g), undersigned counsel certifies that counsel for Plaintiff conferred with counsel for Moms for Liberty-Duval through email correspondence regarding the relief requested in Defendant's Motion. The substance of that conferral is as follows:

On October 28, 2026, counsel for MFL-Duval, Horatio Mihet of Liberty Counsel, emailed Plaintiff's counsel stating that MFL-Duval intended to move to quash the summons served on Tina Descovich and requesting Plaintiff's position by close of business October 29, 2026. Plaintiff's counsel responded the same day, referencing the Court's direction at the prior case management conference that counsel should discuss the service issue, and asked Mr. Mihet to identify a person he contended was appropriate for service on MFL-Duval. Mr. Mihet declined, stating: "There is not one more appropriate person because, even if an unincorporated association could be amenable to suit, the law would require every one of its members to be served." Mr. Mihet further stated that the conferral was "not for the purpose of facilitating service" but rather to determine whether Plaintiff would "voluntarily withdraw the improper summons and dismiss the local entity."

On October 30, 2026, Plaintiff's counsel reiterated willingness to re-effect service on any officer or managing agent Mr. Mihet identified as appropriate for MFL-Duval, and stated: "We would prefer to resolve service rather than litigate it." Mr. Mihet did not respond to this offer and instead filed the instant Motion.

Counsel were unable to resolve the dispute because MFL-Duval's counsel refused to identify any person for service, took the position that MFL-Duval

cannot be served at all, and declined to engage in the meaningful discussion the Court had directed at the prior hearing.

## CERTIFICATION REGARDING THE USE OF GENERATIVE ARTIFICIAL INTELLIGENCE

I HEREBY CERTIFY that generative artificial intelligence was used in the drafting and preparation of this filing. I further certify that the AI-generated content was diligently reviewed by a human for accuracy and applicability, including verification that all factual assertions, legal citations, and characterizations of legal authority are accurate, and that no fictitious or hallucinated authority has been cited. I acknowledge that reliance on generative AI alone does not satisfy the "reasonable inquiry" required under Fed. R. Civ. P. 11(b).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy hereof was forwarded to Michael Kelley, Esq., Lawson, Huck, Gonzalez, PLLC, 4705 South Apopka Vineland Road, Suite 210, Orlando, FL 32819 michael@lawsonhuckgonzalez.com; adam@lawsonhuckgonzalez.com; ashley@lawsonhuckgonzalez.com; eric@lawsonhuckgonzalez.com; kim@lawsonhuckgonzalez.com (Counsel for Defendants Charlotte Joyce, April Carney, Melody Bolduc, The School Board of Duval County, Florida

Department of Education, Anastasios Kamoutsas, and Dr. Henry Mack as Commissioner of Education), Horatio Mihet, Esq., Liberty Counsel, P. O. Box 540774, Orlando, FL 32854, hmihet@lc.org; dpiedra@lc.org; (Counsel for Moms for Liberty, Inc. and Moms for Liberty-Duval); Brian J. Aull, Esq., Cole, Scott & Kissane, 4190 Belfort Road, Suite 300, Jacksonville, FL 32216, brian.aull@csklegal.com (Counsel for Ellye Smith Aull) and was electronically filed in the U.S. District Court, Middle District of Florida, Jacksonville Division using the CM/ECF system, this 17th day of November, 2026.

Law Office of Phillips, Hunt & Walker

**/s/ John M. Phillips**
JOHN M. PHILLIPS, ESQUIRE
Florida Bar Number: 0477575

**/s/ William K. Walker**
WILLIAM K. WALKER, ESQUIRE
Florida Bar Number: 0085552
660 Park Street
Jacksonville, FL 32204
(904) 444-4444
(904) 508-0683 (facsimile)
Attorneys for Plaintiff
jmp@floridajustice.com
william@floridajustice.com
anne@floridajustice.com